# Exhibit E




199 Water Street
New York, NY 10038
(212) 577-3300
www.legal-aid.org

Blaine (Fin) V. Fogg
*President*

Janet E. Sabel
*Attorney-in-Chief*
*Chief Executive Officer*

Justine M. Luongo
*Attorney-in-Charge*
Criminal Practice

July 25, 2019

New York City Police Department, Records Access Officer
Lt. Richard Mantellino
Legal Bureau – FOIL Unit
One Police Plaza, Room 110-C
New York, NY 10038

Dear Records Access Officer:

Pursuant to the state open records law, N.Y. Pub. Off. Law §§ 84 to 99, I write to request access to and a copy of the following records:

1. All NYPD policies, guidance, and directives relating to the use of chokeholds by officers and all NYPD employees, including:

    a. All Patrol Guide sections covering the use of chokeholds effective any time from July 2018 through the present.

    b. Any policy, whether or not memorialized in writing, limiting or in any way controlling the length of chokeholds.

2. All NYPD policies, guidance, and directives relating to the use of conducted energy devices and/or TASERs by officers and all NYPD employees, including:

    a. All Patrol Guide sections covering uses of conducted energy devices and/or TASERs effective any time from July 2018 through the present.

    b. Any policy, whether or not memorialized in the Patrol Guide, limiting or in any way controlling the length or voltage of conducted energy device or TASER discharges, for example as referenced in the Civilian Complaint Review Board's 2016 report, *TASERs: An Evaluation of TASER-Related Complaints from January 1, 2014 through December 31, 2015*, at 19 [hereinafter "CCRB's TASER Report"][1]: "The NYPD has adopted a policy, which maintains voltage for 5 seconds."

[1] New York City Civilian Complaint Review Board, *TASERs: An Evaluation of TASER-Related Complaints from January 1, 2014 through December 31, 2015* (2016).

c. If there is no written policy on this topic, the information relied upon in order to provide a statement to the Civilian Complaint Review Board regarding a five second voltage policy, as referenced in the CCRB's TASER Report, at 19 n. 57.

3. All NYPD policies, guidance, and directives, whether or not memorialized in writing, relating to policing of 311 complaints, noise complaints, and/or noise violations, outside of Patrol Guide 214-23.

4. All NYPD training materials related to use of force, including:

   a. A list of all trainings conducted.

   b. The NYPD Police Students' Guide – Use of Force as referenced in the Office of the Inspector General's October 1, 2015 report, *Police Use of Force in New York City: Findings and Recommendations on NYPD's Policies and Practices*, at 22 n. 30 [hereinafter "OIG Use of Force Report"].[2] Please provide any version(s) of this document in effect from July 2018 through the present.

   c. All materials from and/or related to the NYPD Reinstatement Training Program – Use of Force – 15-382-A-000008, as referenced in the OIG Use of Force Report at 22 n. 30 & 31.

   d. The Use of Force training booklet, first released in December 2015 and later revised and distributed to officers in June 2016, as referenced in then Deputy Commissioner Legal Matters Lawrence Byrne's May 4, 2018 response to the Office of the Inspector General's February 6, 2018 report, *An Investigation of the NYPD's New Force Reporting System*, at 15 [hereinafter "Mr. Byrne's May 4, 2018 response"].[3] Please provide any version(s) of this document in effect from July 2018 through the present.

   e. All materials from and/or related to use of force training provided at the Academy, including:

      i. The nine-hour course entitled "Use of Force," as referenced in the OIG Use of Force Report at 39.

      ii. The four-and-a-half-hour course entitled "Policing Professionally," as referenced in the OIG Use of Force Report at 39.

[2] City of New York Department of Investigation, Office of the Inspector General for the NYPD, *Police Use of Force in New York City: Findings and Recommendations on NYPD's Policies and Practices* (October 1, 2015).
[3] Mr. Byrne's May 4, 2018 response to City of New York Department of Investigation, Office of the Inspector General for the NYPD, *An Investigation of the NYPD's New Force Reporting System* (February 6, 2018).

5. All NYPD training materials related to the use of conducted energy devices or TASERs, including:
    a. A list of all trainings conducted.
    b. Memorialization(s) of any requirement that officers spend a day reviewing TASER policies and practicing usage, as referenced in CCRB's TASER Report, at 17.
    c. Any materials from and/or relating to the one-day TASER certification training, as referenced in the CCRB's TASER Report, at 20.
    d. Any materials from and/or relating to refresher trainings on use of TASERs or conducted energy devices.
6. All NYPD training materials related to de-escalation tactics, including:
    a. A list of all trainings conducted.
    b. All materials from the trainings referenced in Mr. Byrne's May 4, 2018 response, at 13:

       > "The NYPD offers intensive de-escalation training to its recruits throughout recruit training, including 15 hours of dedicated classroom lessons, 28 1/2 hours of scenario-based training devoted primarily to de-escalation tactics in various situations, as well as teaching appropriate use of force during the physical tactical training component."
7. All NYPD training materials related to responding to 311 complaints, noise complaints, and/or noise violations, including:
    a. A list of all trainings conducted.
    b. Any materials from trainings related to or referencing NYPD Patrol Guide 214-23, "Unreasonable Noise Violations."
8. Training Memo #40-16, as referenced in Mr. Byrne's May 4, 2018 response, at 24: "Training Memo #40-16 . . . specif[ies] that digital pictures should be taken of any location on a subject where an injury is claimed but not visible."
9. All training materials, memos, and directives given specifically to Neighborhood Coordination Officers (NCOs) or relating specifically to the NCO program.

10. All attendance records from trainings for officers assigned to the 34th Precinct and/or certification records of trainings attended by officers assigned to the 34th Precinct, from 2014 to the present.

11. All materials from and/or related to the NYPD's "Smart Policing (20k) Initiative," as referenced in the OIG Use of Force Report, at 41-42.

    a. In addition, any and all records reflecting attendance by officers assigned to the 34th Precinct at a three-day "Smart Policing (20k) Initiative" program.

12. All documents generated from or relating to force review audits of the 34th Precinct, as overviewed in Mr. Byrne's May 4, 2018 response, at 5-6:

    > "By January of 2017, the Department went a significant step further when it began its own comprehensive review procedure, known as the Force Review process, to monitor and ensure compliance with the policy and reporting. The cornerstone of the Force Review process is an exacting internal audit. . . . In addition to the audit, the Force Review process conducts a qualitative examination of completed T.R.I. worksheets. . . . Finally, the Force Review process identifies specific officers within a precinct . . . who may benefit from early intervention by his or her supervisors."

    a. The names of individual officers, or, in the alternative, the number of individual officers assigned to the 34th Precinct who were identified as possibly benefitting from early intervention by their supervisors.

    b. Any documents generated from or related to quarterly Force Review Evaluations of the 34th Precinct, as referenced in Mr. Byrne's May 4, 2018 response, at 6.

13. Statistical information on use of force incidents and/or allegations, disaggregated by year, since 2014 of which NYPD is aware, including:

    a. The number of officers investigated by Internal Affairs Bureau (IAB) for excessive force incidents and/or allegations, disaggregated by:

        i. The investigative findings by IAB, for example "substantiated," "unsubstantiated," or "exonerated."

        ii. The number of officers who have received some discipline, disaggregated by type of discipline received, for example retraining, loss of vacation days, etc.

iii. The number of officers who have been dismissed from the Department.

b. The number of officers investigated by IAB for use of conducted energy devices and/or TASERs, disaggregated by:

i. The investigative findings by IAB, for example "substantiated," "unsubstantiated," or "exonerated."

ii. The number of officers who have received some discipline, disaggregated by type of discipline received, for example retraining, loss of vacation days, etc.

iii. The number of officers who have been dismissed from the Department.

c. The number of officers investigated by IAB for use of chokeholds, disaggregated by:

i. The investigative findings by IAB, for example "substantiated," "unsubstantiated," or "exonerated."

ii. The number of officers who have received some discipline, disaggregated by type of discipline received, for example retraining, loss of vacation days, etc.

iii. The number of officers who have been dismissed from the Department.

d. The number of use of force incidents and/or allegations investigated by the Force Investigation Division, disaggregated by type of force allegedly used as well as force level.

e. The number of Force Investigations that have resulted in no further action.

14. The number of use of force complaints relating to officers assigned to the 34th Precinct of which the NYPD is aware, from 2014 to the present, disaggregated by year, type of force allegedly used, and force level.

15. Information relating to policing of minor offenses and community policing efforts in the 34th Precinct, including:

a. The number of noise violation complaints received annually by the 34th Precinct since 2014, disaggregated by the means the complaint was received, including:

i. 311 complaints.

ii. Direct calls.

iii. Complaints at the Precinct.

iv. Complaints made to officers.

b. The number of 311 complaints addressed annually to officers assigned to the 34th Precinct since 2014.

c. The number of noise violation summonses issued annually by officers assigned to the 34th Precinct since 2014.

d. The percentage of all NYPD noise violation summonses arising out of the 34th Precinct annually since 2014.

e. The total number of summonses and Desk Appearance Tickets issued by officers assigned to the 34th Precinct annually since 2014.

f. The total number of arrests by officers in the 34th Precinct annually since 2014, disaggregated by top charge.

i. A list of the ten top charged offenses by officers in the 34th Precinct annually since 2014, and quantity of such arrests.

g. The total number of arrests by officers in the 34th Precinct annually since 2014 including the charges, (and not necessarily the top charges), of:

i. Resisting arrest.

ii. Obstructing governmental administration.

iii. Disorderly conduct.

h. The percentage of all NYPD arrests annually since 2014 arising out of the 34th Precinct.

i. Any documents, from 2014 to the present, describing conditions in the 34th Precinct, and/or enforcement efforts meant to address Precinct-wide conditions.

j. All documents describing or relating in any way to productivity goals for officers in the 34th Precinct, from 2014 to the present.

* * *

If your agency does not maintain any of these public records, please let me know who does and include the proper custodian's name and address.

I would prefer the request be filled electronically, by e-mail attachment (to CConti-Cook@legal-aid.org) if available or flash drive if not. I agree to pay any reasonable fees of not more than $25.00. If the request cannot be filled electronically and the cost to copy and mail the requested material will be greater than $25.00, please notify me. Please provide a receipt indicating the charges for each document.

As provided by the open records law, I will expect your response within five (5) business days. See N.Y. Pub. Off. Law § 89(3). If you choose to deny this request, please provide a written explanation for the denial including a reference to the specific statutory exemption(s) upon which you rely. Also, please provide all segregable portions of otherwise exempt material.

Thank you in advance for your assistance. If you have any questions, please do not hesitate to contact me at (212) 577-3265 or CConti-Cook@legal-aid.org.

Sincerely,

Cynthia Conti-Cook
Staff Attorney