19 Civ. 9412 (AJN) (OTW)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

TOMAS MEDINA,

Plaintiff,

-against-

THE CITY OF NEW YORK, POLICE COMMISSIONER
JAMES O'NEILL, CHIEF OF DEPARTMENT TERRANCE
MONAHAN, SERGEANT HEKMATULLAH
MUHTARZADA, DETECTIVE SPECIALIST FABIO
NUNEZ, POLICE OFFICER SHANEE (PIERCE) HANSLER,
DAVID CALLAN, CAPTAIN WILLIAM J. GALLAGHER,
SERGEANT JOSE A. GOMEZ, POLICE OFFICER NAY
HTOO, POLICE OFFICER CHIRSTOPHER SICILIANO, and
POLICE OFFICER JOHN DOE,

Defendants.

**MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANTS' PARTIAL MOTION TO DISMISS
PLAINTIFF'S INITIAL COMPLAINT**

*JAMES E. JOHNSON*
*Corporation Counsel of the City of New York*
*Attorney for Defendants*
*100 Church Street, Room 3-133A*
*New York, NY 10007*

*Of Counsel: Peter W. Brocker*
*Tel: (212) 356-2332*

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ............................................................................................... iii

PRELIMINARY STATEMENT & STATEMENT OF THE FACTS ........................................... 1

STANDARD OF REVIEW ................................................................................................. 2

ARGUMENT

    I.      PLAINTIFF'S CLAIM FOR EQUITABLE RELIEF SHOULD BE DISMISSED, BECAUSE PLAINTIFF LACKS STANDING TO SEEK THE REDRESS REQUESTED ................................................................. 4

    II.     PLAINTIFF'S CLAIM AGAINST NYPD COMMISSIONER JAMES O'NEILL AND NYPD CHIEF OF DEPARTMENT TERRANCE MONAHAN MUST BE DISMISSED, AS PLAINTIFF HAS NOT ALLEGED PERSONAL INVOLVEMENT ................................................................. 10

    III.    PLAINTIFF'S CLAIMS AGAINST CAPT. WILLIAM J. GALLAGHER, SGT. HEKMATULLAH MUKHTARZADA, AND SGT. JOSE A. GOMEZ, SHOULD BE SIMILARLY DISMISSED, AS PLAINTIFF HAS NOT PROPERLY PLED A CLAIM FOR SUPERVISORY LIABILITY ................................................................. 12

    IV.    PLAINTIFF'S "MONELL" CLAIMS AGAINST THE CITY OF NEW YORK SHOULD BE DISMISSED BECAUSE HE HAS NOT SUFFICIENTLY PLED A POLICY, PRACTICE, OR CUSTOM, NOR HAS HE SUFFICIENTLY PLED DELIBERATE INDIFFERENCE TO HIS CONSTITUTIONAL RIGHTS ................................................................. 12

        A.    Plaintiff has failed to demonstrate a "custom or usage" so widespread as to demonstrate the acquiencence of policy-making officials of the City of New York, and as a result his claim fails ................................................................. 13

            i.    There is no Custom or Usage of NYPD officers improperly using chokeholds ................................................................. 14

**Page**

ii.    There is no "custom or practice" of
misusing Tasers .................................................................... 16

B.    Plaintiff has failed to demonstrate that the City
of New York was deliberately indifferent, that
it failed to train, that it failed to supervise, or
that it failed to discipline, and as a result his
claim fails ................................................................................ 18

V.    PLAINTIFF'S CLAIMS FOR FALSE ARREST
AND   IMPROPER   SEARCH   SHOULD   BE
DISMISSED, AS PROBABLE CAUSE EXISTED
FOR HIS ARREST AND BECAUSE HE FAILS TO
PLEAD A VIABLE CLAIM FOR IMPROPER
SEARCH ......................................................................................... 20

A.    Even by plaintiff's own account, arguable
probable cause existed for his arrest ..................................... 21

B.    Plaintiff has not pled a constitutionally
impermissible search ............................................................. 23

VI.    PLAINTIFF'S CLAIMS FOR INTENTIONAL
AND   NEGLIGENT   INFLICTION   OF
EMOTIONAL   DISTRESS   SHOULD   BE
DISMISSED ................................................................................... 24

CONCLUSION ................................................................................................. 26

# TABLE OF AUTHORITIES

**Cases**                                                                                                                                    **Pages**

*5 Borough Pawn, LLC. v. City of New York*,
   640 F. Supp. 2d 268 (S.D.N.Y. 2009) ..................................................................................11

*Abdulgalil Kaid Alwan v. City of New York*,
   311 F. Supp. 3d 570 (E.D.N.Y. 2018) .................................................................................15

*Alliance for Envtl. Renewal, Inc. v. Pyramid Crossgates Co.*,
   436 F.3d 82 (2d Cir. 2006) ...................................................................................................4

*Annunziata v. City of New York*,
   No. 06 Civ. 7637 (SAS), 2008 U.S. Dist. LEXIS 42097
   (S.D.N.Y. May 28, 2008) ....................................................................................................22

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) .................................................................................................2, 10, 23

*Baur v. Veneman*,
   352 F.3d 625 (2d Cir. 2003) .................................................................................................4

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) .........................................................................................................2, 25

*Blue Tree Hotels Inv. (Canada), Ltd. v. Starwood Hotels & Resorts*
   *Worldwide, Inc.*,
   369 F.3d 212 (2d Cir. 2004) .................................................................................................3

*Board of Comm'rs of Bryan Cty. v. Brown*,
   520 U.S. 397 (1997) ..........................................................................................................18

*Boddie v. City of New York*,
   No. 15-cv-4275 (GHW), 2016 WL 1466555
   (S.D.N.Y. Apr. 13, 2016) ..............................................................................................16, 18

*Cacchillo v. Ismed, Inc.*,
   638 F.3d 401 (2d Cir. 2011) ............................................................................................. 4-5

*Chambers v. Time Warner, Inc.*,
   282 F.3d 147 (2d Cir. 2002) .................................................................................................3

*City of Canton v. Harris*,
   489 U.S. 378 (1989) ......................................................................................................13, 18

*City of Los Angeles v. Lyons*.
   461 U.S. 95 (1983) ..........................................................................................................5, 8

**Cases**             **Page**

*City of St. Louis v. Praprotnik*,
   485 U.S. 112 (1985) ..................................................................................13

*Clarex Ltd. v. Natixis Sec. Am. LLC*,
   2012 U.S. Dist. LEXIS 147485 (S.D.N.Y. Oct. 12, 2012) ......................................4

*Collins v. City of New York*,
   923 F. Supp. 2d 462 (E.D.N.Y. 2013) .....................................................................7

*Connick v. Thompson*,
   563 U.S. 51 (2011) ..................................................................................................18

*Day v. Armstrong*,
   99-281, 2000 U.S. App. LEXIS 31029  (2d Cir. Nov. 30, 2000) ............................10

*Delorbe-Bell v. City of New York*,
   No. 15-CV-2344 (LOS), 2016 U.S. Dist. LEXIS 49363, 2016 WL 1451581
   (S.D.N.Y. Apr. 12, 2016) ............................................................15, 16, 18, 19

*Dixon v. City of New York*,
   2017 U.S. Dist. LEXIS 119042 (S.D.N.Y. July 27, 2017) .......................... 16, 19-20

*In re Elevator Antitrust Litig.*,
   502 F.3d 47 (2d Cir. 2007) .........................................................................................2

*Fowlkes v. Rodriguez*,
   584 F. Supp. 2d 561 (E.D.N.Y. 2008) .....................................................................3

*Goldberg v. Town of Rocky Hill*,
   973 F.2d 70 (2d Cir. 1992) ......................................................................................11

*Goldstein v. Pataki*,
   516 F.3d 50 (2d Cir. 2008) ........................................................................................3

*Gomez v. Whitney*,
   757 F.2d 1005 (9th Cir. 1985) ...............................................................................10

*Green v. City of Mt. Vernon*,
   2015 U.S. Dist. LEXIS 42533 (S.D.N.Y. Mar. 31, 2015) .....................................15

*Gutierrez v. Reddien*,
   No. 15CV822A, 2019 U.S. Dist. LEXIS 83093 (W.D.N.Y. May 15, 2019)...........10

*Harris v. City of Newburgh*,
   No. 16-CV-2731 (KMK), 2017 U.S. Dist. LEXIS 159561
   (S.D.N.Y. Sep. 27, 2017) .......................................................................................15

**Cases**                                                           **Page**

*Howell v. New York Post Co.*,
  81 N.Y.2d 115 (1993) ........................................................................................24

*Hunter v. Bryant*,
  502 U.S. 224 (1991) ..........................................................................................22

*Jean-Laurent v. Wilkinson*,
  540 F. Supp. 2d 501 (S.D.N.Y. 2008)..............................................................22

*Jenkins v. City of New York*,
  478 F.3d 76 (2d Cir. 2007)................................................................................13

*Joseph v. City of New York*,
  No. 16-CV-2004 (PKC) (LB), 2017 U.S. Dist. LEXIS 155426
  (E.D.N.Y. Sep. 22, 2017)..................................................................................18

*Kelsey v. County of Schoharie*,
  567 F.3d 54 (2d Cir. 2009)................................................................................23

*Lewis v. Gallivan*,
  315 F. Supp. 2d 313 (W.D.N.Y. 2004) ............................................................10

*Ligon v City of New York*,
  288 F.R.D. 72 (S.D.N.Y. Feb. 11, 2013) ...........................................................6

*Lipsky v. Commonwealth United Corp.*,
  551 F.2d 887 (2d Cir. 1976)..............................................................................15

*Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*,
  797 F.3d 160 (2d Cir. 2015)................................................................................3

*Lujan v. Defenders of Wildlife*,
  504 U.S. 555 (1992)..............................................................................................4

*Lynch v. Ackley*,
  No. 3:12-CV-537 (MPS), 2013 U.S. Dist. LEXIS 178073
  (D. Conn. Dec. 19, 2013)............................................................................ 24-25

*MacIssac v. Town of Poughkeepsie*,
  770 F. Supp. 2d 587 (S.D.N.Y. 2011)................................................................8

*MacNamara v. City of New York*,
  275 F.R.D. 125 (S.D.N.Y. May 19, 2011)..........................................................7

*Malley v. Briggs*,
  475 U.S. 335 (1986)............................................................................................22

**<u>Cases</u>**                                                                                                                    **<u>Page</u>**

*Marcel v. City of New York*,
   No. 88 Civ. 7017 (LLS), 1990 U.S. Dist. LEXIS 4094
   (S.D.N.Y. Apr. 10, 1990) ........................................................................................15

*Marlin v. City of New York*,
   No. 15-cv-2235 (CM), 2016 WL 4939371 (S.D.N.Y. Sept. 7, 2016) ....................16

*McLennon v. City of New York*,
   171 F.Supp. 3d 69 (E.D.N.Y. Mar. 18, 2016)......................................................5, 6

*Mercado v. City of New York*,
   2011 U.S. Dist. LEXIS 140430 (S.D.N.Y. Dec. 5, 2011) .....................................13

*Monell v. Dep't of Social Services*,
   436 U.S. 658 (1978)...........................................................................................12, 13

*N.G. v. Connecticut*,
   382 F.3d 225 (2d Cir. 2007)...................................................................................24

*Nelson v. City of Stamford*,
   No. 3:09-cv-1690 (VLB), 2012 U.S. Dist. LEXIS 8907
   (D. Conn. Jan. 25, 2012)........................................................................................24

*Oklahoma City v. Tuttle*,
   471 U.S. 808 (1985)................................................................................................12

*Osterhoudt v. City of New York*,
   No. 10-CV-3173 (RJD) (RML), 2012 U.S. Dist. LEXIS 139700
   (E.D.N.Y. Sept. 27, 2012)......................................................................................15

*Papasan v. Allain*,
   478 U.S. 265 (1986)..................................................................................................3

*Pesola v. City of New York*,
   No. 15-cv-1917 (PKC)(SN), 2016 U.S. Dist. LEXIS 42977
   (S.D.N.Y. Mar. 30, 2016) .........................................................................................8

*Quezada v. Roy*,
   2015 U.S. Dist. LEXIS 140653 (S.D.N.Y. Oct. 13, 2015) ....................................24

*Restivo v. Hessemann*,
   846 F.3d 547 (2d Cir. 2017)...................................................................................21

*Rieger v. Drabinsky (In re Livent Noteholders Sec. Litig.)*,
   151 F. Supp. 2d 371 (S.D.N.Y. 2001)......................................................................3

**Cases**                                                                                    **Page**

*Rodriguez v. Patricio,*
No. 11 Civ. 515 (ALC) (GWG), unpub. op. at 10
(S.D.N.Y. Mar. 15, 2013) ...........................................................................................15

*Shain v. Ellison,*
356 F.3d 213 (2d Cir. 2004)...........................................................................................5

*Simms v. City of New York,*
480 Fed. Appx. 627 (2d Cir. 2012)................................................................................15

*Sorlucco v. New York City Police Dep't,*
971 F.2d 864 (2d Cir. 1992)...........................................................................................13

*Stone v. Department of Investigation,*
No. 91 Civ. 2471(MBM), 1992 U.S. Dist. LEXIS 1120, 1992 WL 25202
(S.D.N.Y. Feb. 4, 1992) ..................................................................................... 10, 11-12

*Summers v. Earth Island Inst.,*
555 U.S. 488 (2009)........................................................................................................5

*Susan B. Anthony List v. Driehaus,*
573 U.S. 149 (2014)......................................................................................................4, 5

*Tieman v. City of Newburgh,*
No. 13-CV-4178 (KMK), 2015 U.S. Dist. LEXIS 38703
(S.D.N.Y. Mar. 26, 2015) ...............................................................................................7

*United States v. Gordils,*
982 F.2d 64 (2d Cir. 1992)............................................................................................23

*United States v. Paulino,*
445 F.3d 211 (2d Cir. 2006)..........................................................................................23

*United States v. Vazquez,*
145 F.3d 74 (2d Cir. 1998).............................................................................................4

*Zellner v. Summerlin,*
494 F.3d 344 (2d Cir. 2007)..........................................................................................22

**Statutes**

42 U.S.C. § 1983...............................................................................................9, 10, 12, 24

Fed. R. Civ. P. 8(a)(2)........................................................................................................2

Fed. R. Civ. P. 12(b) .....................................................................................................1, 3

**Statutes**                                                                                        **Cases**

Fed. R. Civ. P. 12(b)(1) ............................................................................................2, 4

Fed. R. Civ. P. 12(b)(6) ...............................................................................................2

N.Y. Admin. Code, §24-203(a)(1) ..............................................................................21

N.Y. Admin. Code, § 24-218(b)-(b)(1) .......................................................................21

N.Y. Pen. L. § 10.08 ...................................................................................................22

**Other Authorities**

Restat 3d of the Law, Torts: Liability for Physical and Emotional Harm, § 46 ...........................24

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------ x

TOMAS MEDINA,

                                     Plaintiff,

                  -against-

CITY OF NEW YORK, et al.,

                               Defendants.

------------------------------------------------------------------------ x

**DEFENDANTS' PARTIAL MOTION TO DISMISS PLAINTIFF'S INITIAL COMPLAINT**

19 Civ. 9412 (AJN) (OTW)

## <u>PRELIMINARY STATEMENT</u>

Defendants the City of New York, Commissioner James O'Neill, Chief of Department Terrance Monahan, Sergeant Hekmatullah Mukhtarzada, Police Officer Shanee Hansler, Police Officer David Callan, Captain William Gallagher, Sergeant. Jose A. Gomez, Police Officer Nay Htoo, and Police Officer Christopher Siciliano (collectively,[1] "defendants") seek to dismiss plaintiff's claims, as set forth plaintiff's Initial Complaint ("Complaint"), (Dkt. No. 1), for equitable relief, municipal liability, false arrest, unlawful search, negligent infliction of emotional distress, intentional infliction of emotional distress and for such further relief as the Court deems just and proper, pursuant to Rule 12(b) of the Federal Rules of Civil Procedure.

## <u>STATEMENT OF THE FACTS</u>

Plaintiff brought the instant action alleging that at approximately 11:40 p.m. on July 14, 2018, he was listening to music on a speaker in the vicinity of 438 West 206th Street, in the Washington Heights neighborhood of New York County. (Complaint, at ¶ 88). Plaintiff alleges that defendants Det. Fabio Nunez and P.O. Shanee Hansler, working as police officers of the

---

[1] Please note that Det. Fabio Nunez is not represented by the Office of Corporation Counsel.

New York City Police Department ("NYPD"), heard the music while on patrol in an unmarked police car. (*Id.*, at ¶ 86). Det. Nunez and P.O. Hansler discovered plaintiff and his friends listening to music on a speaker in front of a closed car dealership. (*Id.*, at ¶¶ 88 – 89). Plaintiff and his friends began to put the speaker away once asked. (*Id.*, at ¶ 90). At that point, however, Det. Nunez informed plaintiff that he would be receiving a summons for the music. (*Id.*, at ¶ 92). Plaintiff repeatedly refused to provide identification when asked and then proceeded to turn and walk away. (Complaint, at ¶¶ 92 – 95). At that point, Det. Nunez forcibly apprehended plaintiff, including by employing a chokehold and using his Taser several times. (*Id.*, at ¶¶ 95– 110). After a minutes long struggle, and after more than a dozen additional officers arrived on scene, plaintiff was ultimately arrested. (Complaint, at ¶¶ 102 & 110). Additional facts are reserved for discussion below.

## STANDARD OF REVIEW

A claim may be dismissed where the Court lacks subject matter jurisdiction to hear it, *see* Fed. R. Civ. P. 12(b)(1), as well as for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).

To survive a motion to dismiss, a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Under this standard, a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A pleading that offers mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. Nor does a complaint suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement." *Id.* at 557; *see also*, *In re Elevator Antitrust Litig.*, 502 F.3d 47, 50 (2d Cir. 2007) ("[w]hile *Twombly* does not require heightened fact pleading of specifics, it

does require enough facts to nudge plaintiffs' claims across the line from conceivable to plausible") (quotation omitted). The Second Circuit has additionally noted that a plaintiff must "provide grounds upon which his claim rests through factual allegations sufficient to raise a right to relief above the speculative level." *Goldstein v. Pataki*, 516 F.3d 50, 56 (2d Cir. 2008) (quotation omitted).

In deciding a motion to dismiss, pursuant to Rule 12(b) of the Federal Rules of Civil Procedure, the court is required to accept the factual allegations in the complaint as true and to construe all reasonable inferences in plaintiff's favor. *See, e.g.*, *Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*, 797 F.3d 160, 169 (2d Cir. 2015). However, although the court must accept plaintiff's factual allegations as true, it does not need to accept legal conclusions or other conclusory statements. *E.g.*, *Rieger v. Drabinsky* (*In re Livent Noteholders Sec. Litig.*), 151 F. Supp. 2d 371, 404 (S.D.N.Y. 2001) (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). Further, in deciding a motion to dismiss, the court is "permitted to consider and take judicial notice of certain documents, such as matters of public record, and reject the truthfulness of those allegations that are contradicted by the documents." *Fowlkes v. Rodriguez*, 584 F. Supp. 2d 561, 574 (E.D.N.Y. 2008). In so doing, the Court can consider "documents attached to the complaint as an exhibit or incorporated in it by reference... matters of which judicial notice may be taken, or… documents either in plaintiffs' possession or of which plaintiffs had knowledge and relied on in bringing suit." *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002) (quotation omitted). Similarly, "even where a document is not incorporated by reference, the court may nevertheless consider it where the complaint relies heavily upon its terms and effect, which renders the document integral to the complaint." *Id.* (quotation omitted). Finally, matters

of public record, such as court filings, may be considered. *Blue Tree Hotels Inv. (Canada), Ltd. v. Starwood Hotels & Resorts Worldwide, Inc.*, 369 F.3d 212, 217 (2d Cir. 2004).

As such, defendants respectfully submit that, in accordance with the practice of numerous courts within this Circuit, this Court may take judicial notice of the documents annexed to the Brocker Declaration ("Brocker Decl."), as Exhibits "A" through "D."

## ARGUMENT

**I.   PLAINTIFF'S CLAIM FOR EQUITABLE RELIEF SHOULD BE DISMISSED, BECAUSE PLAINTIFF LACKS STANDING TO SEEK THE REDRESS REQUESTED**

Plaintiff does not have standing to bring any of his purported claims for equitable relief, because he pleads a single instance of allegedly unconstitutional conduct, which is insufficient to demonstrate a sufficient likelihood of future harm; therefore, plaintiff has failed to allege an injury-in-fact for his claim for equitable relief.

The proper vehicle for challenging standing in a motion to dismiss is pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure. *Alliance for Envtl. Renewal, Inc. v. Pyramid Crossgates Co.*, 436 F.3d 82, 89 n.6 (2d Cir. 2006); *Clarex Ltd. v. Natixis Sec. Am. LLC*, 2012 U.S. Dist. LEXIS 147485, at *26 (S.D.N.Y. Oct. 12, 2012).

Plaintiff bears the burden of demonstrating standing for each claim and form of relief sought. *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014); *Baur v. Veneman*, 352 F.3d 625, 641 n.15 (2d Cir. 2003). Although at the pleading stage, plaintiff need not craft his allegations with precise detail, nor must the plaintiff prove his alleged injury, *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992), a plaintiff may not simply rely on the recitation of prior events or the seriousness of the conduct alleged in order to demonstrate standing. *United States v. Vazquez*, 145 F.3d 74, 80-81 (2d Cir. 1998). ("[t]he standing issue must [] be resolved irrespective of the merits of the substantive claims.").

In order to plead standing for a claim of equitable relief, "a plaintiff must show... injury in fact, causation, and redressability." *See*, *Cacchillo v. Ismed, Inc.*, 638 F.3d 401, 404 (2d Cir. 2011) (citing *Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009)). The injury alleged by a single plaintiff seeking equitable relief "must be concrete and particularized and actual or imminent, not conjectural or hypothetical." *Susan B. Anthony List*, 573 U.S., at 158 (quotation omitted).

In the instant case, plaintiff seeks declaratory and injunctive relief sufficient to "stop the NYPD from tolerating and encouraging these continued violent and illegal acts." (Complaint, at ¶ 10). Indeed, plaintiff asks for injunctive relief against the City of New York in each of his causes of action and in his Request for Relief plaintiff requests that the Court issue "permanent injunctions addressing misuse of chokeholds and Tasers by NYPD officers through training, supervision, investigation, prosecution, and discipline." (Complaint, at ¶ 199).

Plaintiff seeks equitable relief that is highly analogous to that sought in *City of Los Angeles v. Lyons*. 461 U.S. 95 (1983). In *Lyons*, the Supreme Court found that a plaintiff who had been subjected to a police officer's use of a chokehold following a traffic stop lacked standing to seek systemic injunctive relief regarding chokeholds. *Id.*, at 104-107. The Court held that the prior injury was insufficient to demonstrate a "likelihood that plaintiff will again be wronged *in a similar way*." *Id.*, at 111 (emphasis added).

The Second Circuit applied this holding in *Shain v. Ellison* to decide that a single improper strip search did not suffice to demonstrate a likelihood of future unconstitutional strip searches. *See*, *Shain v. Ellison*, 356 F.3d 213, 215 (2d Cir. 2004). The Second Circuit went on to hold that it would be "'entirely conjectural' to assert that the plaintiff would be arrested and detained in the same manner so as to give rise to the similar unconstitutional harm." *McLennon*

- 5 -

*v. City of New York*, 171 F.Supp. 3d 69, 104 (E.D.N.Y. Mar. 18, 2016) (interpreting and quoting *Shain*, 356 F.3d, at 215).

Similarly, here, plaintiff alleges one prior instance of injury. He alleges that on July 14, 2018, he was subjected to the use of a chokehold and application of Taser discharges. (Complaint, at ¶¶ 97-99). This prior instance of alleged misuse of a Taser and a chokehold is insufficient to demonstrate a likelihood that he will suffer a similar injury in the future. Under the plain reading of *Lyons* and *Shain*, his equitable relief fails.

Plaintiff casts aspersions in the hopes that it will bolster his claim for equitable relief. He alleges that the 34th Precinct of the NYPD has a "reputation" of overpolicing, policing for quality-of-life offenses, and using excessive force, (Complaint, at ¶133), and that quality-of-life policing strategies disproportionately impact men of color. (Complaint, at ¶ 128). However, none of this is tied to statistics or other factual development and it completely fails to demonstrate that plaintiff is "likely" or "imminently" going to be subjected to the application of an unlawful chokehold and Taser. These conclusory allegations about the "reputation" of a precinct in which plaintiff lives are merely a transparent attempt to circumvent the standing requirements for equitable relief by his attorneys. It is "entirely conjectural" to assert that plaintiff is likely to be again subjected to an illegal chokehold or illegal Taser use in the future.

Plaintiff next seeks to generalize to bolster his claim, and states that it is "highly likely that [plaintiff] will face the effects of over-policing, including excessive force, again..." (Complaint, at ¶ 132). However, as the Supreme Court and the Second Circuit have made clear, plaintiff must plead a likelihood of future harm of "a similar nature" to that alleged, *i.e.* improper use of a chokehold or Taser. Plaintiff alleges no additional facts beyond his fear of being subjected to excessive force again and his understanding of the "reputation" of the 34th Precinct

to make this showing. Plaintiff does not allege that he has been subjected to multiple instances of chokeholds or Taser use. *See Ligon v City of New York*, 288 F.R.D. 72, 81 (S.D.N.Y. Feb. 11, 2013). And plaintiff does not attempt to bring this matter as a class action.[2] The mere fact that plaintiff will continue to barbeque and listen to music in the same neighborhood at unspecified dates in the future, does not give rise to a "real and immediate threat of future injury." *See*, *MacNamara v. City of New York*, 275 F.R.D. 125, 141 (S.D.N.Y. May 19, 2011) (dismissing claims for equitable relief based on stated intent to attend future demonstrations and an ongoing policy of falsely arresting demonstrators).

Plaintiff finally attempts to overcome *Lyons* by stating that there were 30 lawsuits and 582 complaints made to the Civilian Complaint Review Board ("CCRB") that alleged improper chokeholds against any NYPD officer during the four years from January, 2015 to December, 2018. (Complaint, at ¶ 31). Plaintiff then conclusorily and speculatively states "this is only a small fraction" of the total number of these events. (*Id.*, at ¶ 32).

Similarly, plaintiff pleads that there were 182 complaints made to CCRB that alleged Taser misuse against the NYPD from January, 2017 – December, 2018. (Complaint, at ¶ 45). .

Plaintiff fails to connect the dots, however, of how 600 allegations of unlawful chokeholds over a four-year period against a department with over 36,000 police officers generates any likelihood of his future harm. (*See*, Brocker Decl., Exhibit "A," at p. 22). Plaintiff, further, simply ignores the impact of false complaints, exonerations, and unsubstantiated complaints among these 600 allegations. *See*, *e.g.*, *Tieman v. City of Newburgh*, No. 13-CV-4178 (KMK), 2015 U.S. Dist. LEXIS 38703, at *49 (S.D.N.Y. Mar. 26, 2015) (in the

---

[2] Indeed, even had plaintiff brought this matter as a class action, if no class representative could demonstrate a likelihood of future harm, that class also could not seek equitable relief. *See*, *e.g.*, *McLennon*, 171 F.Supp. 3d, at 104 (dismissing the equitable relief portion of a purported class action, because each class representative only alleged a single instance of past injury).

context of demonstrating a *Monell* policy, the Court held that "the number of complaints filed, without more, indicates nothing, as people may file a complaint for many reasons, or for no reason at all, and that they filed complaints does not indicate that the policies that the plaintiff alleges exist do in fact exist") (quotations omitted)); *see also*, *Collins v. City of New York*, 923 F. Supp. 2d 462, 479 (E.D.N.Y. 2013) (allegations that do not result in adjudications of misconduct (*e.g.* settlements or unsubstantiated allegations) do not plausibly allege existence of facts alleged and cannot form the basis of a *Monell* policy).

As a result, even if the CCRB reports that plaintiff references were to considered, they marshal facts *against* standing, not for it. Of the approximately 580 complaints made to CCRB regarding chokeholds that plaintiffs cites, only 8.3% were substantiated. (*See*, Brocker Dec., Exhibit "B," at p. 14, Table 2). Further, plaintiff does not separate adjudications finding a violation of the NYPD's internal procedures, which ban chokeholds for instance, from adjudications finding that the force was unlawful under the Fourteenth Amendment.[3] As a result, it is impossible to know if all or any of the substantiated complaints made to CCRB were actually unlawful, under the Fourteenth Amendment, another reason that they cannot be used to support plaintiff's claim for equitable relief.

Similarly, of the 182 CCRB complaints of Taser misuse, only 13 allegations were substantiated as having violated NYPD guidelines. (*See*, Brocker Dec., Exhibit "B," at p. 14, Table 2). Plaintiff again cites to no decision adjudicating that force used was actually unlawful under the Fourteenth Amendment.

---

[3] Indeed, there is no constitutional right to be free from a chokehold in the abstract, as it may be reasonable in certain situations. *See*, *Pesola v. City of New York*, No. 15-cv-1917 (PKC)(SN), 2016 U.S. Dist. LEXIS 42977, at *25 (S.D.N.Y. Mar. 30, 2016) (addressing allegations of NYPD officers using a chokehold, the Court stated that "the Patrol Guide... prohibition of certain techniques does not render those techniques per se unconstitutional").

In order to establish injury-in-fact, plaintiff must plead not just a likelihood of future harm but also a municipal policy of committing the complained of violations. *Lyons*, 461 U.S., at 106. "*Lyons* defines its 'official policy' requirement in a significantly more limited way than the courts have interpreted this same requirement under *Monell*." *MacIssac v. Town of Poughkeepsie*, 770 F. Supp. 2d 587, 596 (S.D.N.Y. 2011). Although "standing under *Lyons* and municipal liability under *Monell* [both] require an official policy sanctioning the unconstitutional conduct at issue[,]... a policy sufficient to hold a municipality liable may be too 'unofficial' to give the plaintiff standing to sue for equitable relief in the first place." *Id*. Because plaintiff's allegations could not give rise to the inference of an unconstitutional municipal policy for *Monell*,[4] *a fortiori* he cannot demonstrate the requisite policy for standing to seek equitable relief.

Simply put, plaintiff's relevant allegations are that on July 14, 2018, he was subjected to excessive force when Det. Nunez used a chokehold and applied 13 Taser evolutions to subdue him. (Complaint, at ¶ 6). This does not give rise to standing for systemic equitable relief. Plaintiff only has standing for a lawsuit for damages.

As a result, the Court lacks subject matter jurisdiction over plaintiff's claims for equitable relief, and they must be dismissed.

---

[4] Plaintiff's inability to demonstrate a "custom or usage" for his *Monell* claim is addressed more fully *infra* at Section IV(A)(i)–(ii).

## II.   PLAINTIFF'S CLAIM AGAINST NYPD COMMISSIONER JAMES O'NEILL AND NYPD CHIEF OF DEPARTMENT TERRANCE MONAHAN MUST BE DISMISSED, AS PLAINTIFF HAS NOT ALLEGED THEIR PERSONAL INVOLVEMENT

Plaintiff fails to state any facts demonstrating personal involvement of Ret. NYPD Commissioner James O'Neill (the "Commissioner") and NYPD Chief of Department Terrance Monahan (the "Chief of Dep't"), and they should be dismissed from this matter as a result.

Plaintiff seeks damages from the Commisioner and Chief of Dep't in counts III (Excessive Force) and IV (False Arrest and Improper Search). (Complaint, at ¶¶ 150 & 155). However, it is well established that to state a claim, pursuant to 42 U.S.C. § 1983, "a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S., at 676. A plaintiff's obligation to plausibly allege a defendant's personal involvement in the claimed constitutional violation is not excused when that defendant holds a supervisory position. *Day v. Armstrong*, 99-281, 2000 U.S. App. LEXIS 31029, at *4 (2d Cir. Nov. 30, 2000) ("[b]ecause § 1983 liability may not be founded on a theory of respondeat superior, supervisory officials may be held liable only on a showing of their 'personal involvement' in the allegedly unconstitutional conduct.").

Plaintiff alleges that the Commissioner and the Chief of Dep't issued post-incident statements regarding the incident at issue in this matter. (Complaint, at ¶ 116). However, plaintiff cannot anchor his claims against these individuals, personally or officially, on conduct that post-dates the alleged violation of his constitutional rights; it is impossible for the cause of an incident to occur after the incident itself.

Plaintiff next claims that the Chief of Dep't did not properly investigate this incident. "'There is, however, no constitutional right to an investigation by government officials,'" *Gutierrez v. Reddien*, No. 15-CV-822A, 2019 U.S. Dist. LEXIS 83093, at *34 (W.D.N.Y. May

15, 2019) (quoting *Stone v. Department of Investigation*, No. 91 Civ. 2471(MBM), 1992 U.S. Dist. LEXIS 1120, 1992 WL 25202, at *2 (S.D.N.Y. Feb. 4, 1992)). And "courts have not recognized inadequate investigation 'as sufficient to state a civil rights claim unless there was another recognized constitutional right involved..." *Gutierrez*, 2019 U.S. Dist. LEXIS 83093, at *34.

Plaintiff has pled neither facts demonstrating he had a right to any investigation, and as a result he fails to state a claim against the Commissioner and the Chief of Dep't.

Finally, to the extent that plaintiff seeks to hold either the Commissioner or the Chief of Dep't liable as a result of plaintiff's state law claims via vicarious *respondeat superior* liability, this is also misplaced. Neither the Commissioner nor the Chief of Dep't are properly considered the employer of any of the other defendants; the City of New York rather employs all of the individual defendants. *See*, *5 Borough Pawn, LLC. v. City of New York*, 640 F. Supp. 2d 268, 297 (S.D.N.Y. 2009). As the Court in *5 Borough Pawn, LLC* went on to explain, "[i]t is obvious that the only reason Kelly is a named defendant in this lawsuit is because he is the Police Commissioner. In other words, plaintiffs are really suing Kelly in his official capacity. But that renders their claims against Kelly duplicative of their claims against the City." *Id.*, at 297-298. (citing *Goldberg v. Town of Rocky Hill*, 973 F.2d 70, 73 (2d Cir. 1992)).

In their personal capacities, the Commissioner and the Chief of Dep't have taken no actions that involve them in the alleged constitutional violations complained of by plaintiff; in their official capacities they are being sued as analogs to another named defendant in this matter, the City of New York. Accordingly, just as the Court did in       *5 Borough Pawn, LLC.*, this Court should dismiss them as parties in this matter.

### III.   PLAINTIFF'S CLAIMS AGAINST CAPT. WILLIAM J. GALLAGHER, SGT. HEKMATULLAH MUKHTARZADA, AND SGT. JOSE A. GOMEZ, SHOULD BE SIMILARLY DISMISSED, AS PLAINTIFF HAS NOT PROPERLY PLED A CLAIM FOR SUPERVISORY LIABILITY

Similar to the claims against the Commissioner and Chief of Dep't, plaintiff sues Capt. William J. Gallagher, Sgt. Hekmatullah Mukhtarzada, and Sgt. Jose A. Gomez in a "supervisory capacity" and because they each are alleged to have improperly failed to investigate the incident giving rise to the instant lawsuit. (Complaint, at ¶¶ 18, 22, 23, 29 n.2, & 51).

Plaintiff does not allege that any of these defendants committed any act or omission prior to plaintiff's arrest and Det. Nunez's use of force to effectuate that arrest, other than simply being supervisors within the NYPD, and plaintiff does not therefore adequately plead personal involvement of Capt. Gallagher, Sgt. Gomez, or Sgt. Mukhtazarda.

As set forth above in Section II, plaintiff has not properly pled a failure to investigate against these supervisors either. *E.g.*, *Stone v. Department of Investigation*, No. 91 Civ. 2471(MBM), 1992 U.S. Dist. LEXIS 1120, 1992 WL 25202, at *2 (S.D.N.Y. Feb. 4, 1992).

As a result, all claims against Capt. William J. Gallagher, Sgt. Hekmatullah Mukhtarzada, and Sgt. Jose A. Gomez should be dismissed.

### IV.   PLAINTIFF'S *MONELL* CLAIMS AGAINST THE CITY OF NEW YORK SHOULD BE DISMISSED BECAUSE HE HAS NOT SUFFICIENTLY PLED A POLICY, PRACTICE, OR CUSTOM, NOR HAS HE SUFFICIENTLY PLED DELIBERATE INDIFFERENCE TO HIS CONSTITUTIONAL RIGHTS

Plaintiff states direct *Monell* claims against the City of New York, pursuant to 42 U.S.C. § 1983, alleging the existence of an unconstitional custom or usage as well as deliberate indifference to the constitional rights of indiviuals, in the form of inadequate training, supervision, and discipline. [5] (Complaint, at ¶ 138-142). Plaintiff has failed to plead sufficient

---

[5] Plaintiff does not appear to challenge the formal policies of the City of New York, nor does plaintiff appear to challenge any actions attributed to a single policy making official.

facts for either of these theories, and as a result his federal claims against the City of New York should be dismissed.

In order to hold a municipality liable as a "person" within the meaning of § 1983, a plaintiff must establish that the municipality itself was somehow at fault. *Oklahoma City v. Tuttle*, 471 U.S. 808, 810 (1985); *Monell v. Dep't of Social Services*, 436 U.S. 658, 690-91 (1978). To state a claim for municipal liability here, plaintiff must allege plausibly: (A) the existence of an unlawful practice by subordinate officials so permanent and well settled to constitute "custom or usage," with proof that this practice was so manifest as to imply the acquiescence of policy-making officials. *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127-30 (1985) (plurality opinion); *Sorlucco v. New York City Police Dep't*, 971 F.2d 864, 871 (2d Cir. 1992); or (B) a failure to train or supervise that amounts to "deliberate indifference" to the rights of those with whom the municipality's employees interact. *City of Canton v. Harris*, 489 U.S. 378, 388 (1989); *Jenkins v. City of New York*, 478 F.3d 76, 94 (2d Cir. 2007). "To establish *Monell* liability, the causal link must be strong; that is, the policy must be the 'moving force' behind a constitutional violation." *Mercado v. City of New York*, 2011 U.S. Dist. LEXIS 140430, at *23 (S.D.N.Y. Dec. 5, 2011) (quoting *Monell*, 436 U.S. at 691, 694).

> A.   Plaintiff has failed to demonstrate a "custom or usage" so widespread as to demonstrate the acquiencence of policy-making officials of the City of New York, and as a result his claim fails.

Plaintiff asserts two practices that are so widespread as to constitute a "custom or usage;" first, plaintiff alleges that the NYPD has a practice or custom of officers "unlawfully using chokeholds," and second that the NYPD has a practice or custom of officers "unlawfully using... Tasers." (Complaint, at ¶ 139).

Plaintiff offers minimal factual predicate for these claims, however. Plaintiff relies almost entirely on two reports and an appendix of lawsuits to bolster both of these claims. Even a cursory examination finds the factual record does not support plaintiff's allegations.

       i.     There is no Custom or Usage of NYPD officers improperly using chokeholds

Plaintiff's entire theory that the NYPD has a custom or usage of employing unlawful chokeholds is derivative of the 2018 CCRB Annual Report (the "2018 Rep't"), the statistical appendix to which documents 582 allegations of improper chokeholds over the course of a period of time from January 2015 to Decmber, 2018. (Complaint, at ¶ 38).[6] Plaintiff also cites another 30 lawuits, which are likely at least partially duplicative. However, even assuming they were not duplicative, 612 incidents in which a chokehold was reported over the course of four years is hardly sufficient to demonstrate a practice so widespread as to constitute a "custom or usage" in a department of over 36,000 police officers, (*see*, Brocker Decl., Exhibit "A," at p. 22), who made over 1,000,000 arrests and had innumerably more interactions not resulting in custodial arrest. (*See*, Brocker Decl., Exhibit "C"). Even just numerically, 600 complaints over such a course of time, in such a large department, does not generate an inference of a custom or usage.

Further, the CCRB and NYPD have issued multiple reports seeking to address this very issue, including the one cited by plaintiff. Indeed, the 2018 Rep't notes that in 2014 chokeholds were 5.8% of all CCRB allegations of excessive force, but that it decreased, and as of 2018 they formed only 3.8% of the all allegations of excessive force. Plaintiff does not address the outcome of these allegations. That same report's Disposition of Force Allegations chart notes that during

---

[6] Plaintiff's Complaint in FN 14 notes that this data is derived from two figures in the 2018 Annual Report by CCRB, Figure 02 & Figure 15. However, neither of those figures support this data, which appears to only exist in CCRB Annual Report 2018 Statistical Appendix, Table 2. (Annexed to the Brocker Decl., as Exhibit "B").

the period of time from 2014-2018, of the 582 allegations of improper chokeholds, 29.3% were unfounded, meaning that the investigators found by a preponderance of the evidence that the events complained of did not happen (*See*, Brocker Decl., Exhibit "B," at p. 63, Table 25). That is to say in excess of 170 of the 582 allegations were found to not have occured. Another 45.5% were unsubstantiated. (*Id.*) And only 8.3% were substantiated. (*Id.*). Further, of the lawsuits cited none had resulted in a finding of liability; the vast majority were simply settled. *Harris v. City of Newburgh*, No. 16-CV-2731 (KMK), 2017 U.S. Dist. LEXIS 159561, at *15 (S.D.N.Y. Sep. 27, 2017) ("the Court finds that the recitation of these complaints and lawsuits—not one of which resulted in a finding of liability—does not state a claim of a widespread custom pursuant to *Monell*").

When properly contextualized, plaintiff has pled a total of 48 substantiated chokehold allegations against NYPD officers over the course of the four years preceding the filing of the complaint. Further, plaintiff does not separate adjudications finding a violations of the NYPD's internal procedures to CCRB, which ban chokeholds, from adjudications finding that the force was unlawful under the Fourteenth Amendment; as a result, it is impossible to know if all or any of the substantiated complaints were actually unlawful, and they should not be used to bolster plaintiff's claim for municipal liability.

Even considering such complaints, plaintiff's claim fails because courts in this Circuit have agreed that even a few hundred substantiated allegations of misconduct are simply insufficient to plead a *Monell* claim for a custom or usage against the NYPD. *See*, *e.g.*, *Abdulgalil Kaid Alwan v. City of New York*, 311 F. Supp. 3d 570, 581 (E.D.N.Y. 2018); *Delorbe-Bell v. City of New York*, No. 15-CV-2344 (LOS), 2016 U.S. Dist. LEXIS 49363, 2016 WL 1451581, at *3-4 (S.D.N.Y. Apr. 12, 2016) (dismissing a *Monell* claim and concluding that "the

207 substantiated allegations of excessive force... represent a notably modest number, given the size of the NYPD and a positive indication of the NYPD's restraint").[7]

As a result, plaintiff has not sufficiently pled an unconstitutional chokehold practice so widespread as to constitute a custom or usage, and this theory of municipal liability against the City of New York should be dismissed.

     ii.     There is no "custom or practice" of misusing Tasers

Plaintiff's second attempt to show a "custom or usage" is an attempt to demonstrate a widespread practice of misusing Tasers. This attempt fails for the same reasons as plaintiff's chokehold based theory. Plaintiff cites to 14 civil lawsuits over a four year period and 182 complaints to the CCRB during a two year period that allege Taser mis-use. (*See*, Complaint, at ¶¶ 2 & 45). Plaintiff again cites to lawsuits and complaints that had not adjudicated whether the allegations were meritorious.

As an initial matter, plaintiff's allegations here are nearly identical to those considered and rejected by this Court in *Delorbe-Bell v. City of New York*, No. 15-CV-2344 (LOS), 2016 U.S. Dist. LEXIS 49363, 2016 WL 1451581, at *3-4 (S.D.N.Y. Apr. 12, 2016) which dismissed plaintiff's *Monell* claim by concluding that "207 substantiated allegations of excessive force…

---

[7] In this Circuit, irregularly, matters have been permitted to proceed with *Monell* claims upon pleading unrelated lawsuit and complaints, *see Osterhoudt v. City of New York*, No. 10-CV-3173 (RJD) (RML), 2012 U.S. Dist. LEXIS 139700, at *3-5 (E.D.N.Y. Sept. 27, 2012) (finding that, despite contrary authority, plaintiff's citation to unrelated civil complaints alleging unlawful mass arrests plausibly alleged a widespread unconstitutional policy). However this is a minority position that flies in the face of the generally accepted rule in this situation. *See*, *e.g.*, *Simms v. City of New York*, 480 Fed. Appx. 627, 630 (2d Cir. 2012) (citing to another civil lawsuit does not state a claim for municipal liability because the fact of the lawsuit shows only that the allegation was made, "not that those violations actually occurred"); *Lipsky v. Commonwealth United Corp.*, 551 F.2d 887, 892-94 (2d Cir. 1976) (holding that, absent adjudication on the merits, prior legal proceedings have no evidentiary bearing in future proceedings); *Green v. City of Mt. Vernon*, 2015 U.S. Dist. LEXIS 42533, *81 (S.D.N.Y. Mar. 31, 2015); *Rodriguez v. Patricio*, No. 11 Civ. 515 (ALC) (GWG), unpub. op. at 10 (S.D.N.Y. Mar. 15, 2013) (dismissing Monell claim premised on unrelated civil complaints and holding that unsubstantiated accusations in unrelated lawsuits "are wholly insufficient to support an inference" of an unconstitutional policy) (citing *Marcel v. City of New York*, No. 88 Civ. 7017 (LLS), 1990 U.S. Dist. LEXIS 4094, at *22-24 (S.D.N.Y. Apr. 10, 1990)).

represent a notably modest number, given the size of the NYPD and a positive indication of the NYPD's restraint." Plaintiff here cites to even fewer allegations, 196 total.[8]

Plaintiff's Taser allegations, when properly contextualized, fail completely. As an initial matter, plaintiff cites to complaints for a four year period made to CCRB regarding "non-lethal restraint device[s]," which is a category that included far more devices than just Tasers. (Complaint, at ¶ 45 n.20); *compare with*, (*See*, Brocker Dec., Exhibit "B," at p. 63, Table 25)... Even accepting the flawed premise that this category only referenced Tasers, for argument's sake, of the 182 complaints made, 13 were unfounded, 96 were exonerated, and 13 were unsubstantiated. (*Id.*). Only 13 allegations during that four year period were substantiated. Thirteen substantiated allegations in 48 months against any of the over 36,000 NYPD officersis certainly not a compelling argument that a "custom or usage" exists within the NYPD.

The lawsuits plaintiff references are similarly infirm. Of the cases cited none had adjudicated liability and only nine remained pending. (Complaint, Exhibit "D"). Even if each of those resulted in a finding of liability, 21 complaints and lawsuits would still be inadequate to plead a "custom or usage" of Taser misuse. As with chokeholds, plaintiff does not separate violations of the NYPD's internal procedures from unlawful force under the Fourteenth Amendment; as a result, it is impossible to know if all or any of the substantiated complaints made to CCRB were actually unlawful, and they should not be used to bolster plaintiff's claim for equitable relief.

---

[8] There is of course an exception to every rule, and in *Marlin v. City of New York*, No. 15-cv-2235 (CM), 2016 WL 4939371, at *19-21 (S.D.N.Y. Sept. 7, 2016), this Court held that a *Monell* claim founded upon the OIG report's 207 allegations was sufficiently pled to state a *Monell* claim; however, this is inconsistent with the general pattern in these cases and more recent cases seem to disfavor such a ruling. *See*, *Boddie v. City of New York*, No. 15-cv-4275 (GHW), 2016 WL 1466555, at *3-5 (S.D.N.Y. Apr. 13, 2016); *Dixon v. City of New York*, 2017 U.S. Dist. LEXIS 119042, at *33 (S.D.N.Y. July 27, 2017).

As a result, plaintiff has not sufficiently pled an unconstitutional Taser practice so widespread as to constitute a custom or usage, and this theory of municipal liability against the City of New York should be dismissed.

>   B.   Plaintiff has failed to demonstrate that the City of New York was deliberately indifferent, that it failed to train, that it failed to supervise, or that it failed to discipline, and as a result his claim fails.

Plainitff next alleges that the City's failure to train and discipline officers for improper use of chokeholds and Tasers amounts to deliberate indifference, but this theory also fails because plaintiff can demonstrate neither notice nor deliberate indifference.

"A municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on failure to train." *Connick v. Thompson*, 563 U.S. 51, 61 (2011). To prevail on such a theory, a plaintiff must demonstrate that the municipality's failure to train its employees in a relevant respect amounts to "'deliberate indifference to the rights of persons with whom the [untrained employees] come into contact.'" *Id*. (quoting *City of Canton v. Harris*, 489 U.S. 378, 388 (1989)) (alteration in original). As the U.S. Supreme Court has noted, the deliberate indifference standard is *stringent*; to meet it, a plaintiff must show both that (1) municipal policymakers are on actual or constructive notice that a particular omission in their training program causes the municipality's employees to violate citizens' constitutional rights, and (2) despite being on notice, policymakers choose to retain the deficient training program. *Id*. (citing *Board of Comm'rs of Bryan Cty. v. Brown*, 520 U.S. 397, 407, 410 (1997)).

As noted above, in Sections IV.A.i. – IV.A.ii., plaintiff cites to approximately 600 allegations of improper chokeholds, and 200 allegations of improper Taser use. Of those, only a small fraction have resulted in a finding of misconduct. Simply put, for the same reasons that such a small number of allegations are insufficient to give rise to a "custom or practice," they are insufficient to put the City of New York on notice that its training program regarding chokeholds

and Tasers is so deficient that its officers are likely to violate individuals' constitutional rights. *See*, *e.g.*, *Boddie*, No. 15-CV-4275 (GHW), 2016 WL 1466555, at *3-5; *Delorbe-Bell*, No. 15-CV-2344 (LOS), 2016 U.S. Dist. LEXIS 49363, at *3-4.

Further, the City of New York has proactively taken measures to address improper chokeholds, Taser misuse, and other forms of excessive force, as plaintiff notes by citing to reports issued by CCRB – a City agency – regarding these issues. *Joseph v. City of New York*, No. 16-CV-2004 (PKC) (LB), 2017 U.S. Dist. LEXIS 155426, at *13-14 (E.D.N.Y. Sep. 22, 2017) (addressing a similar report, the Court stated that "[i]f anything, it suggests that the NYPD treats unlawful searches as deviations from NYPD policy and that the NYPD planned to consider whether the NYPD's policies need clarification to reduce the risk of similar incidents in the future"). And, despite plaintiff's claims, many courts have found that the NYPD's training regarding the use of force is in line with the training offered nationally. *See*, *Dixon v. City of New York*, 2017 U.S. Dist. LEXIS 119042, at *34 (S.D.N.Y. July 27, 2017) ("Judge Schofield concluded that the OIG Report undermined — rather than bolstered — plaintiff's failure to train claim, because it 'describes NYPD training courses titled Use of Force and Policing Professionally and notes that the number of hours the NYPD spends on 'use-of-force scenario-based training' is 'roughly on par' with the national average.") (analyzing and applying the holding of *Delorbe-Bell v City of New York*, No. 15-CV-2344 (LOS), 2016 U.S. Dist. LEXIS 49363, 2016 WL 1451581, at *3-4 (S.D.N.Y. Apr. 12, 2016)).

Plaintiff's conclusory allegations that the training regarding chokehold and Taser use is unconstitionally lacking are plainly insufficient to plead a *Monell* claim for failure to train.

Plaintiff additionally alleges that the City of New York fails to discipline its officers for misconduct involving chokeholds and Tasers. This is once again belied by the reports cited by

plaintiff in the Complaint. Of the substantiated allegations against NYPD officers 74% were disciplined in 2014, 92% in 2015 and 2016, 75% in 2017, and 81% in 2018. (*See*, Brocker Dec., Exhibit "B," at p. 95, Table 31). Unfortunately, it is not clear what percentage of specific chokehold and Taser based allegations resulted in discipline, but as it is plaintiff's burden to plead sufficient facts to support his claim, that deficiency also counsels the dismissal of this claim. *See*, *e.g.*, *Delorbe-Bell*, 2016-U.S. Dist. LEXIS 49363 at *3 (dismissing *Monell* claim in part because "the NYPD imposed discipline in the majority of cases where allegations of excessive force were substantiated"); *Dixon*, 2017 U.S. Dist. LEXIS 119042, at *33 (S.D.N.Y. July 27, 2017) ("[although] in one-third of these 18 cases, the circumstances of which are unknown — the NYPD chose to impose no discipline… the numbers are too small to support an inference that the City was deliberately indifferent to the NYPD's use of excessive force. In any event, "the data from the [OIG] report shows that the NYPD imposed discipline in the majority of cases where allegations of excessive force were substantiated."). Further, to the extent that plaintiff is arguing a policy of failing to investigate by numerous agencies, implicating the NYPD, CCRB, the New York State Inspector General's Office and other oversight boards this is entirely unsupported by any facts and is tantamount to a conspiracy theory.

As a result, plaintiff's claims for municipal liability stemming from his allegations that the City was deliberately indifferent should be dismissed.

## V.   PLAINTIFF'S CLAIMS FOR FALSE ARREST AND IMPROPER SEARCH SHOULD BE DISMISSED, AS PROBABLE CAUSE EXISTED FOR HIS ARREST AND BECAUSE HE FAILS TO PLEAD A VIABLE CLAIM FOR IMPROPER SEARCH

Plaintiff attempts to plead a claim for false arrest against Det. Fabio Nunez, who is not represented by the Office of Corporation Counsel. However, Police Officer Shanee Hansler, and an unspecified selection of "defendants" are alleged to have failed to intervene to prevent

plaintiff's arrest. Because probable cause existed for his arrest, or, at a minimum, arguable probable cause existed for his arrest, defendants are entitled to qualified immunity on plaintiff's failure to intervene claim for false arrest.[9] Further, plaintiff fails to plead a constitutional violation when he alleges that his search was unlawful.

A.    Even by plaintiff's own account, arguable probable cause existed for his arrest

Plaintiff, by his own admission and from the video evidence, is next to a large speaker that was playing loud music at approximately 11:40 p.m. when Det. Nunez and P.O. Hansler arrived at the scene. (Complaint, at ¶ 88 & Exhibit "A," at "Front" video, at: 4:30). New York City's Administrative Code prohibits unreasonable noise, defined as "sound, attributable to any device, that exceeds the following prohibited noise levels: (1) Sound, other than impulsive sound, attributable to the source, measured at a level of 7 $dB(A)$[10] or more above the ambient sound level at or after 10:00 p.m. and before 7:00 a.m., as measured…at a distance of 15 feet or more from the source on a public right-of-way." N.Y. Admin. Code, § 24-218(b)-(b)(1).

Plaintiff admits that he and his friends were litening to music on a speaker. (Complaint, at ¶ 88). Plaintiff further concedes that Det. Nunez and P.O. Hansler "heard music playing and decided to investigate" as they were "driving around Washington Heights." (Id., at ¶ 86). The sole question, therefore, is was the music at or above 7 decibels at the time that Det. Nunez and P.O. Hansler heard it as they drove in a "public right-of-way." A quiet rural area registers approximately 20 decibels. (See, Brocker Decl., at Exhibit "D"). Further, police officers do not need to meet scientifically rigorous tests to have probable cause for a noise violation. All that is

---

[9] Although not moving on behalf of Det. Nunez, defendants respectfully request that the false arrest claim be dismissed from this action in its entirety based on the presence of, at least, arguable probable cause.

[10] The New York City Administrative Code quantifies sound in units of weighted decibels, db(A), which accounts for the way that sound is heard by the human ear, including by accounting for the frequency of the sound (e.g., decreasing the decibel reading for very low frequencies that the human ear does not register well), and incorporates by reference the standards of the American National Standards Institute. See, N.Y. ADMIN. CODE, §24-203(a)(1).

needed for probable cause is that police have "information sufficient to support a *reasonable belief* that an offense has been committed by the suspect" *Restivo v. Hessemann*, 846 F.3d 547, 571 (2d Cir. 2017) (emphasis added) (quotation omitted). Simply by being able to hear the sound of plaintiff's music over the sound of their running vehicle, the officers "reasonably believed" that they had probable cause to believe that plaintiff's music was in excess of 7 weighted-decibels above the background noise.

Even if this shorthand analysis for determining the volume of plaintiff's music was flawed, defendants are entitled to qualified immunity because (1) it was objectively reasonable for the officer to believe that probable cause existed, and (2) officers of reasonable competence could disagree on whether there was probable cause. *Zellner v. Summerlin*, 494 F.3d 344, 369 (2d Cir. 2007). The Supreme Court has noted time and again that "[t]he qualified immunity standard 'gives ample room for mistaken judgments' by protecting 'all but the plainly incompetent or those who knowingly violate the law.'" *Hunter v. Bryant*, 502 U.S. 224, 229 (1991) (per curiam) (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)).

Further, no defendant other than P.O. Hansler had a "reasonable opportunity" to intervene to stop plaintiff's arrest, as none were present at the time that plaintiff was initially seized. *See*, *e.g.*, *Jean-Laurent v. Wilkinson*, 540 F. Supp. 2d 501, 512 (S.D.N.Y. 2008). Because they are entitled to rely on their fellow officers' statements, the claim against them must be dismissed as well. *See*, *Zellner*, 494 F.3d, 369; *Annunziata v. City of New York*, No. 06 Civ. 7637 (SAS), 2008 U.S. Dist. LEXIS 42097 (S.D.N.Y. May 28, 2008).

Plaintiff tries to avoid culpability by claiming that he and his friends told the officers that the speaker belonged to the car dealership. (Complaint, at ¶ 90). However, even if true, this does not impact whether the police officers have probable cause to believe he was in possession of the

speaker. Pursuant to N.Y. Pen. L. § 10.08, "'[p]ossess' means to have physical possession or otherwise to exercise dominion or control over tangible property." An individual can exhibit "dominion or control" either directly or through another person. *E.g.*, *United States v. Paulino*, 445 F.3d 211, 222 (2d Cir. 2006) (quoting *United States v. Gordils*, 982 F.2d 64, 71 (2d Cir. 1992). As a result, plaintiff's denial of possession of the speaker, does not vitiate probable cause; plaintiff could still have "dominion or control" over a speaker that was owned by another individual or entity, and the officers reasonably concluded that the person next to the speaker listening to music on the speaker was exercising such "dominion or control."

As a result, there was probable cause to arrest plaintiff, despite his protestations of innocence. At a minimum, arguable probable cause existed, entitling defendants to qualified immunity on plaintiff's false arrest claim.

B.   Plaintiff has not pled a constitutionally impermissible search

Plaintiff claims that Police Officer Nay Htoo and Police Officer Christopher Siciliano "conducted improper searches" of plaintiff. Plaintiff, however, never actually pleads what was improper about his search, *i.e.* plaintiff does not plead why it was impermissible to search him incident to arrest. This alone is sufficient to dismiss plaintiff's claim for an unconstitutional search; plaintiff simply does not plead a single allegation regarding that allegedly impermissible search. *Iqbal*, 556 U.S., at 678 (a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'").

Plaintiff's only statement regarding his allegedly improper search is that it was "exacerbated" by pulling plaintiff's pants down around his ankles and kept them there while he stood in a high-traffic corridor in the precinct. (Complaint, at ¶¶ 104 & 153). However, that allegation alone is not a constitutional violation. It is not an allegation of a strip-search. *See*, *e.g.*, *Kelsey v. County of Schoharie*, 567 F.3d 54, 62 (2d Cir. 2009) ("strip search" is an umbrella term

- 23 -

that applies to the inspection of "naked individuals.") (citing *N.G. v. Connecticut*, 382 F.3d 225, 228 n.4 (2d Cir. 2007). Plaintiff was never naked; at all times plaintiff kept his underwear on, which is to say at all times plaintiff was clothed.

That plaintiff was briefly only wearing his underwear does not rise to the level of a Fourteenth Amendment violation. *See*, *Nelson v. City of Stamford*, No. 3:09-cv-1690 (VLB), 2012 U.S. Dist. LEXIS 8907, at *79 (D. Conn. Jan. 25, 2012) (dismissing unreasonable search claim based on removal of shirt and pants, where underwear remained on).

Because plaintiff does not plead what aspects of his search were unconstitutional, beyond that he was in only his underwear briefly, his claim for unlawful search should be dismissed.

## VI.   PLAINTIFF'S CLAIMS FOR INTENTIONAL AND NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS SHOULD BE DISMISSED

Plaintiff's claims for both negligent infliction of emotional distress ("NIED") and intentional infliction of emotional distress ("IIED") fail because plaintiff fails to plead sufficient facts to state a claim for either cause of action under New York State law. [11]

As an initial matter, the "New York Court of Appeals has strongly cautioned against allowing emotional distress claims to be brought where other tort remedies are available." *Romero v. City of New York*, 839 F. Supp. 2d 588, 632 (E.D.N.Y. 2012) (citing *Moore v. City of New York*, 219 F. Supp. 2d 335, 339 (E.D.N.Y. 2002); *see also*, *Devito v. Barrant*, No. 03-CV-1927 (DLI) (RLM), 2005 U.S. Dist. LEXIS 22444, at *30 (E.D.N.Y. Aug. 23, 2005) (dismissing claims of negligent and intentional infliction of emotional distress because "'the conduct underlying the claim[s] falls within the ambit of traditional tort liability' and is included in plaintiff's claims for assault and battery").

---

[11] Allegations of negligent and intentional infliction of emotional distress are not cognizable under 42 U.S.C. § 1983. *E.g.*, *Quezada v. Roy*, 2015 U.S. Dist. LEXIS 140653, at *3 (S.D.N.Y. Oct. 13, 2015).

Here, plaintiff pleads excessive force, assault and battery, and false arrest arising out of the incident where he was allegedly tasered and subjected to a chokehold. He alleges no separate facts to support free-standing claims for Intentional Infliction of Emotional Distress and Negligent Infliction of Emotional Distress. This is sufficient grounds to dismiss these claims.

Plaintiff, further has not pled separate and sufficient facts to demonstrate "severe emotional distress."[12] In order to properly state a claim for NIED or IIED, a plaintiff must plead emotional distress so severe that "no reasonable person could be expected to bear it." *E.g.*, Restat 3d of the Law, Torts: Liability for Physical and Emotional Harm, § 46; *see also*, *Lynch v. Ackley*, No. 3:12-CV-537 (MPS), 2013 U.S. Dist. LEXIS 178073, at *8 (D. Conn. Dec. 19, 2013) (dismissing IIED claim for lack of emotional distress in pleadings for analogous IIED claim under Connecticut law). Plaintiff's Complaint pleads only that he "suffered significant humiliation, [and] trauma and emotional pain...." (Complaint, at ¶¶ 174 & 179). Plaintiff does not plead any facts tending to demonstrate that his emotional pain was severe, such as the impact on his daily life or that he has been seeking phychological help. This is precisely the type of conclusory statement and threadbare recitation of a claim's element that is not sufficient to satisfy the pleading requirements of the Federal Rules of Civil Procedure. *See*, *Twombly*, 550 U.S. at 555; *see also*, *Lynch*, 2013 U.S. Dist. LEXIS 178073, at *8.

As a result of the foregoing, plaintiff's claims for NIED and IIED should be dismissed.

---

[12] Pursuant to New York State law, claims for negligent and intentional infliction of emotional distress require (i) extreme and outrageous conduct; (ii) intent to cause, or disregard a substantial probability of causing, severe emotional distress; (iii) a causal connection between the conduct and injury; and (iv) severe emotional distress. *Howell v. New York Post Co.*, 81 N.Y.2d 115, 121 (1993).

## CONCLUSION

For the foregoing reasons, plaintiff's for claims equitable relief, municipal liability, false arrest, unlawful search, negligent infliction of emotional distress, intentional infliction of emotional distress.

Dated:  New York, New York
        January 31, 2020

                          JAMES E. JOHNSON
                          Corporation Counsel of the City of New
                            York
                          *Attorney for the City of New York, James O'Neill, Terrance Monahan, Hekmatullah Mukhtarzada, Shanee Hansler, David Callan, William Gallagher, Jose A. Gomez, Nay Htoo, and Christopher Siciliano*
                          100 Church Street
                          New York, New York 10007
                          P: (212) 356-2332

By:      *Peter W. Brocker /s/*
                      Peter W. Brocker
                      *Assistant Corporation Counsel*

cc: All Counsel of Record (via ECF)

- 26 -