19 Civ. 9412 (AJN) (OTW)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

TOMAS MEDINA,

                                                  Plaintiff,

-against-

THE CITY OF NEW YORK, POLICE COMMISSIONER JAMES O'NEILL, CHIEF OF DEPARTMENT TERRANCE MONAHAN, SERGEANT HEKMATULLAH MUHTARZADA, DETECTIVE SPECIALIST FABIO NUNEZ, POLICE OFFICER SHANEE (PIERCE) HANSLER, DAVID CALLAN, CAPTAIN WILLIAM J. GALLAGHER, SERGEANT JOSE A. GOMEZ, POLICE OFFICER NAY HTOO, POLICE OFFICER CHIRSTOPHER SICILIANO, and POLICE OFFICER JOHN DOE,

                                                  Defendants.

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION FOR SANCTIONS, PURSUANT TO RULE 11 OF THE FEDERAL RULES OF CIVIL PROCEDURE**

*JAMES E. JOHNSON*
*Corporation Counsel of the City of New York*
*Attorney for Defendants*
*100 Church Street, Room 3-133A*
*New York, NY 10007*

*Of Counsel: Peter W. Brocker*
*Tel: (212) 356-2332*

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................................ ii

PRELIMINARY STATEMENT ........................................................................................... 1

STATEMENT OF FACTS .................................................................................................... 2

ARGUMENT

    I.    PLAINTIFF LACKS STANDING TO PURSUE THE SYSTEMIC EQUITABLE RELIEF REQUESTED IN HIS COMPLAINT ........................................................... 4

    II.    RULE 11 SANCTIONS ARE WARRANTED, BECAUSE PLAINTIFF'S FRIVOLOUS EQUITABLE RELIEF CLAIMS HAD "ABSOLUTELY NO CHANCE OF SUCCESS" WHEN THEY WERE FILED ................................................................ 4

        A.  The Rule 11 procedural prerequisites for sanctions have been satisfied ............................................................. 9

        B.  Sanctions are proper here because plaintiff was objectively unreasonable in declining to withdraw his equitable relief claims ............................... 10

CONCLUSION .................................................................................................................. 13

## TABLE OF AUTHORITIES

**Cases**                                                                                               **Pages**

*Blue Chip Stamps v. Manor Drug Stores*,
    421 U.S. 723 (1975) ............................................................................................... 11

*C.f.*, *Eastway Constr. Corp. v. New York*,
    637 F. Supp. 558 (E.D.N.Y. 1986) ....................................................................... 11

*Cacchillo v. Ismed, Inc.*,
    638 F.3d 401 (2d Cir. 2011) .................................................................................... 4

*City of Los Angeles v. Lyons*,
    461 U.S. 95 (1983) ......................................................................................... 2, 4, 8

*Collins v. City of New York*,
    923 F. Supp. 2d 462 (E.D.N.Y. 2013) ..................................................................... 7

*Fishoff v. Coty Inc.*,
    634 F.3d 647 (2d Cir. 2011) .................................................................................. 10

*Inter-County Res., Inc. v. Med. Res., Inc.*,
    49 F. Supp. 2d 682 (S.D.N.Y. 1999) ............................................................... 10, 11

*Kalnit v. Eichler*,
    99 F. Supp. 2d 327 (S.D.N.Y. 2000) ..................................................................... 10

*Ligon v City of New York*,
    288 F.R.D. 72 (S.D.N.Y. Feb. 11, 2013) ................................................................. 6

*MacIssac v. Town of Poughkeepsie*,
    770 F. Supp. 2d 587 (S.D.N.Y. 2011) ..................................................................... 8

*MacNamara v. City of New York*,
    275 F.R.D. 125 (S.D.N.Y. May 19, 2011) .............................................................. 6

*McCabe v. Lifetime Entm't Servs., LLC*,
    No. 17-CV-908-ERK-SJB, 2018 U.S. Dist. LEXIS 3212
    (E.D.N.Y. Jan. 4, 2018) ......................................................................................... 10

*McLennon v. City of New York*,
    171 F.Supp. 3d 69 (E.D.N.Y. Mar. 18, 2016) ...................................................... 5, 6

*Offor v. Mercy Med. Ctr.*,
    2016 U.S. Dist. LEXIS 83049 (E.D.N.Y. June 25, 2016) ..................................... 10

*Pesola v. City of New York*,
    No. 15-cv-1917 (PKC)(SN), 2016 U.S. Dist. LEXIS 42977
    (S.D.N.Y. Mar. 30, 2016) .................................................................................... 7-8

*Shain v. Ellison*,
    356 F.3d 213 (2d Cir. 2004)..................................................................................................5

*Simon DeBartolo Group, L.P. v. Richard E. Jacobs Group, Inc.*,
    186 F.3d 157 (2d Cir. 1999)................................................................................................10

*Source Vagabond Sys. V. Hydrapak, Inc.*,
    11 Civ. 5379 (CM) (JLC), 2013 U.S. Dist. LEXIS 4853 (January 11, 2013) ........................11

*Star Mark Mgt., Inc. v. Koon Chun Hing Kee Soy & Sauce Factory, Ltd.*,
    682 F.3d 170 (2d Cir. 2012)..................................................................................................9

*Summers v. Earth Island Inst.*,
    555 U.S. 488 (2009)..............................................................................................................4

*Susan B. Anthony List v. Driehaus*,
    573 U.S. 149 (2014)..............................................................................................................4

*Tieman v. City of Newburgh*,
    No. 13-CV-4178 (KMK), 2015 U.S. Dist. LEXIS 38703
    (S.D.N.Y. Mar. 26, 2015) ......................................................................................................7

**Statutes**

42 U.S.C. § 1983.....................................................................................................................3, 11, 12

42 U.S.C. § 1988................................................................................................................................12

Fed. R. Civ. P. 11.................................................................................................................2, 3, 9, 10

Fed. R. Civ. P. 11(b).............................................................................................................................9

Fed. R. Civ. P. 11(b)(1).......................................................................................................................10

Fed. R. Civ. P. 11(b)(2).............................................................................................................9, 10, 13

Fed. R. Civ. P. 11(c)...............................................................................................................9, 11, 13

Fed. R. Civ. P. 11(c)(2).........................................................................................................................1

Fed. R. Civ. P. 11 (c) (4).....................................................................................................................11

Fed. R.Civ. P. 11(c)(5)(A) ..................................................................................................................10

Fed. R. Civ. P. 12(b).............................................................................................................................3

Fed. R. Civ. P. 83.10.............................................................................................................................3

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------ x

TOMAS MEDINA,

                                Plaintiff,

        -against-

CITY OF NEW YORK, et al.,

                                Defendants.

------------------------------------------------------------------------ x

19 Civ. 9412 (AJN) (OTW)

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION FOR SANCTIONS, PURSUANT TO RULE 11 OF THE FEDERAL RULES OF CIVIL PROCEDURE**

## PRELIMINARY STATEMENT

Defendants the City of New York ("City"), Commissioner James O'Neill, Chief Of Department Terrance Monahan, Sergeant Hekmatullah Mukhtarzada, Police Officer Shanee Hansler, Police Officer David Callan, Captain William Gallagher, Sergeant. Jose A. Gomez, Police Officer Nay Htoo, and Police Officer Christopher Siciliano (collectively,[1] "defendants"), by their attorney, James E. Johnson, Corporation Counsel of the City of New York, submit this memorandum of law in support of their motion for sanctions, pursuant to Rule 11(c)(2) of the Federal Rules of Civil Procedure, against plaintiff's attorneys for submitting and maintaining frivolous equitable claims in this matter.

An award of sanctions is appropriate because plaintiff has refused to abandon his claims for declaratory and systemic equitable relief, despite being made aware as early as November 26, 2019 that such claims were improper because plaintiff lacked standing. Plaintiff's counsel has repeatedly dismissed defense counsel's attempt to discuss the lack of standing for plaintiff to seek equitable relief, including defendant the City of New York's December 19,

---

[1] Please note that Det. Fabio Nunez is not represented by the Office of the Corporation Counsel.

2019, "safe-harbor" letter. Plaintiff's counsel has further insisted that any discussion related to early resolution of this matter contain equitable relief, thereby unreasonably compounding the proceedings and inhibiting the just, speedy, and inexpensive resolution of this matter.

## STATEMENT OF FACTS

On October 10, 2019, plaintiff filed his initial complaint ("Complaint") in this matter, (*see*, Dkt. No. 1), alleging that he was subjected to, among other things, false arrest and excessive force on July 14, 2018. For each of plaintiff's 11 claims in the complaint, he seeks equitable relief from the City of New York. (Complaint, at ¶¶ 144, 150, 155, 159, 164, 170, 175, 180, 187, 191, & 197). Plaintiff then goes on to request that the Court "declare that Defendants' acts, practices, policies, customs and/or omissions have deprived plaintiff of his rights under the constitutions of the United States and New York State." (*Id.*, at ¶ 198). Finally, plaintiff seeks to have the Court "[i]ssue permanent injunctions addressing misuse of chokeholds and Tasers by NYPD officers through training, supervision, investigation, prosecution, & discipline." (*Id.*, at ¶ 199). In short, plaintiff seeks to rewrite the training and policies of the New York City Police Department ("NYPD") at the conclusion of his lawsuit.

At the outset of this matter, defense counsel raised the issue of standing to seek equitable relief with plaintiff's attorneys, asking why the Supreme Court's seminal decision in *City of Los Angeles v. Lyons*, 461 U.S. 95 (1983), and its progeny did not bar plaintiff's claims for equitable relief. Plaintiff's attorneys stated that they had pled their claims sufficiently, and repeatedly requested that defense counsel re-read the Complaint. As a result, on December 19, 2019, defendant the City of New York sent plaintiff a "safe harbor" letter, including a notice of motion for sanctions pursuant to Rule 11, delineating plaintiff's lack of standing and formally requesting that plaintiff withdraw his claims for equitable relief. (*See*, Declaration of Peter W. Brocker, dated January 31, 2020 ("Brocker Decl."), Exhibit "E") (the "Safe Harbor Letter"). On

January 8, 2020, plaintiff's counsel responded, with a cursory letter stating that plaintiff has "fully complied with our obligations in this case and decline to withdraw the plaintiff's claim for equitable relief," and threatening to counter-move for sanctions in the event defendant actually sought Rule 11 sanctions. (*See*, Brocker Decl., Exhibit "F") ("Plaintiff's Response Letter").

Plaintiff's claims for equitable relief have driven every aspect of this matter. Plaintiff has asserted that large portions of Local Rule 83.10 of the Southern District of New York ("the § 1983 Plan") do not apply, as they ordinarily would to a case seeking damages, because plaintiff is seeking "systemic equitable relief." (*See*, Dkt. No. 46). The City sought to engage in early settlement discussions and a settlement conference in this matter, (*see*, Dkt. No. 45), which Plaintiff opposed solely on the grounds that plaintiff was not willing to abandon his claims for equitable relief. (*See*, Dkt. No. 46).

On January 31, 2020, defendants moved, pursuant to Rule 12(b) of the Federal Rules of Civil Procedure to partially dismiss the Complaint, including moving to dismiss all of plaintiff's equitable claims. (*See*, Section I, Memorandum of Law in Support of Defendants' Partial Motion to Dismiss Plaintiff's Initial Complaint, Dkt. No. 61). As a result, plaintiff's frivolous claims for equitable relief have compounded this litigation and drained party and judicial resources unnecessarily.

**ARGUMENT**

**I.     PLAINTIFF LACKS STANDING TO PURSUE THE SYSTEMIC EQUITABLE RELIEF REQUESTED IN HIS COMPLAINT**

Plaintiff does not have standing to bring any of his purported claims for equitable relief, because he pleads a single instance of allegedly unconstitutional conduct, which is insufficient to demonstrate a sufficient likelihood of future harm; therefore, plaintiff has failed to allege an injury-in-fact for his claim for equitable relief.

In order to plead standing for a claim of equitable relief, "a plaintiff must show... injury in fact, causation, and redressability." *See*, *Cacchillo v. Ismed, Inc.*, 638 F.3d 401, 404 (2d Cir. 2011) (citing *Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009)). The injury alleged by a single plaintiff seeking equitable relief "must be concrete and particularized and actual or imminent, not conjectural or hypothetical." *Susan B. Anthony List*, 573 U.S., at 158 (quotation omitted).

In the instant case, plaintiff seeks declaratory and injunctive relief sufficient to "stop the NYPD from tolerating and encouraging these continued violent and illegal acts." (Complaint, at ¶ 10). Indeed, plaintiff asks for injunctive relief against the City of New York in each of his causes of action and in his Request for Relief plaintiff requests that the Court issue "permanent injunctions addressing misuse of chokeholds and Tasers by NYPD officers through training, supervision, investigation, prosecution, and discipline." (Complaint, at ¶ 199).

Plaintiff seeks equitable relief that is highly analogous to that sought in *City of Los Angeles v. Lyons*. 461 U.S. 95 (1983). In *Lyons*, the Supreme Court found that a plaintiff who had been subjected to a police officer's use of a chokehold following a traffic stop lacked standing to seek systemic injunctive relief regarding chokeholds. *Id.*, at 104-107. The Court held

that the prior injury was insufficient to demonstrate a "likelihood that plaintiff will again be wronged *in a similar way*." *Id.*, at 111 (emphasis added).

The Second Circuit applied this holding in *Shain v. Ellison* to decide that a single improper strip search did not suffice to demonstrate a likelihood of future unconstitutional strip searches. *See*, *Shain v. Ellison*, 356 F.3d 213, 215 (2d Cir. 2004). The Second Circuit went on to hold that it would be "'entirely conjectural' to assert that the plaintiff would be arrested and detained in the same manner so as to give rise to the similar unconstitutional harm." *McLennon v. City of New York*, 171 F.Supp. 3d 69, 104 (E.D.N.Y. Mar. 18, 2016) (interpreting and quoting *Shain*, 356 F.3d, at 215).

Similarly, here, plaintiff alleges that he was subjected to the use of a chokehold and application of Taser discharges only once, on July 14, 2018. (Complaint, at ¶¶ 97-99). Similarly, here, plaintiff alleges one prior instance of injury. He alleges that on July 14, 2018, he was subjected to the use of a chokehold and application of Taser discharges. (Complaint, at ¶¶ 97-99). This prior instance of alleged misuse of a Taser and a chokehold is insufficient to demonstrate a likelihood that he will suffer a similar injury in the future. As a result, plaintiff's claim for equitable relief is plainly unsupportable by established law.

Plaintiff casts aspersions in the hopes that it will bolster his claim for equitable relief. He alleges that the 34th Precinct of the NYPD has a "reputation" of overpolicing, policing for quality-of-life offenses, and using excessive force, (Complaint, at ¶133), and that quality-of-life policing strategies disproportionately impact men of color. (Complaint, at ¶ 128). However, none of this is tied to statistics or other factual development and it completely fails to demonstrate that plaintiff is "likely" or "imminently" going to be subjected to the application of an unlawful chokehold and Taser. These conclusory allegations about the "reputation" of a

precinct in which plaintiff lives are merely a transparent attempt to circumvent the standing requirements for equitable relief by his attorneys. It is "entirely conjectural" to assert that plaintiff is likely to be again subjected to an illegal chokehold or illegal Taser use in the future.

Plaintiff next seeks to generalize to bolster his claim, and states that it is "highly likely that [plaintiff] will face the effects of over-policing, including excessive force, again..." (Complaint, at ¶ 132). However, as the Supreme Court and the Second Circuit have made clear, plaintiff must plead a likelihood of future harm of "a similar nature" to that alleged, *i.e.* improper use of a chokehold or Taser. Plaintiff alleges no additional facts beyond his fear of being subjected to excessive force again and his understanding of the "reputation" of the 34th Precinct to make this showing. Plaintiff does not allege that he has been subjected to multiple instances of chokeholds or Taser use. *See Ligon v City of New York*, 288 F.R.D. 72, 81 (S.D.N.Y. Feb. 11, 2013). And plaintiff does not attempt to bring this matter as a class action.[2] The mere fact that plaintiff will continue to barbeque and listen to music in the same neighborhood at unspecified dates in the future, does not give rise to a "real and immediate threat of future injury." *See*, *MacNamara v. City of New York*, 275 F.R.D. 125, 141 (S.D.N.Y. May 19, 2011) (dismissing claims for equitable relief based on stated intent to attend future demonstrations and an ongoing policy of falsely arresting demonstrators).

Plaintiff finally attempts to overcome *Lyons* by stating that there were 30 lawsuits and 582 complaints made to the Civilian Complaint Review Board ("CCRB") that alleged improper chokeholds against any NYPD officer during the four years from January, 2015 to

---

[2] Indeed, even had plaintiff brought this matter as a class action, if no class representative could demonstrate a likelihood of future harm, that class also could not seek equitable relief. *See*, *e.g.*, *McLennon*, 171 F.Supp. 3d, at 104 (dismissing the equitable relief portion of a purported class action, because each class representative only alleged a single instance of past injury).

December, 2018. (Complaint, at ¶ 31). Plaintiff then conclusorily and speculatively states "this is only a small fraction" of the total number of these events. (*Id.*, at ¶ 32).

Similarly, plaintiff pleads that there were 182 complaints made to CCRB that alleged Taser misuse against the NYPD from January, 2017 to December, 2018. (Complaint, at ¶ 45). .

Plaintiff does not and cannot connect the dots, however, of how 600 allegations of unlawful chokeholds over a four-year period against a department with over 36,000 police officers generates any likelihood of his future harm. (*See*, Brocker Decl., Exhibit "A," at p. 22). Plaintiff, further, simply ignores the impact of false complaints, exonerations, and unsubstantiated complaints among these 600 allegations. *See*, *e.g.*, *Tieman v. City of Newburgh*, No. 13-CV-4178 (KMK), 2015 U.S. Dist. LEXIS 38703, at *49 (S.D.N.Y. Mar. 26, 2015) (in the context of demonstrating a *Monell* policy, the Court held that "the number of complaints filed, without more, indicates nothing, as people may file a complaint for many reasons, or for no reason at all, and that they filed complaints does not indicate that the policies that the plaintiff alleges exist do in fact exist") (quotations omitted)); *see also*, *Collins v. City of New York*, 923 F. Supp. 2d 462, 479 (E.D.N.Y. 2013) (allegations that do not result in adjudications of misconduct (*e.g.* settlements or unsubstantiated allegations) do not plausibly allege existence of facts alleged and cannot form the basis of a *Monell* policy).

As a result, even if the CCRB reports that plaintiff references were to considered, they marshal facts *against* standing, not for it. Of the approximately 580 complaints made to CCRB regarding chokeholds that plaintiffs cites, only 8.3% were substantiated. (*See*, Brocker Dec., Exhibit "B," at p. 14, Table 2). Further, plaintiff does not separate adjudications finding a violation of the NYPD's internal procedures – which ban chokeholds for instance – from

7

adjudications finding that the force was unlawful under the Fourteenth Amendment.[3] As a result, it is impossible to know if all or any of the substantiated complaints made to CCRB were actually unlawful, under the Fourteenth Amendment, another reason that they cannot be used to support plaintiff's claim for equitable relief.

Similarly, of the 182 CCRB complaints of Taser misuse, only 13 allegations were substantiated as having violated NYPD guidelines. (*See*, Brocker Dec., Exhibit "B," at p. 14, Table 2). Plaintiff again cites to no decision adjudicating that force used was actually unlawful under the Fourteenth Amendment.

In order to establish injury-in-fact, plaintiff must plead not just a likelihood of future harm but also a municipal policy of committing the complained of violations. *Lyons*, 461 U.S., at 106. "*Lyons* defines its 'official policy' requirement in a significantly more limited way than the courts have interpreted this same requirement under *Monell*." *MacIssac v. Town of Poughkeepsie*, 770 F. Supp. 2d 587, 596 (S.D.N.Y. 2011). Although "standing under *Lyons* and municipal liability under *Monell* [both] require an official policy sanctioning the unconstitutional conduct at issue[,]... a policy sufficient to hold a municipality liable may be too 'unofficial' to give the plaintiff standing to sue for equitable relief in the first place." *Id*. Because plaintiff's allegations could not give rise to the inference of an unconstitutional municipal policy for *Monell*,[4] *a fortiori* he cannot demonstrate the requisite policy for standing to seek equitable relief.

---

[3] Indeed, there is no constitutional right to be free from a chokehold in the abstract, as it may be reasonable in certain situations. *See*, *Pesola v. City of New York*, No. 15-cv-1917 (PKC)(SN), 2016 U.S. Dist. LEXIS 42977, at *25 (S.D.N.Y. Mar. 30, 2016) (addressing allegations of NYPD officers using a chokehold, the Court stated that "the Patrol Guide... prohibition of certain techniques does not render those techniques per se unconstitutional").

[4] Plaintiff's inability to demonstrate a "custom or usage" for his *Monell* claim is addressed more fully *infra* at Section IV(A)(i)–(ii).

Simply put, plaintiff's relevant allegations are that on July 14, 2018, he was subjected to excessive force when Det. Nunez used a chokehold and applied 13 Taser evolutions to subdue him. (Complaint, at ¶ 6). This does not give rise to standing for systemic equitable relief. Plaintiff only has standing for a lawsuit for damages.

As a result, the Court lacks subject matter jurisdiction over plaintiff's claims for equitable relief.

## II. RULE 11 SANCTIONS ARE WARRANTED BECAUSE PLAINTIFF'S FRIVOLOUS EQUITABLE RELIEF CLAIMS HAD "ABSOLUTELY NO CHANCE OF SUCCESS" WHEN THEY WERE FILED

The Federal Rules of Civil Procedure require that all "claims, defenses, and other legal contentions are warranted by existing law or a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law." Fed. R. Civ. P. 11(b)(2).

### A. The Rule 11 procedural prerequisites for sanctions have been satisfied

Rule 11(c) permits the Court to issue sanctions *sua sponte* or upon motion for a violation of Rule 11(b). Fed. R. Civ. P. 11(c). Rule 11(c) requires that sanctions not be issued until "notice and a reasonable opportunity to respond" has been afforded. *Id*. This safe harbor provision is satisfied by service of notice of a Rule 11 motion setting forth the basis for the proposed motion. *E.g.*, *Star Mark Mgt., Inc. v. Koon Chun Hing Kee Soy & Sauce Factory, Ltd.*, 682 F.3d 170, 176 (2d Cir. 2012).

Defendants' Safe Harbor Letter has satisfied the requirement that notice and a reasonable opportunity to respond be afforded to plaintiff. (*See*, Safe Harbor Letter, annexed to the Brocker Decl., as Exhibit "E"). Plaintiff declined to withdraw his claims for equitable relief.

9

(*See*, Plaintiff's Response Letter, annexed to the Brocker Decl. as Exhibit "F"). As a result, this motion for sanctions is procedurally proper.

**B.     Sanctions are proper here because plaintiff was objectively unreasonable in declining to withdraw his equitable relief claims**

The "standard for triggering sanctions under Rule 11 is objective unreasonableness." *Offor v. Mercy Med. Ctr.,* 2016 U.S. Dist. LEXIS 83049, at *6 (E.D.N.Y. June 25, 2016) (quotation omitted). As the Comments to the 1993 Amendments to Rule 11 clarified, the Rule's amendments "'eliminate any empty-head pure heart justification for patently frivolous arguments." *McCabe v. Lifetime Entm't Servs., LLC*, No. 17-CV-908-ERK-SJB, 2018 U.S. Dist. LEXIS 3212, at *39 n.16 (E.D.N.Y. Jan. 4, 2018) (internal quotation omitted). "The operative question is whether the argument is frivolous, *i.e.*, the legal position has no chance of success, and there is no reasonable argument to extend, modify or reverse the law as it stands." *Fishoff v. Coty Inc.,* 634 F.3d 647, 654 (2d Cir. 2011) (quotation omitted).

Claims are not frivolous simply because they are dismissed. *See e.g.*, *Simon DeBartolo Group, L.P. v. Richard E. Jacobs Group, Inc.*, 186 F.3d 157, 166 (2d Cir. 1999); *Kalnit v. Eichler*, 99 F. Supp. 2d 327 (S.D.N.Y. 2000) (dismissing complaint but holding that plaintiff's attempts to state a claim were not "unreasonable" and did not have "absolutely no chance of success"). However, filing a claim for which plaintiff clearly lacked standing has been deemed a sanctionable violation of Rule 11(b)(2). *See*, *Inter-County Res., Inc. v. Med. Res., Inc.*, 49 F. Supp. 2d 682, 685 (S.D.N.Y. 1999) (sanctioning attorney for bringing a securities action without standing).

10

In this case, any award of fees for violating the prohibition on advancing frivolous claims must be against plaintiff's attorneys and not plaintiff directly.[5] Fed. R.Civ. P. 11(c)(5)(A) & Advisory Committee Notes to the 1993 Amendment ("[m]onetary responsibility for such violations is more properly placed solely on the party's attorneys"); *see also*, *Source Vagabond Sys. V. Hydrapak, Inc.*, 11 Civ. 5379 (CM) (JLC), 2013 U.S. Dist. LEXIS 4853, * 6 (January 11, 2013) (Hon. James L. Cott, U.S.M.J.). Defendants only seek costs and fees accrued in defending this frivolous claim at this time; however, the Court may go beyond the mere award of attorneys' fees accrued defending the frivolous claim and award any sanction that the Court deems just and reasonable, "limited to what suffices to deter repetition of the conduct or comparable conduct by others similarly situated." Fed. R. Civ. P. 11 (c) (4).

This matter is highly analogous to *Inter-County Res., Inc.*, in which the Court determined that plaintiff's filing was frivolous because it lacked standing in light of the Supreme Court decision in *Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723 (1975). *Inter-County Res., Inc.*, 49 F. Supp. 2d, at 684-685. The claim was unsupportable as a result of the application of clear legal principles propounded by the Supreme Court. *C.f.*, *Eastway Constr. Corp. v. New York*, 637 F. Supp. 558, 578 (E.D.N.Y. 1986) (declining to sanction plaintiff, pursuant to Rule 11(c), because of the conflicting and uncertain nature of standing in antitrust matters). Here, plaintiff's equitable relief claims are barred by the clear application of *Lyons*, and sanctions are therefore appropriate.

---

[5] Defendants do not contend that plaintiff brought his equitable claims for an improper purpose in violation of Rule 11(b)(1) of the Federal Rules of Civil Procedure, and are not seeking sanctions directly against plaintiff. *See*, *e.g.*, *Simon DeBartolo Grp., L.P. v. Richard E. Jacobs Grp., Inc.*, 186 F.3d 157, 176 (2d Cir. 1999) ("unlike a violation of Rule 11(b)(2), a violation of Rule 11(b)(1) would warrant the imposition of monetary sanctions not only on [plaintiff's] counsel but also on [plaintiff] itself").

Further, sanctioning plaintiff's counsel in this case will serve a compelling deterrent function, specifically contemplated by Rule 11(c)(4). The City of New York is regularly and frequently sued for violation of individuals' constitutional rights in actions brought pursuant to 42 U.S.C. § 1983. Plaintiffs in depositions very frequently state that they brought their lawsuit so that no one will ever experience what they have experienced. In essence they seek to redress single instances of alleged misconduct through equitable relief. Presumably, it is only through proper client counseling on the part of plaintiff's counsel that the defendant City is able to avoid spending prodigious sums of taxpayer money defending frivolous claims for equitable relief based on these plaintiffs' hopes, but not the law.

Plaintiff in this case is represented by pro bono counsel, a prestigious law firm that seems to share plaintiff's desire to leave an imprint on the NYPD. Neither *pro bono* counsel nor the desire to affect lasting change via a lawsuit are uncommon in Section 1983 cases. [6] However, the requirement that parties not file frivolous claims is unmodified whether frivolous claims are brought for selfish reasons or to improve society.

As a result, plaintiff's counsel should be sanctioned for failing to withdraw plaintiff's claims for equitable relief.

---

[6] There is another potential public policy argument that *pro bono* counsel may be offered additional leeway on pleading standards so as to avoid driving them from this area of law, thereby depriving those plaintiffs of counsel unnecessarily and increasing the burdens of litigation on the Court caused by additional *pro se* plaintiffs. However, the risk of driving pro bono counsel from the Section 1983 arena seems particularly minimal in light of 42 U.S.C. § 1988, which awards fees to a successful plaintiff's attorney. So called "*pro bono* counsel" regularly seek and receive fees for their work on Section 1983 cases in a manner identical to that of attorneys operating on a contingency fee basis. As a result, the fact that counsel in this matter is "*pro bono*" should have no impact on this motion.

12

## **CONCLUSION**

Plaintiff lacked standing to bring his equitable claims on the day the Complaint was filed. Plaintiff's attorneys nonetheless filed claims for equitable relief and have not only refused to abandon them when provided notice of their frivolity, but have gone so far as to hinder early resolution of this matter by demanding those claims bear fruit. As a result, plaintiff's attorneys should be sanctioned, pursuant to Rule 11(c) for violation of Rule 11(b)(2).

Dated:     New York, New York
           January 31, 2020

                                        JAMES E. JOHNSON
                                        Corporation Counsel of the
                                           City of New York
                                        *Attorney for the City of New York, James O'Neill, Terrance Monahan, Hekmatullah Mukhtarzada, Shanee Hansler, David Callan, William Gallagher, Jose A. Gomez, Nay Htoo, and Christopher Siciliano*
                                        100 Church Street
                                        New York, New York 10007
                                        P: (212) 356-2332

                    By:    *Peter W Brocker /s/*
                              Peter W. Brocker
                              *Assistant Corporation Counsel*

cc: All Counsel of Record (via ECF)