**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

TOMAS MEDINA,

                Plaintiff,

     v.

THE CITY OF NEW YORK *et al.*,

                Defendants.

Case No. 19 Civ. 9412 (AJN)

 

## PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTIONS TO DISMISS AND FOR RULE 11 SANCTIONS

Barbara Hamilton, Esq.
Alexander Lesman, Esq.
THE LEGAL AID SOCIETY
199 Water Street, 6th Fl.
New York, NY 10038
(212) 577-3298
bphamilton@legal-aid.org
alesman@legal-aid.org

*Co-Counsel for Plaintiff*

David L. Kornblau, Esq.
Ishita Kala, Esq.
Micha Nandaraj Gallo, Esq.
COVINGTON & BURLING LLP
The New York Times Building
620 Eighth Avenue
New York, NY 10018
(212) 841-1000
dkornblau@cov.com

*Co-Counsel for Plaintiff*

April 14, 2020

# TABLE OF CONTENTS

INTRODUCTION ............................................................................................................... 1

STATEMENT OF FACTS ............................................................................................... 4

ARGUMENT .................................................................................................................... 9

I.     Defendants' Motions to Dismiss Should Be Denied ........................................... 9

    A.     Mr. Medina Has Alleged Standing for Equitable Relief......................... 9

    B.     Mr. Medina Has Pled Sufficient Facts to Seek Municipal Liability.................... 15

        1.     Custom and Usage ..................................................................... 15

        2.     Failure to Train or Supervise .................................................... 20

    C.     Mr. Medina Has Sufficiently Pled the Personal Involvement of Defendants O'Neill, Monahan, Gallagher, Mukhtarzada, and Gomez ................................... 23

        1.     Defendant O'Neill...................................................................... 23

        2.     Defendant Monahan.................................................................... 24

        3.     Defendant Gallagher .................................................................. 25

        4.     Defendant Mukhtarzada .............................................................. 26

        5.     Defendant Gomez ....................................................................... 26

    D.     Defendants' Qualified Immunity Defense Fails ..................................... 26

    E.     Mr. Medina Has Adequately Pled a Constitutionally Impermissible Search ....... 29

    F.     Mr. Medina Has Adequately Pled a Claim for Infliction of Emotional Distress............................................................................................................. 31

    G.     Mr. Medina's State-Law Claims Are Not Time Barred ........................ 32

    H.     Mr. Medina Has Adequately Pled a Claim for Abuse of Process......................... 33

II.     Defendants' Rule 11 Motion Is Sanctionable ..................................................... 34

    A.     Mr. Medina's Pro Bono Counsel Fully Complied With Rule 11 ......................... 34

    B.     The Court Should Grant Mr. Medina Reasonable Expenses Incurred in Opposing Defendants' Meritless and Improper Sanctions Motion ....................... 36

CONCLUSION ............................................................................................................... 38

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abdulgalil Kaid Alwan v. City of New York*,
311 F. Supp. 3d 570, 581 (E.D.N.Y. 2018) ............................................18

*Aguilar v. Immigration & Customs Enf't Div. of the U.S. Dep't of Homeland Sec.*,
811 F. Supp. 2d 803 (S.D.N.Y. 2011).....................................................14

*An v. City of New York*,
No. 16 CIV. 5381 (LGS), 2017 WL 2376576 (S.D.N.Y. June 1, 2017) ........................ *passim*

*Annunziata v. City of New York*,
No. 06 CIV. 7637 (SAS), 2008 WL 2229903 (S.D.N.Y. May 28, 2008)...............29

*Arar v. Ashcroft*,
585 F.3d 559 (2d Cir. 2009)......................................................13, 17

*Arrington* v. *City of New York*,
628 F. App'x 46 (2d Cir. 2015) ......................................................33

*Battle v. City of New York*,
No. 11 CIV. 3599 (RMB), 2012 WL 112242, 2012 WL 112242 (S.D.N.Y.
Jan. 12, 2012)................................................................ *passim*

*Baur v. Veneman*,
352 F.3d 625 (2d Cir. 2003)........................................................13

*Bell v. Wolfish*,
441 U.S. 520 (1979)...............................................................30

*Bender v. City of New York*,
78 F.3d 787 (2d Cir. 1996).........................................................31

*Bertuglia v. City of New York*,
839 F. Supp. 2d 703 (S.D.N.Y. 2012)...............................................21

*Blue Chip Stamps v. Manor Drug Stores*,
421 U.S. 723 (1975)...............................................................35

*Boddie v. City of New York*,
1:15-cv-4275, 2016 WL 1466555 (S.D.N.Y. Apr. 13, 2016)...........................18

*City of Canton v. Harris*,
489 U.S. 378 (1989)...............................................................20

*City of Los Angeles v. Lyons*,
    461 U.S. 95 (1983) ................................................................................ *passim*

*Colon v. Coughlin*,
    58 F.3d 865 (2d Cir. 1995) ................................................................. 23, 24, 25

*Cooper v. City of New York*,
    No. 12 CIV. 8008 (SAS), 2013 WL 5493011 (S.D.N.Y. Oct. 2, 2013) ................................. 29

*Corley v. Vance*,
    365 F. Supp. 3d 407, 442 (S.D.N.Y. 2019) ................................................................ 33

*D'Olimpio v. Crisafi*,
    718 F. Supp. 2d 340 (S.D.N.Y. 2010) ................................................................ 24, 25

*Delorbe-Bell v. City of New York*,
    15-cv-2344 (LGS), 2016 WL 1451581 (S.D.N.Y. Apr. 12, 2016) ................................. 18

*Dixon v. City of New York*,
    14-CV-4930 (PGG), 2017 U.S. Dist. LEXIS 119042 (S.D.N.Y. July 27, 2017) ............. 18, 22

*Doe v. New York*,
    97 F. Supp. 3d 5, 15–16 (E.D.N.Y. 2015) ................................................................ 24

*Edwards v. City of New York*,
    2015 WL 5052637, at *5-6 (2015 S.D.N.Y. Aug. 27, 2015) ................................. 21

*Felix v. City of New York*,
    344 F. Supp. 3d 644, 653 (S.D.N.Y. 2018) ................................................................ 15, 20, 21

*Felmine v. City of New York*,
    No. 09-CV-3768 (CBA) (JO), 2011 WL 4543268 (E.D.N.Y. Sept. 29, 2011) ............. 32, 33

*Fiacco v. City of Renseselaer*,
    783 F.2d 319 (2d Cir. 1986) ................................................................ 18, 19, 25

*Field Day, LLC v. Cnty. of Suffolk*,
    463 F.3d 167 (2d Cir. 2006) ................................................................ 27

*Floyd v. City of New York*,
    283 F.R.D. 153 (S.D.N.Y. 2013) ................................................................ 9, 35

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., Inc.*,
    528 U.S. 167 (2000) ................................................................ 12

*Gentile v. Cty. of Suffolk*,
    926 F.2d 142 (2d Cir. 1991) ................................................................ 17

iv

*Gonzalez v. Bratton*,
  48 F. App'x 363 (2d Cir. 2002) ..........................................................32

*Graupner v. Roth*,
  742 N.Y.S.2d 208 (1st Dep't 2002) ...................................................31

*Green v. Maraio*,
  722 F.2d 1013 (2d Cir. 1983)..............................................................27

*Grullon v. City of New Haven*,
  720 F.3d 133 (2d Cir. 2013)................................................................23

*Harris v. City of Newburgh*,
  2017 WL 4334141 (S.D.N.Y. Sept. 27, 2017).....................................18

*Higginbotham v. City of New York*,
  105 F. Supp. 3d 369, 375 (S.D.N.Y. 2015).........................................27

*Howell v. New York Post Co.*,
  81 N.Y.2d 115 (1993) ........................................................................31

*Indoafric Exports Private Ltd. Co. v. Citibank, N.A.*,
  No. 15-CV-9386 (VM), 2016 WL 6820726 (S.D.N.Y. Nov. 7, 2016)...................34

*Inter-County Res., Inc. v. Med. Res., Inc.*,
  49 F. Supp. 2d 684 (S.D.N.Y. 1999)...................................................35

*Jawbone, LLC v. Donohue*,
  No. 01-cv-8066 (CSH), 2002 WL 1424587 (S.D.N.Y. June 28, 2002)...................37

*Joseph v. City of New York*,
  No. 16-CV-2004 (PKC) (LB), 2017 WL 4233024 (E.D.N.Y. Sep. 22, 2017) ...............22

*Jurkowitsch v. Choudhury*,
  673 F. App'x 44 (2d Cir. 2016) ..........................................................27

*Knife Rights, Inc. v. Vance*,
  802 F.3d 377 (2d Cir. 2015)...........................................................12, 35

*Kraushaar v. Flanigan*,
  45 F.3d 1040 (7th Cir. 1995) .............................................................30

*L.B. v. Town of Chester*,
  232 F. Supp. 2d 227 (S.D.N.Y. 2002)..............................................23, 24

*Lee v. Grand Sichuan E. (N.Y.) Inc.*,
  No. 12-CV-08652 (SN), 2014 WL 199512 (S.D.N.Y. Jan. 17, 2014)...................37

*Ligon v. City of New York*,
  925 F.Supp.2d 478 (S.D.N.Y. 2013)......................................................................11

*Lodges 743 & 1746, Int'l Ass'n of Machinists & Aerospace Workers, AFL-CIO v.
  United Aircraft Corp.*,
  534 F.2d 422 (2d Cir. 1975).........................................................................33, 34

*Lujan v. Defenders of Wildlife*,
  504 U.S. 555 (1992)...........................................................................................13

*Lumpkin v. Brehm*,
  230 F. Supp. 3d 178, 184 (S.D.N.Y. 2017)......................................................26, 27

*Luv 'N Care, Ltd. v. Shiboleth LLP*,
  No. 16-CV-3179 (AJN), 2017 WL 3671039 (S.D.N.Y. Aug. 8, 2017).................37

*Lynch v. City of New York et al.*,
  18-cv-1247 (2d Cir. Mar. 4, 2020).................................................................13, 18

*MacIssac v. Town of Poughkeepsie*,
  770 F. Supp. 2d 587 (S.D.N.Y. 2011)............................................................13, 14

*Manigault v. City of New York*,
  No. 11-CV-4307 (AJN), 2012 WL 13049173 (S.D.N.Y. Apr. 19, 2012) ..............21

*McLennon v. City of New York*,
  171 F.Supp.3d 69, 105 (E.D.N.Y. 2016) .............................................................11

*Nat'l Cong. for Puerto Rican Rights v. City of New York*,
  75 F. Supp. 2d 154 (S.D.N.Y 1999)...................................................................11

*Nelson v. City of Stamford*,
  3:09-cv-1690, 2012 WL 233994 (D. Conn. Jan. 25, 2012) ............................30, 31

*Nicholson v. Williams*,
  203 F. Supp. 2d 153 (E.D.N.Y. 2002) ...............................................................16

*Okin v. Village of Cornwall-on-Hudson Police Dep't*,
  577 F.3d 415 (2d Cir. 2009)..........................................................................16, 17

*On Time Aviation, Inc. v. Bombardier Capital Inc.*,
  570 F. Supp. 2d 328 (D. Conn. 2008)................................................................37

*Osterhoudt v. City of New York*,
  No. 10-CV-3173 (RJD), 2012 WL 4481927 (E.D.N.Y. Sept. 27, 2012)...............18

*Rahman v. Schriro*,
  22 F. Supp. 3d 305, 316 (S.D.N.Y. 2014)............................................................27

*Roe v. City of New York*,
    151 F. Supp. 2d 495 (S.D.N.Y. 2001) ........................................................... *passim*

*Rookard v. Health and Hospitals Corp.*,
    710 F.2d 41 (2d Cir. 1983) .................................................................. 16, 17

*Ross v. Port Chester Housing Authority*,
    2019 WL 4738941 (S.D.N.Y. Sept. 27, 2019) .......................................... 34

*Rowell v. Ferreira*,
    No. 16-CV-6598 (AJN), 2019 WL 4509048 (S.D.N.Y. Sept. 19, 2019) .......... 34, 35

*Safe-Strap Co., Inc. v. Koala Corp*,
    270 F. Supp. 2d 407 (S.D.N.Y. 2003) .................................................... 36

*Shain v. Ellison*,
    356 F.3d 211 (2d Cir. 2004) .................................................................. 13, 14

*Stuto v. Fleishman*,
    164 F.3d 820 (2d Cir. 1999) .................................................................. 31

*Susan B. Anthony List v. Driehaus*,
    573 U.S. 149 (2014) ............................................................................ 12

*Tchatat v. City of New York*,
    2014 WL 12798876 (S.D.N.Y. Sep. 10, 2014) ........................................ 32

*Walker v. City of New York*,
    974 F.2d 293 (2d Cir. 1992) .................................................................. 20

*Ying Li v. City of New York*,
    246 F. Supp. 3d 578, 618 (E.D.N.Y. 2017) .......................................... 33

*Zellner v. Summerlin*,
    494 F. 3d 344 (2d Cir. 2007) ................................................................ 29

**Statutes**

N.Y. Gen. Mun. Law § 50-k ..................................................................... 32

N.Y. C.P.L. § 140.50 .............................................................................. 28

N.Y. C.P.L.R. § 215 .............................................................................. 32

**Other Authorities**

Fed. R. Civ. P. 11 .............................................................................. 39, 40, 41

Fed. R. Civ. P. 12 .............................................................................. 32

## <u>INTRODUCTION</u>

The NYPD has a widespread and longstanding practice of permitting and tolerating its officers' misuse of chokeholds and Tasers. This misuse of potentially deadly force is particularly egregious in low-level police encounters—such as when an officer is merely responding to a potential noise violation. In a 46-page complaint, Plaintiff Tomas Medina details the history and scope of this practice—which is equivalent to a policy and was approved and accepted by the NYPD and its most senior officials—and its dangerous consequences, such as the brutal assault of Mr. Medina by a police officer, Defendant Fabio Nunez.

Despite Defendant Nunez's extensive history of using excessive force, the NYPD promoted him, rather than subjecting him to appropriate discipline and training. Thus emboldened, Defendant Nunez put Mr. Medina in a chokehold and Tased him thirteen times, without the least provocation. Defendant Nunez's violent attack was caught on police body cameras and surveillance video. In an all-too-common effort to cover up this misconduct, Defendant Nunez and his fellow officers falsely arrested Mr. Medina, and NYPD leaders publicly supported the officers while conducting only a cursory investigation. The NYPD continues to deny the unlawfulness of the conduct at issue and has failed to subject any of the officers involved to discipline or retraining, ensuring that those officers and their colleagues will continue to understand that conduct of this sort is tolerated and permitted by the NYPD. The incident continues to cause Mr. Medina chronic physical and emotional pain, and he rightly fears being victimized again.

Mr. Medina brings this action alleging claims under federal and New York law against the City of New York, senior NYPD officials, and the NYPD officers responsible for continuing the unconstitutional NYPD policies at issue, carrying out the attack, covering it up, and failing to

discipline the officers involved. Mr. Medina seeks declaratory and injunctive relief, as well as damages for his own pain and injuries arising from the assault.

Defendants do not challenge the legal sufficiency of many of the claims brought by Mr. Medina, *see* ECF No. 1 at ¶¶ 145-50, 159-64, 181-97, but have filed partial motions to dismiss based on a hodge-podge of flawed legal theories.

Defendant City of New York takes primary aim at Mr. Medina's claim for equitable relief, arguing that he lacks standing to seek such relief under the Supreme Court's 1983 *Lyons* decision because he has pled only "a single instance of allegedly unconstitutional conduct." ECF No. 61 at 4. The City, however, ignores decisions in this District rejecting the same overly narrow interpretation of *Lyons* that the City puts forward here. In those cases, plaintiffs in "single incident" Section 1983 actions were found to have standing to seek injunctive relief because they adequately alleged a likelihood of future harm based on unconstitutional NYPD policies. Mr. Medina has likewise satisfied this pleading standard, as the complaint alleges that he continues to engage in lawful conduct likely to lead Defendant Nunez, or other 34th Precinct NYPD officers, to subject him to another unconstitutional chokehold or Taser attack, which will again be permitted and tolerated under present NYPD practices equivalent to a policy. ECF No. 1 at ¶¶120-132. Mr. Medina has also satisfied the pleading standard because the complaint alleges that his reasonable fear and distrust of NYPD officers curtails his ability to rely on officers for help should he be the victim of or witness to a crime in the future.

Defendants' other arguments fare no better. Contrary to the City's argument, Mr. Medina has adequately pled *Monell* liability by alleging, among other facts, extensive, detailed data demonstrating an NYPD practice and custom of permitting and tolerating the misuse of chokeholds and Tasers. For purposes of *Monell*, a policy need not be a formal written policy;

rather, a policy can be established—as it is here—by a widespread custom or usage or a failure to train or supervise subordinates amounting to deliberate indifference to ongoing constitutional violations.

Five of the ten named individual Defendants argue that their personal involvement is not adequately pleaded, but the complaint alleges detailed facts showing the role of each Defendant in perpetrating or permitting constitutional violations against Mr. Medina, continuing the unconstitutional NYPD policies and practices at issue, or failing to adequately investigate the assault on Mr. Medina. Defendant Nunez, whom the New York City Corporation Counsel has declined to represent in this case, filed a separate partial motion to dismiss. Among other baseless arguments, he asserts that Mr. Medina's state-law tort claims are time barred, but cites the wrong statute of limitations. Mr. Medina's claim was filed within the limitations period (one year and 90 days) applicable to tort claims against City employees.

Finally, in an improper effort to bolster the City's legal position in its motion to dismiss and to obtain leverage in settlement discussions, the Assistant Corporation Counsel in this case filed a Rule 11 motion seeking sanctions against Mr. Medina's *pro bono* counsel at Covington & Burling. The motion, filed simultaneously with Defendants' motion to dismiss, merely parrots the City's standing argument and contends that Mr. Medina's legal position on that issue is frivolous. But since the complaint adequately pleads standing under Rule 8, it follows that the Covington attorneys more than satisfied their professional obligations under the more lenient standard of Rule 11. Defendants' sanctions motion should, therefore, be rejected. Moreover, because the Rule 11 motion is itself frivolous and was filed for improper purposes, the Court should order Defendants to pay Mr. Medina's reasonable costs and attorneys' fees incurred in opposing the Rule 11 motion.

## **STATEMENT OF FACTS**

Amidst outcry over rising civilian deaths in police custody, the NYPD instituted a formal restriction on chokeholds more than 25 years ago. ECF No. 1 at ¶¶ 1, 29. It has yet to enforce it. *Id*. at ¶¶ 30, 38. NYPD officers routinely and illegally use the supposedly restricted technique on civilians. *Id*; ECF No. 1 Exhibit C. From January 2015 to June 2018 alone, NYPD officers were subject to 582 complaints of illegal chokeholds. ECF No. 1 at ¶ 38. During this same period, NYPD officers were sued for chokeholds at least 40 times, and the City has paid more than $1.2 million in settlements. *Id*. at ¶ 31. These numbers are likely just the tip of the iceberg. *Id*. at ¶ 32. A Civilian Complaint Review Board (CCRB) report found a "systematic refusal to impose discipline," *id*. at ¶¶ 36, 66, and an Inspector General report noted "incongruous approaches" to officer accountability, *id*. at ¶ 68. Yet the NYPD continues to resist legislative oversight, *id*. at ¶ 37, and refuses to institute effective training, *id*. at ¶¶ 46-51.

Equally unsettling is NYPD officers' improper use of Tasers to cause "physical anguish" and "excruciating pain" to civilians. *Id*. at ¶ 42; ECF No. 1 Exhibit D. Officers routinely use Tasers in drive stun mode, intending to punish and cause severe pain. ECF No. 1 at ¶ 59-60. From January 2014 to December 2018, NYPD officers were subject to 449 allegations related to Taser use. *Id*. at ¶ 41. Between January 2015 and June 2018, NYPD officers were sued at least 24 times for Taser misuse, and the City paid more than $800,000 in settlements. *Id*. at ¶ 39. Again, these numbers very likely understate the true scope of the problem. *Id* at ¶ 40. The CCRB concluded that Tasers are vulnerable to overuse, *id*. at ¶ 42, and a New York Civil Liberties Union study concluded that 60 percent of NYPD Taser uses involved neither civilian aggression nor risk of officer injury, *id*. at ¶ 43. The NYPD's Taser training lags behind national standards, *id*. at ¶¶ 54-55, and the NYPD has failed to impose anything more than trivial discipline for Taser misuse by its officers, *id*. at ¶¶ 72-75.

It is not just people suspected of breaking the law who are vulnerable to illegal chokehold and Taser use by police officers. "Broken windows" policing often exposes people to these brutal practices simply because they live in over-policed neighborhoods. Incentivized to maximize the number of summonses they issue, NYPD officers target non-criminal "quality-of-life offenses," such as noise complaints. *Id.* at ¶¶ 122, 124-26. Indeed, the NYPD created a new role—Neighborhood Coordination Officer (NCO)—explicitly tasked with curing such "conditions." *Id.* at ¶ 129-30. Men of color, like Mr. Medina, are disproportionately targeted by these policing techniques, including in the 34th Precinct, where police officers frequently stereotype them as perpetrators and criminals. *Id.* at ¶¶ 107, 128, 134.

Defendant Nunez embodies these deeply troubling trends. He is a serial offender, subject to at least 37 misconduct allegations across 17 CCRB complaints, at least one reassignment due to use of force, and at least five legal settlements totaling more than $220,000. *Id.* at ¶¶ 76, 77, 85. Rather than appropriately training and disciplining Defendant Nunez, the NYPD *promoted* him to Detective and made him an NCO, explicitly tasking him with initiating contact with civilians to cure quality-of-life conditions. *Id.* at ¶ 76. These actions foreseeably led to Defendant Nunez's brutal assault of Mr. Medina.

On July 14, 2018, Mr. Medina was listening to music with friends outside of El Mundo, a Washington Heights car dealership. *Id.* at ¶ 88. Neither Mr. Medina nor his friends were engaged in any criminal activity. *Id.* at ¶ 89.

Although they had received no noise complaint, Defendant Nunez and his partner, Defendant Hansler, decided to investigate the gathering. *Id.* at ¶ 86-87. They asked whose speaker was playing the music. *Id.* at ¶ 90. Mr. Medina explained that the speaker belonged to

the dealership. *Id*. Someone in the group turned off the speaker, and Mr. Medina stated that he was packing it up. *Id.* at ¶¶ 90, 152.

Notwithstanding these actions, Defendants Nunez and Hansler asked for ID from Mr. Medina. *Id.* at ¶ 90. As shown by the extensive video footage of the incident, Mr. Medina peacefully informed Defendants Nunez and Hansler that the speaker and music did not belong to him. *Id.* at ¶ 92. Mr. Medina's friend, Ms. Esmeralda Rodriguez, clarified that the group was stopping the music and that the music was hers. *Id.* at ¶¶ 91, 98, 152.

Defendant Nunez began speaking in English. *Id.* at ¶ 93. Upon being told that Mr. Medina did not speak English, Defendant Nunez replied, "that's his problem." *Id.* Again in English, Defendant Nunez demanded Mr. Medina's name. *Id*.

Mr. Medina asked why Defendant Nunez needed his identification. *Id*. at ¶ 94. Knowing that he had done nothing wrong and believing that he was free to leave, Mr. Medina continued his efforts to pack up by picking up a folded chair and turning *away* from Defendant Nunez to carry it into the dealership. *Id.* at ¶ 95. Defendant Nunez became irate and followed Mr. Medina, pushed him against a car, and threatened him by holding handcuffs against his neck and a Taser against his side. *Id.* at ¶¶ 95, 96. Mr. Medina put his hands up in a pleading gesture. *Id*. at ¶ 96.

Without warning or provocation, Defendant Nunez placed Mr. Medina in a chokehold, forcibly wrapping his right arm around Mr. Medina's neck for 23 seconds, *id.* at ¶ 97, while using a Taser on his back, *id.* at ¶ 99. Defendant Hansler made no effort to stop Defendant Nunez. *Id.* at ¶ 98. Instead, she grabbed Mr. Medina's raised left hand and attempted to twist his arm backwards. *Id* at ¶¶ 98, 101. Defendant Nunez pursued Mr. Medina as he backed away, shooting him with the Taser several more times. *Id.* at ¶ 101. Defendant Nunez Tased Mr. Medina thirteen times in total, far exceeding the manufacturer's guidance of discharging the

weapon no more than three times or for 15 seconds. *Id.* at ¶¶ 54-55, 61, 99-100, 118; ECF No. 1 Exhibit H. Defendant Nunez perpetrated this violence despite Ms. Rodriguez's repeated, agitated protests that she—not Mr. Medina—was responsible for the music. ECF No. 1 at ¶¶ 98, 101.

After being viciously assaulted by Defendant Nunez, Mr. Medina was arrested without probable cause and taken to the 34th Precinct. *Id.* at ¶ 110. Defendant Callan, the arresting officer, filed a criminal complaint falsely claiming that Mr. Medina bit and scratched Defendant Nunez and struck Defendant Hansler in her eye. *Id.* at ¶¶ 21, 112. These lies, now clearly exposed by video of the incident, were intended to cover up Defendant Nunez's excessive use of force. *Id.* at ¶¶ 108, 112, 113.

Upon arrival at the precinct, Defendants Siciliano and Htoo intentionally punished and humiliated Mr. Medina by pulling his pants down around his ankles. *Id.* at ¶ 104. Mr. Medina was made to walk into the precinct with his pants down, and was publicly exposed in this position while handcuffed to a post in a high-traffic corridor. *Id.*

Shortly after the incident, Defendant O'Neill, the Police Commissioner, approved a statement supporting Defendant Nunez's actions and defended him at press conferences. *Id.* at ¶¶ 16, 116. Defendant Monahan, the Chief of Department of the NYPD, also publicly defended Defendant Nunez, calling his use of force "necessary." *Id.* at ¶¶ 9, 17, 116.

Defendant Mukhtarzada, the supervising 34th Precinct Sergeant, impeded the investigation of the incident by discounting eyewitness testimony that Defendant Nunez had Tased Mr. Medina at least seven times. *Id.* at ¶¶ 18, 103. Defendant Gomez likewise impeded the investigation by interviewing Mr. Medina with the goal of eliciting a statement from him that would help cover up Defendant Nunez's illegal use of force. *Id.* at ¶¶ 23, 111. Defendants Monahan, Mukhtarzada, Gomez, and Gallagher conducted a deficient use-of-force investigation

that did not find wrongdoing and did not recommend disciplinary action or training for Defendant Nunez. *Id.* at ¶¶ 22, 51.

By contrast, the CCRB, an independent City agency, is moving forward with charges against Defendant Nunez for the chokehold and numerous Taser discharges he utilized against Mr. Medina. *Id.* at ¶ 118. Ultimately, however, the CCRB can only recommend discipline to the NYPD Commissioner. Since Defendants O'Neill and Monahan publicly defended Defendant Nunez's conduct as appropriate, it appears unlikely that he will be appropriately disciplined, regardless of the outcome of the CCRB's administrative prosecution.

As a result of enduring a violent attack at the hands of an NYPD officer who remains on the force and has not been disciplined, Mr. Medina is afraid of the police and no longer trusts that they will protect him. *Id.* at ¶¶ 117, 119-20, 133-35. Mr. Medina has learned from his experience that an NYPD officer can assault a civilian who is not committing any crime, without provocation, and that, even when the assault is witnessed by other officers and caught on camera, the officer may continue working without any discipline. *Id.* at ¶¶ 6, 115-117. This has understandably broken his trust in the NYPD, so much so that Mr. Medina is too afraid to seek out the NYPD's help should he be the victim of or witness to a crime in the future. *Id.* at ¶¶ 119, 121.

Further, this incident has caused Mr. Medina significant pain and emotional distress. *Id.* at ¶¶ 119-120. He still experiences neck and shoulder pain and fears enjoying company in public. *Id.* The baseless criminal prosecution initiated by the false arrest also caused Mr. Medina mental anguish and prevented him from putting the incident behind him emotionally. *Id.* at ¶ 114. Felony charges against Mr. Medina were dismissed six months after the arrest. *Id.* Over ten

months later, after eight court appearances, his criminal case was adjourned in contemplation of dismissal of all remaining charges, and all charges against him have now been dismissed. *Id.*

## ARGUMENT

### I. DEFENDANTS' MOTIONS TO DISMISS SHOULD BE DENIED

#### A. Mr. Medina Has Alleged Standing for Equitable Relief

Acknowledging that Mr. Medina "has standing for a lawsuit for damages," Defendants represented by Corporation Counsel posit that, because Mr. Medina "pleads a single instance of allegedly unconstitutional conduct," he cannot show a likelihood of future harm necessary to seek equitable relief. ECF No. 61 at 4, 6, 9. However, "there is no per se rule requiring more than one past act, or any prior act, for that matter, as a basis for finding a likelihood of future injury." *Floyd v. City of New York*, 283 F.R.D. 153, 170 n.106 (S.D.N.Y. 2013) (citing *Roe v. City of New York*, 151 F. Supp. 2d 495, 503 (S.D.N.Y. 2001)).

Courts have found that plaintiffs have adequately pled standing to bring claims for equitable relief by alleging that their legal conduct will bring them into contact with officers in the future, provided that they have also alleged that a municipal policy or its equivalent permits officers to engage in behavior similar to that challenged as improper. For example, in *An v. City of New York*, Judge Schofield found that a man who was improperly arrested for video recording NYPD officers had standing to pursue injunctive relief because he alleged that he continued to record police and that such recording would "bring him into contact with police officers." No. 16 CIV. 5381 (LGS), 2017 WL 2376576, at *5 (S.D.N.Y. June 1, 2017). The court found these allegations, in conjunction with an adequately pleaded policy or its equivalent, sufficient to show "a real and immediate possibility" of future harm. *Id.*

Similarly, in *Battle v. City of New York*, Judge Berman found standing to pursue equitable relief at the pleadings stage for two plaintiffs who had each, on one prior occasion,

been improperly searched by NYPD officers when riding in livery cabs. No. 11 CIV. 3599 (RMB), 2012 WL 112242, at *4 (S.D.N.Y. Jan. 12, 2012). The court found future harm likely based on plaintiffs' allegations that they would take livery cabs again, that livery drivers reported that NYPD officers stopped cabs and searched passengers without suspicion, and that the NYPD had a policy or practice of permitting unconstitutional searches. *Id*; *see also Roe*, 151 F. Supp. 2d at 500-03 (finding that plaintiffs adequately pled standing where they alleged that they intended to continue to participate in a legal needle exchange program, that the program sites were targeted by NYPD officers, and that the NYPD had a policy, or its equivalent, of unlawfully harassing, arresting and prosecuting injection drug users).

As in *An* and *Battle*, Mr. Medina alleges that he continues to engage in the lawful conduct that brought him in contact with the NYPD—listening to music and barbequing with friends outdoors in the 34th Precinct. ECF No. 1 at ¶ 120. Mr. Medina has also alleged that this conduct is targeted by NCOs in the 34th Precinct and is thus likely to lead to another encounter with NYPD officers. As the complaint alleges, NCOs face pressure to issue summonses for "quality-of-life offenses" and are specifically assigned, among other responsibilities, to correct noise-related "conditions." *Id.* at ¶¶ 121-132. Although Defendants attempt to paint these allegations as "aspersions" untied "to statistics or other factual development," ECF No. 61 at 6, the complaint supports them with citations to numerous articles, news stories, and lawsuits. Defendant Nunez's testimony at his CCRB hearing also makes clear that NCOs have a mandate to investigate noise, regardless of whether they receive a noise complaint, ECF No. 1 at ¶ 87. Mr. Medina's likely future encounter with 34th Precinct officers, in conjunction with the NYPD's policy equivalent of permitting and tolerating the misuse of chokeholds and Tasers, is sufficient to allege standing for equitable relief. *See An*, 2017 WL 2376576, at *5; *Battle*, 2012 WL 112242, at *4.

Going further, Mr. Medina has also specifically alleged a pattern of NYPD practice in the 34th Precinct that makes him likely to suffer another improper chokehold or Taser use. The complaint points to two similar incidents in Washington Heights and the 34th precinct, ECF No. 1 Exhibit C at ¶¶ 21, 30, and alleges that the 34th Precinct has seen an increase in civilian complaints about police conduct for the past three years and that officers in that Precinct have a reputation for aggressive behavior and for stereotyping residents as "perpetrators and criminals." ECF No. 1 at ¶¶ 133-135. Tellingly, Defendant Nunez, who, to Mr. Medina's knowledge, continues to serve as a detective in the 34th Precinct, allegedly used excessive force, including chokeholds, both before and after his assault against Mr. Medina. ECF No. 1 at ¶¶ 76-81. This underscores the likelihood that Mr. Medina will again be subject to a similar constitutional violation in the 34th Precinct. *See Nat'l Cong. for Puerto Rican Rights v. City of New York*, 75 F. Supp. 2d 154, 161-162 (S.D.N.Y 1999) (finding it significant for likelihood of future harm that plaintiffs were alleging that future harm would occur in a specific neighborhood, where multiple complaints of similar improper conduct had been made); *Ligon v. City of New York*, 925 F.Supp. 2d 478, 522 n.320 (S.D.N.Y. 2013) (considering future harm likely for people who will be "outside TAP buildings in the Bronx"); *compare McLennon v. City of New York*, 171 F.Supp. 3d 69, 105 (E.D.N.Y. 2016) (rejecting likelihood of future harm based on mere "intent to travel on [unspecified] New York City roadways").

The complaint further supports Mr. Medina's standing by alleging that, as a result of enduring a violent assault by an officer who remains on the force and has not been disciplined, Mr. Medina reasonably fears the police to such a degree that it will undoubtedly shape his future interactions with NYPD officers. ECF No. 1 at ¶¶ 95-101, 119-121. Mr. Medina's reasonable fear of the NYPD means that he can no longer seek their help should he be the victim of or

witness to a crime. *Id.* at ¶ 119. Additionally, Mr. Medina is afraid of provoking NYPD officers who may interpret the assertion of his rights as insubordination and retaliate with violence. *See id.* at ¶¶ 119-121, 124. Indeed, it was the assertion of his rights—simply asking why the officer needed his identification when the music was not his and then walking away—that precipitated Defendant Nunez's violence. *Id.* at ¶¶ 86-95. Mr. Medina's future ability to seek the help of law enforcement and to assert his rights in interactions with officers has been curtailed by his reasonable fear of a future assault by under-trained and unaccountable officers. *Id.* at ¶¶ 119-121.

Numerous courts have held that a plaintiff who has experienced an unconstitutional enforcement action and whose fear of future enforcement curtails the plaintiff's ability to engage in lawful conduct has standing for injunctive relief. *See Susan B. Anthony List v. Driehaus*, 573 U.S. 149 (2014) (identifying imminent harm where plaintiff alleged an intent to engage in the same speech that was the subject of a prior enforcement proceeding); *Knife Rights, Inc. v. Vance*, 802 F.3d 377, 385-86 (2d Cir. 2015) (holding plaintiffs had standing for injunctive relief because their fear of wrongful prosecution chilled lawful knife sales); *An*, 2017 WL 2376576, at * 5 (conferring standing where plaintiff's fear of future, pretextual arrests stopped him from video recording the police); *Roe*, 151 F. Supp. 2d at 503 (participants in a state-authorized needle exchange program had standing to seek injunctive relief because the NYPD's targeting of program members for arrest curtailed participation in the program); *see also Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., Inc.*, 528 U.S. 167, 183-84 (2000) (finding that fear of pollutants "that would cause [plaintiffs] to curtail their recreational use of [a] waterway" was sufficient for standing for equitable relief).

These allegations are more than adequate to plead standing, especially since, at the pleadings stage, the evaluation of standing is "lenient"—"standing allegations need not be crafted with precise detail, nor must the plaintiff prove his allegations of injury." *Baur v. Veneman*, 352 F.3d 625, 631 (2d Cir. 2003) (citation omitted). Moreover, as with all claims, the court must "construe all reasonable inferences that can be drawn from the complaint in the light most favorable to the plaintiff." *Arar v. Ashcroft*, 585 F.3d 559, 567 (2d Cir. 2009) (en banc), *cert. denied*, 560 U.S. 978 (2010). At this stage, the court's task is "to assess the legal feasibility of the complaint; it is not to weigh the evidence that might be offered on either side." *Lynch v. City of New York et al.*, 18-cv-1247 (2d Cir. Mar. 4, 2020), attached as Exhibit A.

Defendants' attempts to analogize this action to *City of Los Angeles v. Lyons*, 461 U.S. 95, 105-06 (1983), and *Shain v. Ellison*, 356 F.3d 211, 216 (2d Cir. 2004), are misplaced. ECF No. 61 at 5. In both *Lyons* and *Shain*, plaintiffs were unable to establish the likelihood of future encounters with police *after* discovery, when the burden to set forth specific facts establishing standing is heightened. *See, e.g., Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992).

Furthermore, in *Lyons*, the plaintiff, who had been stopped for a traffic violation, did not allege that he was engaging in frequent and continued violations of traffic laws, and the court noted its assumption that plaintiff's future conduct would remain within legal bounds. *See* 461 U.S. at 102-03. Likewise, in *Shain*, the plaintiff did not allege that he was likely to encounter police again in a manner that would allow for another application of the challenged strip search policy. *See* 356 F.3d at 215. The court concluded that the plaintiff "was no more likely to be subject to misdemeanor arrest and detainment than any other citizen of Nassau County," particularly because he had been arrested only once and did not allege that he was continuing in the marital discord that led to his arrest. *Id.*; *see also MacIssac v. Town of Poughkeepsie*, 770 F.

Supp. 2d 587, 601 (S.D.N.Y. 2011) (distinguishing a case based on a DWI offense from cases in which "the plaintiffs had standing to sue for injunctive relief in part because their likelihood of suffering the same harm again did not depend on them willfully breaking the law"). In sharp contrast to those cases, Mr. Medina has alleged that his continuing, *lawful* actions will bring him into contact with NYPD officers likely to engage in similar unconstitutional policing practices. Indeed, Mr. Medina was never even charged with a noise violation, and all charges against him have been dismissed. ECF No. 1 at ¶¶ 114, 152.

Finally, Defendants argue that because Mr. Medina has not pled an "unconstitutional municipal policy for *Monell*, *a fortiori* he cannot demonstrate the requisite policy for standing to seek equitable relief." ECF No. 61 at 9. This is incorrect. As demonstrated below, Mr. Medina has sufficiently alleged a policy equivalent under *Monell.* A number of courts have recognized that a policy that meets the *Monell* standard is also sufficient to confer standing for equitable relief. *An*, 2017 WL 2376576, at *3 ("The Court agrees with the district courts that have applied *Monell* and its progeny when evaluating whether a plaintiff has alleged an official policy or its equivalent for purposes of conferring standing.") (citing *Battle*, 2012 WL 112242, at *4; *Aguilar v. Immigration & Customs Enf't Div. of the U.S. Dep't of Homeland Sec.*, 811 F. Supp. 2d 803, 828 (S.D.N.Y. 2011)).

In *MacIssac v. Town of Poughkeepsie*, cited by Defendants, the court required an "express authorization" for unconstitutional conduct, and found insufficient allegations in that case that the municipality authorized the conduct in question by failing to discipline individual officers. 770 F. Supp. 2d at 597, 601. However, *MacIssac*'s "express authorization" standard contravenes the Second Circuit's recognition that "an official policy *or its equivalent*" suffices to establish standing to pursue equitable relief. *Shain*, 356 F.3d at 216 (emphasis added). In any

event, Mr. Medina's complaint meets the "express authorization" standard since it cites public statements from the NYPD's most senior officials approving of Detective Nunez's improper use of a chokehold and Taser on Mr. Medina, consistent with the NYPD's longstanding practice equivalent to a policy. *See* ECF No. 1 at ¶ 116.

Thus, the complaint alleges both elements—likelihood of future harm and a municipal policy equivalent—required to plead Mr. Medina's standing to seek injunctive relief.

### B.    Mr. Medina Has Pled Sufficient Facts to Seek Municipal Liability

Mr. Medina has sufficiently pled that the City is subject to municipal liablity for permitting and tolerating the misuse of chokeholds and Tasers. Defendants argue that Mr. Medina fails to adequately allege an "official policy" for purposes of municipal liability under § 1983. ECF No. 61 at 12-13. As this Court has stated, "the official policy requirement may be met by": (1) "a practice so persistent and widespread, or permanent and well settled[,] as to constitute a custom or usage with the force of law and to imply the constructive knowledge of policymaking officials" or (2) "a failure to train or supervise subordinates amount[ing] to deliberate indifference to the rights of those with whom [the municipality's employees] come into contact." *Felix v. City of New York*, 344 F. Supp. 3d 644, 653 (S.D.N.Y. 2018) (collecting cases). Mr. Medina's allegations satisfy the "official policy" requirement under both of these standards.

#### 1.    *Custom and Usage*

There is no quantitative measure to establish a custom or usage. Rather, plaintiffs need only plead facts supporting an inference of sufficient notice of a pattern of misconduct and

deliberate indifference, or tacit acquiescence to the misconduct. *See Okin v. Village of Cornwall-on-Hudson Police Dep't*, 577 F.3d 415, 439-40 (2d Cir. 2009).

With regard to improper chokeholds, Mr. Medina has alleged: 40 civil rights lawsuits and multiple news reports detailing wrongdoing, ECF No. 1 at ¶¶ 31-32; ECF No. 1 Exhibit C; 1,811 CCRB allegations of chokehold use from 2009 to 2018, *id.* at ¶ 33; a 2014 CCRB issue-based report on chokehold use, *id.* at ¶¶ 34-36; 582 CCRB allegations following that report, *id.* at ¶ 38; the widely-publicized killing of Eric Garner, *id.* at ¶ 38; and the NYPD's lobbying against a law to criminalize chokeholds, *id.* at ¶ 37. With regard to Taser misuse, Mr. Medina has alleged: 24 civil rights lawsuits and multiple news reports detailing wrongdoing, *id.* at ¶¶ 39-40; ECF No. 1 Exhibit D; 449 CCRB allegations of improper Taser use from 2014 to 2018, *id.* at ¶ 41; a 2016 CCRB issue-based report on Taser misuse, *id.* at ¶ 42; 182 CCRB complaints following that report, *id.* at ¶ 45; and a New York Civil Liberties Union report on Taser misuse, *id.* at ¶ 43.

Mr. Medina further alleges that when faced with evidence of this pattern of misconduct, the City failed to take remedial action, demonstrating deliberate indifference and tacit acquiescence sufficent to create a policy by custom. Not only did the City disregard a CCRB recommendation for a blanket prohibition of chokeholds, *id.* at ¶¶ 37-38, permit continued Taser misuse after a 2015 CCRB report detailing officer overuse and misconduct, *id.* at ¶¶ 42, 45, and adopt Taser training that falls below national and international standards, *id.* at ¶¶ 49, 54-55, but the highest ranking NYPD officials—Defendants O'Neill and Monahan—explicitly condoned Defendant Nunez's brutal assault of Mr. Medina, *id.* at ¶¶ 9, 17, 116. These statements in support of Defendant Nunez serve as further evidence of the NYPD's longstanding  acquiescence to the widespread practice of improper chokehold and Taser use. *See Nicholson v. Williams*, 203 F. Supp. 2d 153, 232 (E.D.N.Y. 2002) (citing *Rookard v. Health and Hospitals Corp.*, 710 F.2d 41

(2d Cir. 1983)) ("Policy can also be gleaned from the statements or actions of policy-making officials."). The complaint also makes clear the causal link between the widespread custom of improper chokehold and Taser use and the violation of Mr. Medina's constitutional rights. ECF No. 1 at ¶¶ 4, E, 86-107.

Finally, as alleged in the complaint, before filing suit Mr. Medina requested additional documents and information on these issues from the NYPD under the New York Freedom of Information Law (FOIL), but the NYPD has failed to respond substantively. *Id.* at ¶ 48. Defendants should not be permitted to benefit from arguing that Mr. Medina has not sufficiently alleged the NYPD's unconstitutional practices after stonewalling Mr. Medina's FOIL requests.

On this motion, the court must draw all reasonable inferences from Mr. Medina's allegations in the light most favorable to him. *See, e.g.*, *Arar*, 585 F.3d at 567. Mr. Medina's allegations are thus more than sufficient to defeat the City's motion to dismiss. *See, e.g., Okin*, 577 F.3d at 439-40 (finding that more than a dozen incidents was sufficient evidence to "create a genuine issue of fact as to whether the officers' conduct . . . was so persistent and widespread as to constitute a custom or usage with the force of law") (quotations omitted); *id.* at 439 (a city that "does nothing" in the face of a pattern of misconduct "compel[s] the conclusion that it has acquiesced in or tacitly authorized its subordinates' unlawful actions."); *An*, 2017 WL 2376576, at *4 (relying on "47 lawsuits, 18 news reports, . . . hundreds of complaints to the CCRB," and a CCRB report to show a pattern of misconduct and deliberate indifference sufficient to allege a municipal policy); *Gentile v. Cty. of Suffolk*, 926 F.2d 142, 151, 153 (2d Cir. 1991) (holding that a report and evidence that "high-ranking County officials twice ratified the misconduct of individual police officers" were sufficient to both "establish the existence of a municipal policy

or practice" and support the allegation that misconduct was "consistently ignore[d]") (quotations omitted).[1]

Ignoring the standard applicable to a motion to dismiss, the City improperly asks the Court to weigh the evidence. *See, e.g.*, *Lynch*, 18-cv-1247, attached as Exhibit A. The City argues that unfounded complaints and unadjudicated lawsuits cannot demonstrate a pattern of misconduct sufficient to establish a custom or usage. ECF No. 61 at 15, 17. This argument, however, is directly contrary to the law of the Second Circuit: "[T]he evidence [of] a number of claims of police brutality . . . was relevant. Whether or not the claims had validity, the very assertion of a number of such claims put the City on notice." *Fiacco v. City of Renseselaer,* 783 F.2d 319, 328 (2d Cir. 1986); *see also Osterhoudt v. City of New York*, No. 10-CV-3173 (RJD), 2012 WL 4481927, at *1 (E.D.N.Y. Sept. 27, 2012).[2]

The City attempts to create a factual dispute regarding the number of CCRB chokehold and Taser complaints by citing to a table of CCRB data reporting on the use of force. ECF No.

---

[1] The numerous examples of NYPD misconduct alleged in Mr. Medina's complaint plainly distinguish it from the cases cited by the City in which courts dismissed claims based entirely on a plaintiff's reference to a *single* source of NYPD misconduct. *See Abdulgalil Kaid Alwan v. City of New York*, 311 F. Supp. 3d 570, 581 (E.D.N.Y. 2018) (finding that citation to a single Officer of the Inspector General for the NYPD ("OIG") Report that "was issued *well after* Plaintiff's arrest" could not create "a triable issue" as to deliberate indifference) (emphasis added); *Delorbe-Bell v. City of New York*, 15-cv-2344 (LGS), 2016 WL 1451581, at *3 (S.D.N.Y. Apr. 12, 2016) (finding that reference to a single OIG report "standing alone" was "insufficient to create a plausible inference of the City's deliberate indifference"); *Boddie v. City of New York*, 1:15-cv-4275 (GHW), 2016 WL 1466555, at *3-4 (S.D.N.Y. Apr. 13, 2016) (finding that plaintiff failed to state a claim where he was arrested "six months before the publication of the report" that he relied on); *Dixon v. City of New York*, 14-CV-4930 (PGG), 2017 U.S. Dist. LEXIS 119042, at *30–31 (S.D.N.Y. July 27, 2017) (dismissing plaintiff's claim where the single report relied on was issued four years after plaintiff's claim accrued).

[2] The one case Defendants cite on this point, *Harris v. City of Newburgh*, is easily distinguished. In *Harris*, the plaintiff attempted to establish a custom by citing only five prior lawsuits over a five-year period, and the court deemed it significant that none of those cases were adjudicated. No. 16-CV-2731 (KMK), 2017 WL 4334141, at *5 (S.D.N.Y. Sept. 27, 2017). Here, Plaintiff alleges far more extensive evidence of the City's unconstitutional chokehold and Taser practices.

61 at 14-15; ECF No. 64, Brocker Decl., Exhibit B at p. 63, Table 25. However, this table understates the extent of the practices in question by including only resolved complaints and excluding numerous unresolved complaints, and by covering only the period between 2014 to 2018.[3] Thus, according to the table there were 519 chokehold allegations *resolved* between 2014 and 2018 (360 of which were either substantiated or the CCRB could not determine if the officer engaged in misconduct), but the complaint alleges that 582 chokehold allegations were *made* in the shorter time period between 2015 and 2018. ECF No. 1 at ¶ 38. Similarly, while the table indicates that only 140 Taser allegations were resolved from 2014 to 2018, the complaint alleges that the CCRB received 449 such allegations during the same time period. ECF No. 1 at ¶ 41. Thus, the City's claim that only 13 of the alleged Taser complaints were substantiated, ECF No. 61 at 8, is misleading. Moreover, the City's attempt to discount the probative value of the total number of chokehold and Taser allegations runs counter to the law of the Second Circuit. *See Fiacco,* 783 F.2d at 328.

In a further attempt to parse the evidence on a motion to dismiss, the City argues that, according to a CCRB report cited in the complaint, the ratio of chokehold complaints to other forms of excessive force complaints declined from 5.8 percent in 2014 to 3.8 percent in 2018. ECF No. 61 at 14. This argument goes nowhere. Simply because NYPD officers also employ others forms of excessive force in no way refutes or undermines Mr. Medina's allegation of a widespread NYPD custom and practice of using improper chokeholds.

---

[3] For example, Mr. Medina filed his CCRB complaint in 2018, but because the investigation was not concluded in 2018 his complaint would not be reported in the City's table. *See* ECF No. 1 ¶ 118; ECF No. 61 at 14-15; ECF No. 64, Brocker Decl., Exhibit B at p. 63, Table 25.

## 2.    *Failure to Train or Supervise*

Contrary to the City's argument, Mr. Medina has also adequately pled an alternative basis for the City's liability: its failure to train or supervise NYPD officers on the appropriate limited use of chokeholds and Tasers, reflecting the City's deliberate indifference to the rights of those victimized by the misuse of these dangerous policing techniques, and resulting in the violation of Mr. Medina's constitutional rights. *See, e.g., Felix*, 344 F. Supp. 3d at 653.

Mr. Medina has sufficiently pled each element required to show deliberate indifference in failing to train municipal employees: (1) "that a policymaker knows 'to a moral certainty' that her employees will confront a given situation"; (2) "that the situation either presents the employee with a difficult choice of the sort that training or supervision will make less difficult or that there is a history of employees mishandling the situation"; and (3) "that the wrong choice by the city employee will frequently cause the deprivation of a citizen's constitutional rights." *Walker v. City of New York*, 974 F.2d 293, 297-98 (2d Cir. 1992) (quoting *City of Canton v. Harris*, 489 U.S. 378, 390 n.10 (1989)).

As discussed above, the complaint amply alleges that the City is on notice of a persistent NYPD practice of chokehold and Taser misuse, and that there is a history of officers mishandling these situations. Based on the complaints, lawsuits, news articles, and public reports referenced in the complaint, and drawing all inferences in Mr. Medina's favor, it is also reasonable to infer that the City is on notice that officers will confront situations where they must make decisions concerning escalation of low level encounters, including whether to use chokeholds or Tasers. *See, e.g.*, ECF No. 1 at ¶¶ 29-45; ECF No. 1 Exhibit C, Exhibit D. Likewise, based on the allegations in the complaint, it is reasonable to infer that officers who make the wrong choice and use excessive force will frequently cause the deprivation of constitutional rights, as occurred in this case. *See, e.g.*, ECF No. 1 Exhibit C, Exhibit D.

Mr. Medina's allegations are similar to those found sufficient in *Edwards v. City of New York*, where the court held that news articles, government reports, and 18 prior lawsuits "create[d] an inference of deliberate indifference" as they "plausibly demonstrate[d] that policymakers knew to a moral certainty that [Department of Correction] officers routinely confront" similar situations, "there is a history of DOC officers mishandling such situations by responding with excessive force," and "it is beyond doubt that a DOC officer's use of excessive force will frequently cause the deprivation of a citizen's constitutional rights." No. 14–cv–10058 (KBF), 2015 WL 5052637, at *5-6 (2015 S.D.N.Y. Aug. 27, 2015); *see also Bertuglia v. City of New York*, 839 F. Supp. 2d 703, 738-39 (S.D.N.Y. 2012) (denying motion to dismiss where the plaintiff cited over 15 prior lawsuits and alleged the existence of additional unpublished opinions to show deliberate indifference).

The City's attempt to eliminate unadjudicated lawsuits and allegations deemed unfounded in the failure-to-train context is as improper as it is in the custom-and-practice context. ECF No. 61 at 18. "[T]here is no requirement that complaints result in a formal finding of misconduct for such complaints to support findings of failure to supervise or failure to train." *Felix*, 344 F. Supp. 3d at 662 (citing *Manigault v. City of New York*, No. 11-CV-4307 (AJN), 2012 WL 13049173, at *8-9 (S.D.N.Y. Apr. 19, 2012)).

Once again ignoring the standard on a motion to dismiss, the City argues, as a factual matter, that it "has proactively taken measures to address" chokehold and Taser misuse. ECF No. 61 at 19. This factual assertion is clearly disputed and flatly inconsistent with the allegations of the complaint, which at this stage of the litigation must be accepted as true. The City disregarded a CCRB recommendation for a blanket prohibition of chokeholds, ECF No. 1 at ¶¶ 36-38, 70; permitted continued chokehold and Taser misuse after CCRB reports detailing misconduct, *id.* at

¶¶ 38, 45; resisted legislation to make police use of chokeholds a misdemeanor, *id.* at ¶ 37; adopted Taser training that falls below national and international standards, *id.* at ¶¶ 49, 54-55; systematically refused to discipline officers who misuse chokeholds, *id.* at ¶¶ 64-66, 68; and failed to impose non-trivial discipline for Taser misuse, *id.* at ¶ 72. The City's failure to take remedial action is also clear from the NYPD's decision not to discipline Defendant Nunez, despite his history of excessive force, and instead to promote him. ECF No. 1 at ¶ 76.

Moreover, the City's evidence of its supposed "proactive measures" is factually deficient. The City notes that the reports cited in the complaint were issued by the CCRB, a City agency, and on that basis argues that the City has addressed the issues of chokehold and Taser misuse. ECF No. 61 at 19. But while those reports exposed abuses, the CCRB could not do anything to address them, because its authority is limited to making recommendations to the NYPD. *See* New York City Charter, Chapter 18-A, Section 440(c); *see also An*, 2017 WL 2376576, at *4 ("[T]he CCRB's decision to prepare the so-called 'bystander report' not only support[s] the inference that the City's need for more or better supervision to protect against constitutional violations was obvious, [it] also support[s] the inference that the City failed to make meaningful efforts to address the risk of harm."). Even in the case cited by the City on this issue, the CCRB report was not seen as a remedial measure; rather, the court found the report unpersuasive because statements by NYPD officers cited in the complaint "suggest[ed] that the NYPD treats unlawful searches as deviations from NYPD policy." *See Joseph v. City of New York*, No. 16-CV-2004 (PKC) (LB), 2017 WL 4233024, at *5 (E.D.N.Y. Sep. 22, 2017).

It is also irrelevant that other cases cited by the City found that the number of hours that the NYPD spent on use-of-force training *in general* was similar to the national average. ECF No. 61 at 19 (citing *Dixon*, 2017 U.S. Dist. LEXIS 119042, at *34). Those findings say nothing

regarding the content, quality, or extent of the NYPD's trainings on chokehold and Taser use specifically, which are clearly inadequate in light of the widespread abuses alleged in the complaint.

### C. Mr. Medina Has Sufficiently Pled the Personal Involvement of Defendants O'Neill, Monahan, Gallagher, Mukhtarzada, and Gomez

Defendants O'Neill, Monahan, Gallagher, Mukhtarzada, and Gomez argue that they cannot be individually liable for any of Mr. Medina's claims because the complaint does not adequately allege their personal involvement. On the contrary, Mr. Medina has pled valid claims against these defendants based on allegations that each Defendant "created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom"; "was grossly negligent in supervising subordinates who committed the wrongful acts"; or "exhibited deliberate indifference . . . by failing to act on information indicating that unconstitutional acts were occurring." *Grullon v. City of New Haven*, 720 F.3d 133, 139, (2d Cir. 2013) (quoting *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995)).

#### 1. Defendant O'Neill

Defendants allege that Defendant O'Neill's post-incident statements are insufficient to establish his personal involvement. ECF No. 61 at 10. However, in addition to making these statements, ECF No. 1 at ¶ 116, Defendant O'Neill, as Commissioner of the NYPD during all times relevant to this action, *id* at ¶ 16, was the person primarily responsible for the execution of NYPD policy and had broad, plenary discretion to determine the penalty for members of the NYPD found culpable in the disciplinary process. NYC Charter §§ 434(b), 14-115(a). Mr. Medina alleges that Defendant O'Neill approved and continued a practice authorizing improper chokehold and Taser use, which resulted in Defendant Nunez's attack on him. This is sufficient to plead a claim against Defendant O'Neill. *See, e.g.*, *L.B. v. Town of Chester*, 232 F. Supp. 2d

227, 237 (S.D.N.Y. 2002) (finding that plaintiff adequately pled a §1983 claim against police commissioner because "personal involvement has been construed to include creating a policy or custom under which the unconstitutional practices occurred or allow[ing] such a policy or custom continue"); *Doe v. New York*, 97 F. Supp. 3d 5, 15–16 (E.D.N.Y. 2015) (finding personal involvement of governor who "decided to allow the continuance of [a] policy" after being informed of it in a meeting).

### 2. *Defendant Monahan*

Likewise, Mr. Medina has adequately pled the personal involvement of Defendant Monahan. As Chief of Department, the highest-ranking uniformed member of the NYPD, Defendant Monahan, like Defendant O'Neill, "helped craft the policies that led to the violations of Mr. Medina's rights." ECF No. 1 at ¶¶ 9, 17. Further, after Mr. Medina's assault by Defendant Nunez, Defendant Monahan made a public statement supporting Nunez's use of force as "necessary" and "publically defended [Nunez] in the media." *Id.* at ¶ 116.

Mr. Medina also alleges that Defendant Monahan was "personally involved in failures to investigate this matter" and "fail[ed] to recognize any misconduct in Defendant Nunez's actions towards Mr. Medina." *Id.* at ¶¶ 17, 51. The City points out that there is "no constitutional right to an investigation by government officials," ECF No. 61 at 10-11 (quotations omitted), but this argument misapprehends the issue. Mr. Medina is not claiming the violation of a constitutional right to an investigation.

Rather, Mr. Medina alleges that Defendant Monahan's deficient investigation was intended to cover up Defendant Nunez's misconduct and thus is nonfeasance that subjects Defendant Monahan to personal liability. *See* ECF No. 1 at ¶ 115; *D'Olimpio v. Crisafi*, 718 F. Supp. 2d 340, 347 (S.D.N.Y. 2010) ("'[P]ersonal involvement of defendants in alleged constitutional deprivations' can be shown by nonfeasance as well as misfeasance.") (quoting

*Colon*, 58 F.3d at 873). Further, the complaint alleges that the investigation reflected grossly negligent supervision of and deliberate indifference to Defendant Nunez's unconstitutional conduct sufficient to establish Defendant Monahan's liability for excessive force and false search and arrest. *See D'Olimpio*, 718 F. Supp. 2d at 347 (denying motion to dismiss where supervisors' failure to address "various acts of misconduct" was found sufficient to plead gross negligence in supervision or deliberate indifference); *see also Fiacco*, 783 F.2d at 331 (finding that failure of individual defendants to conduct a non-superficial investigation into a civilian's excessive force complaint showed deliberate indifference). The flawed investigation prolonged the effects of the false arrest, subjecting Mr. Medina to over a year of baseless criminal prosecution that caused him mental anguish. ECF No. 1 at ¶114.

### 3. Defendant Gallagher

The City asserts incorrectly that Mr. Medina has not pled the personal involvement of Defendant Gallagher, the Patrol Duty Captain in the 34th Precinct, "other than simply being [a] supervisor[] within the NYPD." ECF No. 61 at 12. In fact, the complaint alleges that Defendant Gallagher "recommended that no further action be taken in response" to the unconstitutional assault perpetrated on Mr. Medina. ECF No. 1 at ¶ 22. Gallagher's "failure to recognize any misconduct in Defendant Nunez's actions towards Mr. Medina" was actionable nonfeasance akin to Defendant Monahan's conduct. *Id.* at ¶ 51. Defendant Gallagher's conduct also extended the repercussions Mr. Medina suffered from his false arrest. Additionally, the complaint alleges that Defendant Gallagher's failure to address this attack, as well as other similar incidents in the 34th Precinct, *see id.* at ¶ 135 (alleging that "[a]ccording to the CCRB's 2018 Annual Report, civilian complaints arising out of incidents in the 34th Precinct have increased in the past three years"), demonstrates grossly negligent supervision and deliberate indifference. These allegations adequately plead a claim for his personal liability.

### 4. Defendant Mukhtarzada

Mr. Medina has adequately alleged the personal involvement of Defendant Mukhtarzada, the supervisor at the scene of the incident, based on his investigation of "Nunez's use of force" and his supervision of "the collection of evidence and witness testimony" and "the behavior of all officers on the scene." *Id.* at ¶ 18. In this role, not only did Defendant Mukhtarzada exhibit gross negligence and deliberate indifference in conducting a biased investigation that falsely absolved Defendant Nunez of wrongdoing, *id.* at ¶¶ 51, 115, he also engaged in an abuse of process when he impeded the investigation by discounting eyewitness statements—confirmed by video of the incident—that Nunez had Tased Mr. Medina at least seven times, *id.* at ¶ 103.

### 5. Defendant Gomez

The complaint also sufficiently pleads a claim for individual liability against Defendant Gomez, a detective working in the 34th Precinct, who participated in the biased and grossly inadequate initial force investigation. *Id.* at ¶¶ 23, 51. These allegations, similar to those against Defendant Mukhtarzada, show deliberate indifference in the face of information about unconstitutional conduct and a prolonging of the effects of Mr. Medina's false arrest. Further, Mr. Medina alleges that Defendant Gomez's post-incident interview of Mr. Medina was an abuse of process in that it was merely "an attempt to get a statement that would assist in the cover-up of the unlawful use of force." *Id.* at ¶ 111.

### D. Defendants' Qualified Immunity Defense Fails

Defendants argue that Mr. Medina's false arrest claim should be dismissed because Defendants are "entitled to qualified immunity" as a result of the existence, or arguable existence, of probable cause. ECF No. 61 at 21; ECF No. 75 at 4. But where "[d]efendants have raised the issue of qualified immunity in a Rule 12(b)(6) motion, they must demonstrate that facts establishing arguable probable cause are 'clear from the face of the [complaint].'" *Lumpkin*

*v. Brehm*, 230 F. Supp. 3d 178, 184 (S.D.N.Y. 2017) (citing *Rahman v. Schriro*, 22 F. Supp. 3d 305, 316 (S.D.N.Y. 2014)). Gaps in the complaint must be construed against qualified immunity. *See Jurkowitsch v. Choudhury*, 673 F. App'x 44, 47 (2d Cir. 2016). This is why "[u]sually, the defense of qualified immunity cannot support the grant of a Fed. R. Civ. P. 12(b)(6) motion for failure to state a claim upon which relief can be granted." *Green v. Maraio*, 722 F.2d 1013, 1018 (2d Cir. 1983); *see also Higginbotham v. City of New York*, 105 F. Supp. 3d 369, 375 (S.D.N.Y. 2015) ("On a motion to dismiss . . . a qualified immunity defense based on arguable probable cause 'faces a formidable hurdle . . . and is usually not successful.'") (quoting *Field Day, LLC v. Cnty. of Suffolk*, 463 F.3d 167, 19192 (2d Cir. 2006)).

Defendants' qualified immunity defense does not meet this stringent standard. Defendants do not claim that the complaint indicates arguable probable cause for any of the crimes for which Mr. Medina was falsely arrested: assault in the second degree, attempted resisting arrest, attempted obstructing governmental administration, and attempted disorderly conduct. ECF No. 1 at ¶ 110. Nor does the complaint concede that there was probable cause, or arguable probable cause, for finding that Mr. Medina had committed a noise violation (which was not cited as a basis for his arrest). ECF No. 61 at 21; ECF No. 75 at 5. The complaint does not allege that Mr. Medina was listening to "loud music." ECF No. 61 at 21. Nor does it allege facts that establish the ambient sound level, the decibel level of the music, or the distance from which Defendants Nunez and Hansler heard the music. No facts are alleged establishing Mr. Medina's "dominion and control" over the music or speaker. *Id.* at 23. Indeed, the complaint alleges the opposite—that the Defendants knew that Mr. Medina was not responsible for either the speaker or the music. ECF No. 1 at ¶¶ 90, 92, 98, 101. Finally, the complaint alleges that the

music was turned off immediately upon the Defendants' arrival. *Id.* at ¶¶ 90-91, 152. Defendants' argument ignores these allegations.

In his separate motion, Defendant Nunez argues that the allegations of the complaint establish arguable probable cause to arrest Mr. Medina because "Plaintiff never provided his identification." ECF No. 75 at 5. But Defendant Nunez was not entitled to Mr. Medina's identification. New York law allows an officer to request identification when the officer "reasonably suspects that such person is committing, has committed, or is about to commit" a felony or misdemeanor. N.Y. C.P.L. § 140.50. The complaint alleges no basis for Defendant Nunez to reasonably suspect that Mr. Medina committed or was about to commit any such offense. Indeed, the complaint asserts the opposite: that "Mr. Medina had not committed an illegal action." ECF No. 1 at ¶ 152. Thus, Mr. Medina's inability to produce his identification did not independently create probable cause for an arrest.

Defendant Nunez also tries to create a qualified immunity defense by arguing that "Plaintiff admits to raising his arms at Detective Nunez, picking up a potentially dangerous object and walking away from the officers attempting to discharge their duties." ECF No. 75 at 5. The complaint, which must be accepted as true for purposes of this motion, alleges that Mr. Medina picked up the folding chair as he packed up and "turned away from Defendant Nunez," ECF No. 1 at ¶ 95, and that he raised his arms "in a pleading gesture" and kept them "at a distance from Defendant Nunez," *id*. at ¶ 96. Moreover, the video submitted with the complaint exposes the absurdity of Defendant Nunez's mischaracterization of the events that occurred. ECF No. 1 Exhibit A, Exhibit B.

The Corporation Counsel's brief notes that an officer is entitled to qualified immunity if he or she was objectively reasonable in relying on a fellow officer's statements to establish

probable cause. ECF No. 61 at 22 (citing *Zellner v. Summerlin*, 494 F. 3d 344, 369 (2d Cir.

2007); *Annunziata v. City of New York*, No. 06 CIV. 7637 (SAS), 2008 WL 2229903 (S.D.N.Y.

May 28, 2008)). At best, this argument could apply only to Defendant Callan, who was not

"present at the time that plaintiff was initially seized."[4] ECF No. 61 at 22. But even Defendant

Callan cannot rely on this defense, because probable cause must be based on "reasonably

trustworthy information," *Zellner*, 494 F. 3d at 369, and qualified immunity does not apply when

"[the Plaintiff] alleges that [the Defendant] knew that [Plaintiff] was innocent . . . ," *Cooper v.

City of New York*, No. 12 CIV. 8008 (SAS), 2013 WL 5493011, at *6 (S.D.N.Y. Oct. 2, 2013).

The complaint alleges that Defendant Callan filed the criminal complaint "on behalf of

Defendants Nunez and Hansler" and that the charges were "the result of intentional lies" and

were brought "solely for the purpose of distracting from Defendant Nunez's unlawful use of

force" as part of a coordinated scheme by Defendants to "protect their colleague." ECF No. 1 at

¶¶ 21, 106, 112-113. There is nothing in the complaint stating that Defendant Callan's actions

resulted from "reasonably trustworthy information." *Zellner*, 494 F. 3d at 369. Accordingly, this

argument, too, should be rejected.

### E.     Mr. Medina Has Adequately Pled a Constitutionally Impermissible Search

Defendants seek dismissal of Mr. Medina's unlawful search claim, arguing that the

complaint "does not plead what aspects of his search were unconstitutional, beyond that he was

in only his underwear briefly." ECF No. 61 at 24. The complaint, however, alleges far more: that

Defendants Siciliano and Htoo pulled down Mr. Medina's pants outside the precinct; forced him

---

[4] Defendants admit that, based on the complaint, "P.O. Hansler had a 'reasonable opportunity' to intervene to stop plaintiff's arrest." ECF No. 61 at 22. Defendants O'Neill, Monahan, Gallagher, Mukhtarzada, and Gomez are liable for false arrest and false search due to their supervision and/or investigation of the incident. See *supra*, section I.C.

to walk into the precinct with his pants around his ankles; and left his pants down while he was handcuffed to a post in a high-traffic corridor. ECF No. 1 at ¶ 104. These allegations sufficiently plead a constitutionally impermissible search. *See, e.g.*, *Bell v. Wolfish*, 441 U.S. 520, 559 (1979) (holding that the constitutionality of a search is the result of a balancing test including "the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted."); *Kraushaar v. Flanigan*, 45 F.3d 1040, 105455 (7th Cir. 1995) (leaving to the fact finder a decision on the constitutionality of a public search where the victim's underwear remained on).

Defendants cite *Nelson v. City of Stamford* for the proposition that the search was permissible because Mr. Medina's underwear remained on. ECF No. 61 at 24. However, while the court in *Nelson* found, on summary judgment, that Mr. Nelson was not subject to an improper strip search, it denied summary judgment as to his wife, whose underwear remained on, and noted that "the mere fact that the search does not constitute a strip search does not conclude the inquiry regarding the reasonableness of the search." *Nelson v. City of Stamford,* 3:09-cv-1690 (VLB), 2012 WL 233994, at *25 (D. Conn. Jan. 25, 2012).

Moreover, the search of Mr. Medina, as alleged in the complaint, was more intrusive and abusive than the search of Mr. Nelson. While Mr. Nelson was initially instructed to remove his clothing, *Nelson*, 2012 WL 233994, at *27, Defendants Siciliano and Htoo "pull[ed] Mr. Medina's pants down around his ankles," ECF No. 1 at ¶ 104. While in *Nelson* the search was performed to "take all items that can be used as a weapon," 2012 WL 233994, at *28, Defendants Siciliano and Htoo searched Mr. Medina "specifically to punish and humiliate" him, ECF No. 1 at ¶ 104. And while in *Nelson* the search was performed "in the booking area" and "in the presence of predominantly male officers," 2012 WL 233994, at *27-28, Mr. Medina's "pants

were around his ankles as he walked into the precinct" and "officers left his pants around his ankles while he stood handcuffed to a post in a high-traffic corridor," ECF No. 1 at ¶ 104. *Nelson* thus supports the adequacy of Mr. Medina's unlawful search claim.

F.     **Mr. Medina Has Adequately Pled a Claim for Infliction of Emotional Distress**

Defendants argue that Mr. Medina's claims for infliction of emotional distress should be dismissed because Mr. Medina fails to plead facts sufficient to demonstrate "severe emotional distress" and fails to assert claims that are not duplicative of his existing tort claims. ECF No. 61 at 24-25; ECF No. 75 at 7.

To assert a cause of action for emotional distress, the plaintiff must allege "(i) extreme and outrageous conduct; (ii) intent to cause, or disregard of a substantial probability of causing, severe emotional distress; (iii) a causal conduct between the conduct and the injury; and (iv) severe emotional distress." *Graupner v. Roth*, 742 N.Y.S.2d 208, 210 (1st Dep't 2002); (citing *Howell v. New York Post Co.*, 81 N.Y.2d 115, 121 (1993)). The Second Circuit has noted that the standard for "extreme and outrageous conduct" is not exacting, and has been found to include behaviors such as "'hang-up' telephone calls," "taunting letter[s]," and "driving too closely and making threatening looks." *Bender v. City of New York*, 78 F.3d 787, 791 (2d Cir. 1996); *see also Stuto v. Fleishman*, 164 F.3d 820, 828 (2d Cir. 1999) ("[C]ourts have sustained claims for intentional infliction of emotional distress . . . involv[ing] some combination of public humiliation, false accusations of criminal or heinous conduct, verbal abuse or harassment, physical threats, permanent loss of employment, or conduct contrary to public policy.")

Mr. Medina's allegations share these characteristics. Among other extreme and outrageous conduct, the complaint alleges that Defendants lied about Mr. Medina biting, scratching, and striking Defendants Nunez and Hansler, ECF No. 1 at ¶ 112; forced Mr. Medina

to walk into the precinct with his pants down, *id.* at ¶ 104; repeatedly demanded Mr. Medina's

ID in English, being fully aware that he could not understand, *id.* at ¶ 93; and called over 20

officers to the scene to watch as Mr. Medina's rights were violated, *id.* at ¶ 102. The complaint

further alleges that Defendants intended to cause, and in fact caused, Mr. Medina severe

emotional distress, resulting in "interference with familial relationships" and "gainful

employment," and "embarrassment[] and humiliation," as well as the "mental anguish" that

accompanied his prolonged criminal prosecution. *Id.* at ¶¶ 114, 119.

Defendants also claim that emotional distress remedies are not available for behavior that

could be subject to traditional tort remedies. But Mr. Medina alleges multiple outrageous acts

that are not subject to traditional tort liability, including those detailed above. *See, e.g.*, ECF No.

1 at ¶¶ 93, 102, 104, 112. Mr. Medina's claim for infliction of emotional distress is thus, "quite

simply, not duplicative of h[is] false imprisonment claim and h[is] claim is therefore not barred."

*Gonzalez v. Bratton*, 48 F. App'x 363, 365 (2d Cir. 2002).

## G.    Mr. Medina's State-Law Claims Are Not Time Barred

Citing the wrong statute of limitations (N.Y. C.P.L.R. § 215), Defendant Nunez argues

that Mr. Medina's claims under New York law are time-barred because Mr. Medina's action was

initiated over one year after the alleged underlying incident.[5] ECF No. 75 at 6. The correct

statute of limitations, applicable to civil actions against employees of the City of New York,

requires that the action " be commenced . . . within one year and ninety days." N.Y. Gen. Mun.

Law § 50-k (McKinney); *see Felmine v. City of New York*, No. 09-CV-3768 (CBA) (JO), 2011

---

[5] Defendant Nunez's reference to *Tchatat v. City of New York* is misplaced. ECF No. 75 at 6.
While the City of New York and NYPD officers were parties in *Tchatat*, the time-barred state
law tort claims referenced by Defendant Nunez were brought against employees of a private
security company and Best Buy. *See* Complaint at 15, 155, 158, 164, 170, *Tchatat*, 14-CV-2385
(LGS), 2014 WL 12798876 (S.D.N.Y. Sep. 10, 2014).

WL 4543268, at *24 (E.D.N.Y. Sept. 29, 2011). This action (filed on October 10, 2019) was commenced within this limitations period: one year and 88 days after the date of Defendant Nunez's assault of Mr. Medina (July 14 , 2018).

### H. Mr. Medina Has Adequately Pled a Claim for Abuse of Process

Defendant Nunez argues that Mr. Medina has not properly pled a claim for abuse of process because Mr. Medina "fails to assert more than bald allegations" of "any collateral objective" or intent to cause harm. ECF No. 75 at 7-8. This argument simply ignores the detailed allegations in the complaint that Defendant Nunez had extensive experience with the NYPD disciplinary process and was aware that the force he used against Mr. Medina was excessive, ECF No. 1 at ¶ 108, that Defendant Nunez falsely stated that Mr. Medina used violence and injured him and Defendant Hansler, *id*. at ¶ 112, and that charges were brought against Mr. Medina for the purpose of distracting from Defendant Nunez's unlawful use of force and to aid him in avoiding further discipline that could endanger his career or pension, *id*. at ¶ 113. These allegations plead a valid abuse-of-process claim because they support the inference that Defendant Nunez employed the process of arresting and charging Mr. Medina (i) to compel the forbearance of investigation into his excessive force; (ii) with the intent to harm Mr. Medina without excuse or justification; and (iii) in order to obtain the objective of avoiding discipline. *See, e.g.*, *Corley v. Vance*, 365 F. Supp. 3d 407, 442 (S.D.N.Y. 2019) (citing *Arrington* v. *City of New York*, 628 F. App'x 46, 49 (2d Cir. 2015)).

Defendant Nunez also attempts to defeat the abuse-of-process claim by arguing that he had probable cause to arrest Mr. Medina. ECF No. 75 at 7-8. This argument fails as a matter of law, since "[t]he Second Circuit has long recognized that probable cause is not a complete defense to malicious abuse of process." *Ying Li v. City of New York*, 246 F. Supp. 3d 578, 618 (E.D.N.Y. 2017) (internal quotation marks omitted); *see also Lodges 743 & 1746, Int'l Ass'n of*

*Machinists & Aerospace Workers, AFL-CIO v. United Aircraft Corp.*, 534 F.2d 422, 465 (2d Cir. 1975).[6] Defendant Nunez's argument also fails as a matter of fact, since, as demonstrated above (in Section I.D), the complaint makes clear that Defendant Nunez had no arguable probable cause to arrest Mr. Medina.

## II.    DEFENDANTS' RULE 11 MOTION IS SANCTIONABLE

### A.    Mr. Medina's Pro Bono Counsel Fully Complied With Rule 11

Under Rule 11 of the Federal Rules of Civil Procedure, attorneys may be sanctioned for presenting a court with a claim that is not "warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law." Fed. R. Civ. P. 11(b)(2), 11(c)(1). As this Court noted just last year, this standard "is quite rigorous and very rarely succeeds in cases where evidence of bad faith or aggravated misconduct is not apparent." *Rowell v. Ferreira*, No. 16-CV-6598 (AJN), 2019 WL 4509048, at *6 (S.D.N.Y. Sept. 19, 2019) (quoting *Indoafric Exports Private Ltd. Co. v. Citibank, N.A.*, No. 15-CV-9386 (VM), 2016 WL 6820726, at *4 (S.D.N.Y. Nov. 7, 2016), *affd*, 696 F. App'x 551 (2d Cir. 2017)) (internal quotation marks omitted).

Defendants represented by Corporation Counsel argue that the Covington attorneys representing Mr. Medina in this action should be sanctioned because, in defense counsel's view, Mr. Medina's claim for equitable relief has "absolutely no chance of success" since it is "barred by the clear application of *Lyons*." ECF No. 63 at 9, 11. However, as we show above,

---

[6] *Ross v. Port Chester Housing Authority*, cited by Defendant Nunez, ECF No. 75 at 8, is inapposite because in that case the plaintiff "failed to allege facts suggesting defendants stopped or arrested him with any improper purpose in mind . . . ." No. 17-CV-4770 (NSR), 2019 WL 4738941, at *6 (S.D.N.Y. Sept. 27, 2019). Here, by contrast, the complaint alleges a separate improper purpose—that charges were brought "solely for the purpose of distracting from Defendant Nunez's unlawful use of force." ECF No. 1 at ¶ 113.

Defendants have misread *Lyons* and ignored post-*Lyons* precedent from this District demonstrating that Mr. Medina has adequately alleged a claim for equitable relief under existing law. *See, e.g.*, *An*, 2017 WL 2376576, at *5; *Battle*, 2012 WL 112242, at *4; *Floyd*, 283 F.R.D. at 170 n.106; *Knife Rights*, 802 F.3d at 385-86. Mr. Medina's position on standing is therefore *legally correct*, not frivolous.

Moreover, even if the Court were to disagree with our legal position on standing, there would still be no basis for sanctions. At the very least, Mr. Medina's claim is supported by a non-frivolous argument that the precedents cited above should be extended to the egregious facts of this case. *See* Fed. R. Civ. P. 11(b)(2). There is certainly no evidence that the Covington attorneys acted in "bad faith" or engaged in "aggravated misconduct." *Rowell,* 2019 WL 4509048, at *6.

Defendants cite *Inter-County Res., Inc. v. Med. Res., Inc.*, 49 F. Supp. 2d 684 (S.D.N.Y. 1999), in support of their sanctions motion, ECF No. 63 at 11, but that decision is plainly distinguishable. In *Inter-County Res., Inc.*, plaintiff's counsel was found to have violated Rule 11 because he effectively conceded that his client lacked standing to bring a federal securities fraud claim and belatedly argued that an exception permitting standing applied, after defendant moved for sanctions. 49 F. Supp. 2d at 684. The standing requirement for such a claim—the purchase or sale of a security—is black and white. *See Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723, 74955 (1975). In contrast, the standard for pleading standing to seek injunctive relief is imprecise; it depends on an assessment of whether the plaintiff has alleged sufficient facts demonstrating a likelihood of future harm. *See, e.g.*, *Roe*, 151 F. Supp. 2d at 502-03. Here, far from conceding a lack of standing, Mr. Medina's counsel have pled ample facts establishing Mr. Medina's standing to pursue a claim for injunctive relief.

Defendants have not come close to meeting Rule 11's stringent standard. Their request for sanctions should therefore be firmly rejected.[7]

### B. The Court Should Grant Mr. Medina Reasonable Expenses Incurred in Opposing Defendants' Meritless and Improper Sanctions Motion

On a motion for sanctions under Rule 11, a court may, if warranted, "award to the prevailing party the reasonable expenses, including attorney's fees, incurred for the motion." Fed. R. Civ. P. 11(c)(2). Defendants' sanctions motion presents especially compelling circumstances for such an award, since the motion not only lacks merit, but was filed for improper purposes. *See, e.g, Safe-Strap Co., Inc. v. Koala Corp*, 270 F. Supp. 2d 407, 421 (S.D.N.Y. 2003) ("[W]here a party's motion for Rule 11 sanctions is not well grounded in fact or law, or is filed for an improper purpose, a court may find itself in the position of imposing Rule 11 sanctions on the moving party and/or her attorney.") (quoting Georgene M. Vairo, *Rule 11 Sanctions: Case Law Perspectives And Preventive Measures*, § 4.01[c][3][F] (2d ed. Supp. 1994)).

Nearly three decades ago, the Rule 11 Advisory Committee warned that "Rule 11 motions should not be made or threatened . . . to emphasize the merits of a party's position, to exact an unjust settlement, [or] to intimidate an adversary into withdrawing contentions that are fairly debatable . . . ." Rule 11 Advisory Committee Note, 1993 amendments. Echoing that directive more recently, this Court reminded litigants that "Rule 11 motions for sanctions 'should not be employed . . . to test the legal sufficiency or efficacy of allegations in the pleadings; other

---

[7] Inexplicably, Defendants appear to seek sanctions against only the Covington attorneys representing Plaintiff, even though the complaint was also signed by attorneys from the Legal Aid Society. *See* Exhibit B, Rule 11 Safe Harbor Notice addressed only to Covington attorneys; *see also* ECF No. 63 at 12. If Defendants also seek sanctions against the Legal Aid attorneys, their motion is baseless for the reasons set forth above and is also procedurally defective because they did not provide Legal Aid with the notice and safe harbor period required by Fed. R. Civ. P. 11(c)(2).

motions are available for those purposes.'" *Luv 'N Care, Ltd. v. Shiboleth LLP*, No. 16-CV-3179 (AJN), 2017 WL 3671039, at \*14 (S.D.N.Y. Aug. 8, 2017) (quoting *On Time Aviation, Inc. v. Bombardier Capital Inc.*, 570 F. Supp. 2d 328, 331 (D. Conn. 2008)).

The Assistant Corporation Counsel assigned to this case disregarded these clear admonitions in filing his sanctions motion, which is wholly duplicative of the standing argument in his motion to dismiss. Indeed, the Assistant Corporation Counsel simply copied and pasted the legal argument from his motion to dismiss into his sanctions motion, and filed both motions simultaneously. The sanctions motions was thus improperly "prepared to emphasize the merits of a party's position." *Lee v. Grand Sichuan E. (N.Y.) Inc.*, No. 12-CV-08652 (SN), 2014 WL 199512, at \*3 (S.D.N.Y. Jan. 17, 2014) (awarding costs and expenses where a party's merits submission was "entirely duplicative" of its sanctions motion); *accord Jawbone, LLC v. Donohue*, No. 01-cv-8066 (CSH), 2002 WL 1424587, at \*6 (S.D.N.Y. June 28, 2002).

The Corporation Counsel's Office also appears to be using the Rule 11 motion for the improper purposes of trying to intimidate Mr. Medina into accepting an "unjust settlement" and "withdrawing contentions that are fairly debatable." Rule 11 Advisory Committee Note, 1993 amendments. The Assistant Corporation Counsel sent a Rule 11 safe harbor letter, Exhibit B, to Covington on the very same day that he filed a letter with this Court requesting a pre-trial settlement conference and arguing that "plaintiff cannot make out a viable claim for equitable relief under present case law," ECF No. 45 at 1. The Assistant Corporation Counsel later filed the sanctions motion on the same day that he sent Covington a Rule 68 Offer of Judgment that included no equitable relief. And the Assistant Corporation Counsel has repeatedly complained to the Court that Mr. Medina's claim for equitable relief—rather than the City's refusal to consider plainly necessary reforms of the NYPD's chokehold and Taser policies—has

"independently impeded early resolution of this matter." ECF No. 80 at 2; *see also* ECF No. 63 at 2.

In these circumstances, this Court should send a clear message that Rule 11 motions should be used sparingly, only when there is clear evidence that attorneys have violated their professional and ethical obligations to the Court. That time-honored principle should apply to government attorneys no less than to attorneys in private practice. Here, an Assistant Corporation Counsel has wasted the resources of the Court and Mr. Medina's counsel by filing a frivolous sanctions motion based on a disputed question of law, in an improper effort to bolster his clients' litigation and settlement posture. Accordingly, this Court should exercise its discretion to award Mr. Medina his attorneys' costs and expenses incurred in responding to Defendants' Rule 11 motion.

## CONCLUSION

For the reasons stated above, the Court should deny the Defendants' motions to dismiss and for Rule 11 sanctions. The Court should also grant Mr. Medina's costs and fees incurred in responding to Defendants' Rule 11 motion.

Dated:  April 14, 2020
        New York, New York

Respectfully submitted,


THE LEGAL AID SOCIETY                COVINGTON & BURLING LLP

By:  *s/ Alexander Lesman*            By:  *s/ David L. Kornblau*

Alexander Lesman                     David L. Kornblau, Esq.
Barbara Hamilton                     Ishita Kala, Esq.
199 Water Street, 6th Fl.            Micha Nandaraj Gallo, Esq.
New York, NY 10038                   The New York Times Building
(212) 577-3298                       620 Eighth Avenue
alesman@legal-aid.org                New York, NY 10018
bphamilton@legal-aid.org             dkornblau@cov.com

*Co-Counsel for Plaintiff*            *Co-Counsel for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that on April 14, 2020, I caused a true and correct copy of the foregoing to be filed electronically via this Court's CM/ECF system, and that notice of this filing was sent by electronic mail to all parties by operation of that system or by mail to anyone unable to receive electronic filings as indicated on the Notice of Electronic Filing. Parties may access this filing through the CM/ECF system.

*s/ David L. Kornblau*
David L. Kornblau
COVINGTON & BURLING LLP