```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 11/30/20
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

Tomas Medina,

               Plaintiff,

       –v–

City of New York, *et al.*,

            Defendants.

---

19-cv-9412 (AJN)

MEMORANDUM
OPINION AND ORDER

---

ALISON J. NATHAN, District Judge:

Plaintiff Tomas Medina brings this suit against the City of New York (the "City") and New York City Police Department ("NYPD") officers under 42 U.S.C. § 1983 and New York state law. *See* Dkt. No. 1 ("Compl."). Medina alleges that the individual defendants subjected him to excessive force and false arrest in violation of the Fourth and Fourteenth Amendments of the United States Constitution. He further alleges that the City is liable for the individual defendants' use of excessive force. In addition, he brings several state claims against the individual defendants stemming from his arrest.

Now before the Court is Defendants City of New York, Commissioner James O'Neill, Chief of Department Terrance Monahan, Sergeant Hekmatullah Mukhtarzada, Police Officer Shanee Hansler, Police Officer David Callan, Captain William J. Gallagher, Sergeant Jose A. Gomez, Police Officer Nay Htoo, and Police Officer Christopher Siciliano (collectively, the "City Defendants") partial motion to dismiss the Plaintiff's initial complaint. Dkt. No. 59. Also before the Court is Defendant Fabio Nunez's motion to dismiss. Dkt. No. 74. Furthermore, pending before the Court are the City Defendants' motion for sanctions against the Plaintiff's counsel, Dkt. No. 62, and the Plaintiff's cross-motion for sanctions against the City's

Corporation Counsel, Dkt. No. 84.  For the reasons that follow, the City Defendants' motion to dismiss is GRANTED in part and DENIED in part.  Defendant Nunez's motion to dismiss is GRANTED in part and DENIED in part.  The City Defendants' motion for sanctions is DENIED.  The Plaintiff's motion for sanctions is DENIED.

## I.     Background

### A.  Facts

The following facts are taken from the Complaint and assumed to be true for purposes of evaluating the motion to dismiss.  Shortly before midnight on July 14, 2018, Plaintiff Tomas Medina was outside El Mundo Car Dealership, located around 438 West 206th Street in Washington Heights, listening to music on a speaker owned by the dealership.  Dkt. No. 1 ("Compl.") ¶ 88.  The dealership was owned by a friend of Medina's, who had given Medina permission to hang out in front of the business.  *Id.* ¶ 89.  At around this time, Defendants Fabio Nunez and Shanee Hansler, who are police officers, were driving around Washington Heights. *Id.* ¶ 86.  They heard the music and approached to investigate.  *Id.*  They arrived at the scene at around 11:39 p.m.  *Id.* ¶ 88.  After confronting the Plaintiff, Defendants Nunez and Hansler asked them who owned the speakers.  *Id.* ¶ 90.  A conversation ensued, wherein Medina notified Nunez and Hansler that the speakers were the dealership's and that he would pack up the sound equipment.  *Id.*  Nunez and Hansler then asked Medina, among others, for identification.  *Id.* ¶ 91.  In addition, Nunez confiscated the sound equipment and threatened to issue a summons for playing loud music, despite Medina notifying him that the equipment did not belong to him and that he had not been playing the music.  *Id.* ¶ 92.

Defendant Nunez then switched to English, despite Esmeralda Rodriguez, a friend of the Plaintiff's, indicating that the Plaintiff was unable to understand him in English.  *Id.* ¶ 93.  Nunez

brushed her off, and again asked those present for identification. *Id.* ¶ 94. While this was occurring, Medina's friends were continuing to pack up the sound equipment. *Id.* ¶ 95. Medina went to help them. *Id.* While the Plaintiff's back was turned to Defendant Nunez, Nunez pushed him against a car, allegedly on the basis that the Plaintiff was being disorderly. *Id.* Nunez then grabbed Medina by the neck and threatened him by placing a Taser on Medina's side. *Id.* ¶ 96. Medina went to pick up his hat, which fell off during the confrontation, and he raised his arms "in a pleading gesture," all at a distance from Nunez. *Id.* Nunez then escalated the encounter; while Medina was pinned against the parked car, Nunez placed him in a chokehold that lasted roughly 23 second. *Id.* ¶ 97. In addition, Nunez tased Medina thirteen times while in close proximity. *Id.* ¶¶ 97, 99. While Nunez had Medina in a chokehold, Defendant Hansler grabbed and lowered Medina's left hand but did not intervene to stop Nunez from using force on the Plaintiff. *Id.* ¶ 98. Eventually, Medina attempted to move away from the confrontation. *Id.* ¶ 101. In pursuit, Nunez tased Medina multiple times. *Id.* In addition, during the confrontation Ms. Rodriguez repeatedly told the officers that the music was hers and not Medina's, and she offered them her identification. *Id.* ¶¶ 96, 98.

Defendant Hansler eventually called for backup, and around twenty officers arrived, including 34th precinct officers Michael Levy, Kevin McCormack, Daniel Martinucci, Christopher Siciliano, James Ludvick, Juan Orozco, Kevin Falconer, Paul Montali, Matthew Robayo, Nay Htoo, Angela Polancobrito, James Kane, Emilio Pichardo, Giancarlo Alia and Michael Quinones, along with several unknown officers. *Id.* ¶ 102. Bystanders notified Defendant Hekmatullah Mukhtarzada, the supervisor on the scene, that Nunez had tased Medina "at least seven times." *Id.* ¶ 103. Mukhtarzada responded that though Nunez indeed tased Medina, it was not seven times because "[w]e don't tase seven times." *Id.*

After backup arrived, Defendants Christopher Siciliano and Nay Htoo conducted a search on Medina. *Id.* ¶ 104. In the course of doing so, they pulled Medina's pants down to around his ankles. *Id.* They did not pull the Plaintiff's pants back up; instead, the Plaintiff's pants were down around his ankles when he walked into the precinct, and the officers left his pants around his ankles while he stood handcuffed to a post. *Id.* Meanwhile, another officer, whom the Plaintiff was unable to identify but who is described as being around six feet tall with brown skin and black hair, slapped the back of Medina's head. *Id.* ¶ 105.

The police arrested Medina and took him to the 34th Precinct, charging him with assault in the second degree, attempted resisting arrest, attempted obstructing governmental administration, and attempted disorderly conduct. *Id.* ¶ 110. While on the way back to the precinct, Nunez told Hansler that "I would have choked him but I didn't want to do that because you would have get (sic) in trouble." *Id.* ¶ 109. Eventually, the Plaintiff was charged with two counts of assault in the second degree and one count of resisting arrest in New York Criminal Court. *Id.* ¶ 110. The criminal complaint included the allegations that Medina bit Nunez's finger, scratched him in the eye, and struck Defendant Hansler in her left eye—allegations Medina denies. *Id.* ¶ 112. In December 2018, the felony assault charges were dismissed; on October 3, 2019, Medina consented to an adjournment in contemplation of dismissal of the remaining misdemeanor assault, resisting arrest, and disorderly conduct charges. *Id.* ¶ 114.

The Plaintiff alleges that after the arrest, the City Defendants failed to properly investigate the incident and instead attempted to cover up the alleged misconduct. *Id.* ¶ 115. In support of his argument that the City Defendants failed to properly investigate the incident, the Plaintiff alleges that Defendant Terrance Monahan erroneously concluded in August 2018 that Nunez's use of force was "necessary." *Id.* ¶ 116. Along similar lines, the Plaintiff claims that an

Internal Affairs Bureau investigation erroneously exonerated Nunez's use of the Taser while sustaining the Plaintiff's complaint about the chokehold; nonetheless, according to Plaintiff, Deputy Commissioner Kevin Richardson's Department Advocate decided not to pursue charges after the IAB found that there had been an improper chokehold. *Id.* ¶ 117.  And, according to Plaintiff, evidence of an improper investigation includes the fact that the CCRB substantiated claims of improper use of the Taser and moved forward with charges against Nunez for the first chokehold and for the fourteen Taser shots. *Id.* ¶ 117.

Meanwhile, the Plaintiff's allegations that the City Defendants attempted to cover up the misconduct include allegations that Defendant O'Neill approved an official statement by NYPD's Deputy Commissioner of Public Information that misrepresented the incident by claiming, among other things, that the officers attempted to deescalate the situation and that the use of force was necessary. *Id.* ¶ 116.

The Plaintiff alleges that he continued to suffer physical effects of the injuries he sustained as a result of the incident long after the night in question. *Id.* ¶¶ 119–120.  In addition, he alleges that the incident had longstanding and continuing effects on his mental health, including inculcating in him a continuing fear that he will experience a similar kind of arrest in the future. *Id.* ¶¶ 119–135.

### B.  Procedural History

Medina filed this action on October 10, 2019.  Dkt. No. 1.  On January 31, 2020, Defendants City of New York, Commissioner James O'Neill, Chief of Department Terrance Monahan, Sergeant Hekmatullah Mukhtarzada, Police Officer Shanee Hansler, Police Officer David Callan, Captain William J. Gallagher, Sergeant Jose A. Gomez, Police Officer Nay Htoo, and Police Officer Christopher Siciliano (collectively, the "City Defendants") filed a partial

motion to dismiss plaintiff's initial complaint.  Dkt. No. 59.  Also on January 31, 2020, the City

Defendants filed a motion for sanctions pursuant to Rule 11 of the Federal Rules of Civil

Procedure.  Dkt. No. 62 ("Mot. For Sanctions").  In addition, the City Defendants filed a motion

to stay pending resolution of the motion to dismiss that same day.  Dkt. No. 65.  The Court

issued an order on February 3, 2020 directing Plaintiff to indicate whether he intended to file an

amended complaint or rely on his initial complaint.  Dkt. No. 67.  Plaintiff responded to the

Court's order on February 7, 2020 and indicated that he intended to rely on his initial complaint.

Dkt. No. 71.

Defendant Fabio Nunez, who is not represented by the City, then filed his motion to

dismiss on February 20, 2020.  Dkt. No. 74.  The Court issued an order on February 24, 2020

again directing the Plaintiff to indicate whether he intended to file an amended pleading or rely

on his initial complaint.  Dkt. No. 76.  Again, Plaintiff indicated he intended to rely on his initial

complaint.  Dkt. No. 77.

Plaintiff filed his opposition to the City Defendants' motion to dismiss, the City

Defendants' motion for sanctions, and Nunez's motion to dismiss on April 14, 2020.  Dkt. No.

84 ("Pl. Opp. Br.").  The City Defendants filed their reply on May 5, 2020.  Dkt. No. 88 ("City

Def. Reply").  Nunez, meanwhile, filed his reply on May 8, 2020.  Dkt. No. 90 ("Nunez Reply").

On June 8, 2020, the Court denied the City Defendants' January 31, 2020 motion to stay pending

resolution of the motion to dismiss.  Dkt. No. 92.

## II.   MOTIONS TO DISMISS

### A.  Legal Standard

When a defendant moves to dismiss for failure to state a claim upon which relief can be

granted under Rule 12(b)(6), the Court must "accept all allegations in the complaint as true and

draw all inferences in the non-moving party's favor." *LaFaro v. N.Y. Cardiothoracic Grp., PLLC*, 570 F.3d 471, 475 (2d Cir. 2009).  The complaint will survive the motion to dismiss as long as it contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks and citation omitted).  Although this standard does not require "detailed factual allegations," it "requires more than labels and conclusions." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  In addition to the text of the complaint, the Court may consider documents attached as exhibits, incorporated by reference, or that are "integral" to the complaint.  *DiFolco v. MSNBC Cable LLC*, 622 F.3d 104, 111 (2d Cir. 2010).

### B.  Discussion

Plaintiff brings a variety of claims under federal and state law, seeking declaratory, compensatory, and injunctive relief.  He brings claims under 42 U.S.C. § 1983 against all of the Defendants on the basis that his constitutional rights were violated due to the use of excessive force, the improper search, and the false arrest.  *See* Compl. ¶¶ 145–159.  He also claims that the City is liable under 42 U.S.C. § 1983 for permitting and tolerating excessive force, arguing that, among other things, the City was and has been deliberately indifferent in failing to train, supervise, investigate, and discipline its officers to prevent the kinds of constitutional violations the Plaintiff alleges he experienced.  *See* Compl. ¶¶ 136–144.  The Plaintiff also brings a variety of state law claims, including assault and battery claims, state law false arrest and false imprisonment claims, and intentional and negligent inflictions of emotional distress.  *Id.* ¶¶ 160–180.

The City Defendants' first move to dismiss the Plaintiff's claims for injunctive relief on jurisdictional grounds—namely, that the Plaintiff lacks standing to seek injunctive relief.  Def.

Br. 4–10.  They then argue that the Plaintiff's claims against Defendants O'Neill and Monahan should be dismissed because Plaintiff did not allege their personal involvement.  *Id.* at 10–12. Next, they claim that the claims against Defendants Gallagher, Mukhtarzada, and Gomez should be dismissed because the Plaintiff did not plead facts sufficient to support a finding of supervisory liability.  *Id.* at 12.  They further argue that the Plaintiff has not established municipal liability under *Monell* because the Plaintiff did not allege facts sufficient to support a finding that a policy, practice, or custom of the alleged behavior existed or that the City was deliberately indifferent to the injuries he claims are a result of said kinds of practices.  *Id.* 12–20. They also reject the Plaintiff's false arrest and improper search constitutional claims on the basis that, according to them, the existence of arguable probable cause compels dismissal.  *Id.* 20–24.

Defendant Nunez, meanwhile, argues that the Plaintiff's claims against him must be dismissed because the alleged presence of probable cause defeats his claim for false arrest. Nunez Br. at 4–6.  In addition, he argues that the Plaintiff's state law claims should be dismissed as time-barred, that they are duplicative of other claims, and that the Plaintiff did not substantiate his abuse of process claims.  Nunez Br. at 6.

As explained below, the Court DENIES in part and GRANTS in part the City Defendants' partial motion to dismiss.  It also DENIES Defendant Nunez's motion to dismiss as to the federal claims against him and GRANTS his motion as to the state law claims.

### 1.  Equitable Relief

The City Defendants first argue that all claims for equitable relief must be dismissed on the basis that the Plaintiff lacks standing.  The Court agrees with Defendants that Plaintiff has not stated allegations that, even if true, would render equitable relief appropriate, and the City Defendants' motion to dismiss is GRANTED as to the Plaintiff's claims for equitable relief.

To invoke the jurisdiction of the federal courts, a party must "satisfy the threshold requirement imposed by Article III of the Constitution by alleging an actual case or controversy." *City of Los Angeles v. Lyons*, 461 U.S. 95, 101 (1983) (citations omitted). "To satisfy this jurisdictional requirement, (1) the plaintiff must have suffered an injury-in-fact; (2) there must be a causal connection between the injury and the conduct at issue; and (3) the injury must be likely to be redressed by a favorable decision." *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 239 (2d Cir. 2016). When seeking injunctive or declaratory relief, a plaintiff cannot rely "on past injury to satisfy the injury requirement;" instead, the plaintiff must also "show a likelihood that he or she will be injured in the future." *Deshawn E. by Charlotte E. v. Safir*, 156 F.3d 340, 344 (2d Cir. 1998) (citing *Lyons*, 461 U.S. at 105–06). That is, having been subjected to illegal or unconstitutional conduct by itself does not suffice to establish standing for injunctive relief absent a showing of "continuing, present adverse effects." *O'Shea v. Littleton*, 414 U.S. 488, 495–96 (1974). Thus, "[w]hen seeking injunctive relief against a municipality, a plaintiff has standing only if he can 'carry the burden of establishing that 'he has sustained or is immediately in danger of sustaining some direct injury as the result of the challenged official conduct.'" *An v. City of New York*, No. 16-CV-5381 (LGS), 2017 WL 2376576, at *2 (S.D.N.Y. June 1, 2017) (quoting *Shain v. Ellison*, 356 F.3d 211, 215 (2d Cir. 2004). As a result, a plaintiff must show "*both* [1] a likelihood of future harm *and* [2] the existence of an official policy or its equivalent." *Shain*, 356 F.3d at 216 (emphasis in original).

As discussed at greater length below, the Court concludes that Plaintiff has pleaded sufficient facts to establish the existence of an official policy or its equivalent. Thus, whether Plaintiff has established standing to seek injunctive relief turns on whether he has established a likelihood of future harm. In *Lyons*, while "past injury supplied a predicate for compensatory

damages, it did not . . . supply one for prospective equitable relief since the fact that such

practices had been used in the past did not translate into a real and immediate threat of future

injury to Lyons." *Shain*, 356 F.3d at 215 (discussing *Lyons,* 461 U.S. at 105–106).  As a result,

"the critical standing inquiry is whether a plaintiff is realistically threatened by a repetition of his

experience . . . . or whether the claim is speculative." *Curtis v. City of New Haven*, 726 F.2d 65,

67 (2d Cir. 1984) (citation omitted).

The Plaintiff relies primarily on two cases in his attempt to establish standing for

injunctive relief: *An v. City of New York*, No. 16 CIV. 5381 (LGS), 2017 WL 2376576 (S.D.N.Y.

June 1, 2017), and *Battle v. City of New York*, No. 11 CIV. 3599 (RMB), 2012 WL 112242

(S.D.N.Y. Jan. 12, 2012).  In *An*, the district court ruled that the plaintiff, who had been

improperly arrested for recording NYPD officers, had standing to pursue injunctive relief after

he alleged that he planned to continue recording police and that, as a result, he would continue

being brought into contact with police officers.  *An*, 2017 WL 2376576, at *5.  The court

distinguished *An* from *Lyons* and *Shain* on the basis that the plaintiff's "risk of future injury does

not depend on his being arrested for unlawful conduct and so he cannot avoid that injury by

following the law." *Id.* (quoting *Floyd v. City of New York*, 283 F.R.D. 153, 169–70 (S.D.N.Y.

2012)).  In *Battle*, meanwhile, the district court concluded that the plaintiffs had pleaded facts

that sufficed to establish standing for injunctive relief because plaintiffs alleged that they would

take livery cabs again and that NYPD officers frequently stopped livery cabs and searched

passengers without suspicion. *Battle*, 2012 WL 112242, at *4.

Medina alleges that a real and immediate threat of future injury exists here because,

among other things, "he continues to engage in the lawful conduct that brought him in contact

with the NYPD—listening to music and barbequing with friends outdoors in the 34th Precinct."

Pl. Opp. Br. at 10 (citing Compl. ¶ 120).  Even accepting the Plaintiff's allegations as true, these

allegations are insufficient to overcome *Lyons* and *Shain*.  As in *Lyons*, the Plaintiff has not

pleaded facts sufficient to establish that it is "no more than conjecture to suggest that in every

instance of [an] . . . encounter between the police and a citizen, the police will act

unconstitutionally and inflict injury without provocation or legal excuse."  *Lyons*, 461 U.S. at

108.  *See also Knife Rights, Inc. v. Vance*, 802 F.3d 377, 387 n.8 (2d Cir. 2015) (noting that the

Supreme Court in *Lyons* "emphasized" this point).  The mere fact that such conduct brought the

Plaintiff into contact with the NYPD in a way that resulted in the use of excessive force does not

compel the conclusion that the Plaintiff faces a real and imminent threat of reoccurrence.  Nor

does the statistical data offered by the Plaintiff, *see, e.g.*, Compl. ¶¶ 121–132, provide sufficient

particularity to establish an imminent threat of reoccurrence in this case.  His argument is

"simply too speculative and conjectural to supply a predicate for prospective injunctive relief."

*Shain,* 356 F.3d at 216.  Specifically, the Plaintiff has failed to plead facts sufficient to establish

imminence, or, in the words of *Shain*, an "immediate threat of future injury."  *Id.* at 215.  *See*

*also Lyons,* 461 U.S. at 111 ("Absent a sufficient likelihood that he will again be wronged in a

similar way, [plaintiff] is no more entitled to an injunction than any other citizen . . . .").

Medina separately alleges standing to seek injunctive relief on the basis that "as a result

of enduring a violent assault by an officer who remains on the force and has not been disciplined,

Medina reasonably fears the police to such a degree that it will undoubtedly shape his future

interactions with NYPD officers."  Pl. Opp. Br. at 11 (citing Compl. ¶¶ 95-101, 119-121).  In

doing so, he relies on a number of cases where courts have found standing for equitable relief on

the basis of future prosecution or arrest.  *See* Pl. Opp. Br. at 12.  Here, too, however, *Lyons*

governs; Medina's subjective fear is insufficient to state a basis for an injunction in the absence

of objective criteria indicating that the recurrence of the unlawful conduct is relatively likely to occur. *See Lyons*, 461 U.S. at 107 n.8 ("The reasonableness of [plaintiff's] fear is dependent upon the likelihood of a recurrence of the allegedly unlawful conduct. It is the *reality* of the threat of repeated injury that is relevant to the standing inquiry, not the plaintiff's subjective apprehensions. The emotional consequences of a prior act simply are not a sufficient basis for an injunction absent a real and immediate threat of future injury by the defendant."). *See also Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 418 (2013) ("Because '[a]llegations of a subjective 'chill' are not an adequate substitute for a claim of specific present objective harm or a threat of specific future harm,' . . . the plaintiffs in *Laird*—and respondents here—lack standing." (quoting *Laird v. Tatum*, 408 U.S. 1, 13–14 (1972)). Thus, Plaintiff's claim of subjective apprehension of future excessive force, absent an immediate threat of injury, does not establish standing for injunctive relief.

### 2. *Monell* Claim

On the basis of his claims that he was subject to the use of excessive force due to the use of chokeholds and Tasers in this matter, Medina seeks to hold the City of New York liable under *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978). The City Defendants move to dismiss, claiming that the Plaintiff has failed to establish a custom or practice sufficient to give rise to *Monell* liability. For the reasons that follow, the City Defendants' motion is DENIED.

To state a *Monell* claim for municipal liability under Section 1983, a plaintiff must plausibly allege "(1) actions taken under color of law; (2) deprivation of a constitutional or statutory right; (3) causation; (4) damages; and (5) that an official policy of the municipality caused the constitutional injury." *Roe v. City of Waterbury*, 542 F.3d 31, 36 (2d Cir. 2008). The fifth element has two separate requirements: a plaintiff must plausibly allege both the existence

of a municipal policy and that the policy caused (*i.e.*, was the "moving force" behind) plaintiff's injury.  *Id.* at 37–38.  The "moving force" requirement is the equivalent of proximate cause, *Cash v. County of Erie*, 654 F.3d 324, 341–42 (2d Cir. 2011), and is generally a question of fact, *Jeffes v. Barnes*, 208 F.3d 49, 61 (2d Cir. 2000).  The official policy requirement, meanwhile, may be met by "a practice so persistent and widespread, or permanent and well settled[,] as to constitute a custom or usage with the force of law and to imply the constructive knowledge of policymaking officials," or by "a failure to train or supervise subordinates amount[ing] to deliberate indifference to the rights of those with whom [the municipality's employees] come into contact."  *Felix v. City of New York*, 344 F. Supp. 3d 644, 653 (S.D.N.Y. 2018) (collecting cases).  The Plaintiff relies on both of these theories.

The City Defendants move to dismiss Medina's *Monell* claim primarily on their assertion that Medina failed to plead the existence of a policy or practice, and, separately, that he failed to plead facts sufficient to support a finding of deliberate indifference.  They do not raise a causation argument, and as a result this Court will not address that point.  At least at this juncture, both of the City Defendants' arguments fail.

To begin with, the Plaintiff has pleaded sufficient facts to establish, at this stage, that the excessive or unconstitutional use of chokeholds and Tasers is "so persistent and widespread, or permanent and well-settled," as to constitute "a custom or usage with the force of law and to imply the constructive knowledge of policymaking officials."  *Felix*, 344 F. Supp. 3d at 653.  He relies on myriad sources to establish this with respect to chokeholds, including civil rights lawsuits, CCRB allegations of chokehold use, a CCRB issue-based report on chokehold use, CCRB allegations that followed that report, along with a number of high-profile cases and political lobbying addressing the NYPD's use of chokeholds.  *See* Pl. Opp. Br. at 16 (citing Compl. ¶¶ 31–38, Ex. C).  With respect to the misuse of Tasers, he relies on

civil rights lawsuits and news reports detailing wrongdoing; CCRB allegations of improper Taser

use from 2014 to 2018; a 2016 CCRB issue-based report on Taser misuse; CCRB complaints

that followed that report; and a report by a non-profit organization on Taser misuse. *See* Pl. Opp.

Br. at 16 (citing Compl. ¶¶ 39–43, 45, Ex. D).  Because Plaintiff's claims as to chokeholds and

Taser misuse are similar, and because the Court's analysis as to both is substantially the same,

the Court will analyze them together.

     The City Defendants claim, among other things, that the Plaintiff's allegations fail

because the Plaintiff's allegations do not establish a sufficiently widespread practice as to

constitute a "custom or usage."  City Def. Br. at 14–16.  They argue, in part, that "plaintiff's

claim fails because courts in this Circuit have agreed that even a few hundred substantiated

allegations of misconduct are simply insufficient to plead a *Monell* claim for a custom or usage

against the NYPD."  *Id.* at 15.  And they also argue that "the CCRB and NYPD have issued

multiple reports seeking to address this very issue," and that "the 2018 [Report] notes that in

2014 chokeholds were 5.8% of all CCRB allegations of excessive force, but that it decreased,

and as of 2018 they formed only 3.8% of the all allegations of excessive force."  *Id.* at 14.

     But whether the facts pleaded in the complaint establish a plausible inference that a

practice meets the standard to be deemed a "'custom or usage' with the force of law," *Sorlucco*

*v. New York City Police Dep't*, 971 F.2d 864, 871 (2d Cir. 1992) (citation omitted), cannot be

determined by looking at the numbers alone.  And, at this juncture, the Plaintiff has pleaded

sufficient facts that, when viewed in the light most favorable to him, create a plausible inference

of a custom or usage with the force of law that implies the constructive knowledge of

policymaking officials.  While other courts, ruling on cases with different factual predicates as

this one, have at times deemed the allegations to be insufficient, *see Abdulgalil Kaid Alwan v.*

*City of New York*, 311 F. Supp. 3d 570, 581 (E.D.N.Y. 2018) (deciding as much when ruling on a summary judgment motion); *Delorbe-Bell v. City of New York*, No. 15-CV-2344 (LOS), 2016 WL 1451581, at *3–4 (S.D.N.Y. Apr. 12, 2016) (granting the City's motion to dismiss on the basis that the Plaintiff had alleged a "modest number" of violations), there is no *per se* rule that a Plaintiff must plead a specific number of unconstitutional violations before his claim becomes viable.  Assessing the Plaintiff's allegations as a whole, the number of lawsuits challenging unlawful chokeholds and Taser misuse, the discussions and findings in the numerous CCRB reports, *see* Compl. ¶¶ 34–36, 42, and the longstanding and widespread notoriety of the issue (claims that are far from conclusory, insofar as the Plaintiff points to specific news reports and other investigations) all substantiate a plausible inference that municipal liability may exist here, at least at the motion to dismiss stage.  *Cf. Kucharczyk v. Westchester Cty.*, 95 F. Supp. 3d 529, 544 (S.D.N.Y. 2015) (finding that a complaint accompanied by Department of Justice report identifying widespread practice was sufficient to plausibly allege *Monell* claim).

        In addition, the Plaintiff has pleaded sufficient facts to survive the Defendants' motion to dismiss on the second theory of liability: Failure to train or supervise in a way that amounts to deliberate indifference.  The Second Circuit has explained that "[t]o prove deliberate indifference, we have required the plaintiff to show: (1) 'that a policymaker knows 'to a moral certainty' that her employees will confront a given situation'; (2) 'that the situation either presents the employee with a difficult choice of the sort that training or supervision will make less difficult or that there is a history of employees mishandling the situation'; and (3) 'that the wrong choice by the ... employee will frequently cause the deprivation of a citizen's constitutional rights.'"  *Okin v. Vill. of Cornwall-On-Hudson Police Dep't*, 577 F.3d 415, 440 (2d Cir. 2009) (quoting *Walker v. City of New York,* 974 F.2d 293, 297–98 (2d Cir. 1992)).

Plaintiff relies on similar facts for his deliberate indifference claim, and Plaintiff's factual allegations support a plausible inference that these three elements are met here.  First, Plaintiff's allegations, which rely on numerous CCRB and/or NYPD reports on the unlawful use of chokeholds and Taser misuse, among other things, establish a plausible inference that policymakers knew "to a moral certainty" that NYPD officers would confront situations that may lead to the use of force, including excessive force.  *See* Pl. Opp. Br. at 20–21; Compl. ¶¶ 29–45, Ex. C, Ex. D.  *See also Edwards v. City of New York*, No. 14-cv-10058 (KBF), 2015 WL 5052637, at *5–6 (S.D.N.Y. Aug. 27, 2015); *Bertuglia v. City of New York*, 839 F. Supp. 2d 703, 738–39 (S.D.N.Y. 2012).

Second, and based on many of these same facts, Plaintiff has created a plausible inference that "there is a history of employees mishandling the situation." *Okin*, 577 F.3d at 440.  The CCRB reports and numerous lawsuits, along with the news reports, detail a pattern of NYPD officers improperly escalating encounters through the unlawful use of excessive force—as relevant here, unjustified chokeholds and Taser misuse.  Indeed, Detective Nunez's history of the use of excessive force—and the lack of meaningful discipline that resulted from reports of his abuses—symbolizes the more generalized factual allegations that undergird the Plaintiff's claim as to the history of NYPD officers exceeding the permissible bounds of the use of force.  Viewing the evidence in the light most favorable to Medina, the Court concludes that he has satisfied his burden of creating a plausible inference.  Many of the City Defendants' arguments to the contrary go to the weight of the evidence.  *See* City Def. Br. at 18–20.  While the City Defendants will have an opportunity to challenge whether a history of employees actually exists, at this stage the question is whether the Plaintiff has raised a plausible inference.  The Court finds that he has.

Accordingly, the City Defendant's motion to dismiss the Plaintiff's *Monell* claims is DENIED.

### 3.  Claims Against Defendants O'Neill, Monahan, Gallagher, Mukhtarzada, and Gomez

Next, the City Defendants seek to dismiss Medina's claims against Defendants O'Neill and Monahan on the basis that Plaintiff has not alleged their personal involvement.

The Second Circuit has explained that "[p]ersonal involvement of a supervisory official may be established 'by evidence that: (1) the [official] participated directly in the alleged constitutional violation, (2) the [official], after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the [official] created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the [official] was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the [official] exhibited deliberate indifference to the rights of [others] by failing to act on information indicating that unconstitutional acts were occurring.'"  *Johnson v. Newburgh Enlarged Sch. Dist.*, 239 F.3d 246, 254 (2d Cir. 2001) (quoting *Colon v. Coughlin,* 58 F.3d 865, 873 (2d Cir. 1995)).  *See also Al–Jundi v. Estate of Rockefeller,* 885 F.2d 1060, 1066 (2d Cir. 1989) (noting that direct participation is not necessary to establish personal involvement).

Medina claims that Defendant O'Neill approved an official statement issued by the Deputy Commissioner of Public Information minimizing the incident, declaring that officers "attempt[ed] to deescalate the situation," and claiming that the officers were left with "no choice but to use physical force."  Compl. ¶ 116.  In addition, Medina claims that O'Neill is liable because, as NYPD Commissioner, he was "the person primarily responsible for the execution of NYPD policy and had broad, plenary discretion to determine the penalty for members of the NYPD found culpable in the disciplinary process."  Pl. Opp. Br. at 23.  This claim directly ties

into Medina's claim that the NYPD has a practice that authorizes improper chokeholds and Taser use, which Medina claims was causally related to Nunez's use of force against him. A similar logic governs the claim against Defendant Monahan. Monahan, who is the highest-ranking uniformed member of the NYPD, is implicated in the complaint through allegations as having created and maintained the custom that Medina alleges exists and that led to the deprivation of his constitutional rights. Compl. ¶¶ 9, 17.

At this stage in the litigation, Medina has satisfied his burden in pleading a claim against Defendants O'Neill and Monahan, at least as to the excessive force claim. The precise effect of *Iqbal* on the *Colon* test in areas outside of discrimination is still unclear. *See Raspardo v. Carlone*, 770 F.3d 97, 117 (2d Cir. 2014) ("We have not yet determined the contours of the supervisory liability test . . . after *Iqbal*."). But the district courts that have analyzed the issue— including those that have cast doubt on the ongoing viability of certain factors of the *Colon* test—have not disputed the ongoing viability of the "policy or custom" factor.[1] *See Marom v. City of New York*, No. 15-CV-2017 (PKC), 2016 WL 916424, at *14–15 (S.D.N.Y. Mar. 7, 2016), *on reconsideration in part*, No. 15-CV-2017 (PKC), 2016 WL 5900217 (S.D.N.Y. July 29, 2016) (collecting cases).

---

[1] In this regard, the Court is unpersuaded by the City Defendants' argument that Plaintiff's claims against O'Neill are in his official, and not personal, capacity. *See* Def. Br. at 11. The City Defendants rely exclusively on *5 Borough Pawn, LLC. v. City of New York*, 640 F. Supp. 2d 268 (S.D.N.Y. 2009), where the district court explained that "[i]t is obvious that the only reason Kelly is a named defendant in this lawsuit is because he is the Police Commissioner. In other words, plaintiffs are really suing Kelly in his official capacity. But that renders their claims against Kelly duplicative of their claims against the City." *Id.*, at 297–298. As already noted, however, the Second Circuit has expressly recognized liability on the basis of maintaining an unconstitutional custom or practice, and Plaintiff's claim here does not rely on a theory of vicarious liability. The Defendants do not raise any argument to contradict the basic premise that personal involvement can be established on the grounds of maintaining an unconstitutional custom or practice.

As already noted, Medina has raised a plausible inference that the NYPD has maintained

a custom of tacitly endorsing or tolerating the improper or unconstitutional use of chokeholds

and Tasers.  And Medina has also raised a plausible inference that O'Neill and Monahan were on

notice as to the frequency of chokehold use; the Complaint contains allegations that the NYPD's

leadership was made aware of the problem by, among other means, a 2014 CCRB report, Compl.

¶¶ 33–38, 66–67, and a 2015 report issued by the Office of the Inspector General of the NYPD,

*id.* ¶ 68.  Furthermore, the Complaint also alleges that, notwithstanding this, the NYPD has

resisted efforts to coordinate with the CCRB and to implement procedures to curb the problem.

In light of these allegations, "it is certainly plausible that" O'Neill and Monahan were "advised"

of the issue and "decided to *allow the continuance* of the policy."  *Doe v. New York*, 97 F. Supp.

3d 5, 15–16 (E.D.N.Y. 2015).  Thus, at this stage in the litigation, Plaintiff has sufficiently

alleged a plausible claim that both O'Neill and Monahan were personally involved to the extent

that they allowed a custom of improper chokehold use to continue.  *See L.B. v. Town of Chester*,

232 F. Supp. 2d 227, 237 (S.D.N.Y. 2002).

To establish personal involvement on these grounds, Plaintiff "must also establish that

the supervisor's actions were the proximate cause of the [their] constitutional deprivation."

*Raspardo*, 770 F.3d at 116 (2d Cir. 2014).  Causation "incorporates the tort concept of proximate

cause, a concept that has long turned on reasonable foreseeability," and "[w]here acts of third

parties are involved, which will generally be the case in section 1983 claims where a supervisor's

liability is premised only on her creation of a 'policy or custom,' the supervisor may be held

liable for 'those consequences attributable to *reasonably foreseeable* intervening forces.'"

*Marom*, 2016 WL 916424, at *16 (citations omitted).  The City Defendants raise no argument

regarding proximate cause.  Even if they had, however, the Court would conclude that Plaintiff

has plausibly established proximate cause as to O'Neill and Monahan on the basis that the NYPD's custom of tacitly endorsing, or at least failing to discipline, the use of unconstitutional chokeholds proximately led to Nunez's continued use of the practice—and that it was reasonably foreseeable that Nunez, and officers like him, would continue to engage in the practice unabated due to the relative impunity that resulted from the alleged custom. *See* Compl. ¶¶ 76–85.

Medina's allegations against Defendants Mukhtarzada, Gomez, and Gallagher, on the other hand, fail to plead facts to support proximate cause or of any theory of causation. Medina's allegations against them primarily center on their role in the allegedly deficient investigation that sought to cover up Defendant Nunez's alleged wrongdoing. *See* Pl. Opp. Br. at 25–26; Compl. ¶¶ 22, 51, 111, 115. And Medina pleads more specific facts as to Mukhtarzada and Gomez; he alleges that Mukhtarzada dismissed information proffered by eyewitnesses at the scene and that, in doing so, Mukhtarzada impeded the investigation into Defendant Nunez's alleged use of excessive force. Compl. ¶ 103. And he alleges that Gomez interviewed Medina in the 34th precinct after the incident in an attempt to get a statement that would "assist in the cover-up of the unlawful use of force." *Id.* ¶ 111. Nonetheless, Medina does not plead facts to support, or even suggest, that these actions *caused* any of the constitutional deprivations alleged in the Complaint and raised under § 1983. Specifically, all of the facts pleaded as to these three defendants occurred after Nunez's alleged use of excessive force and after the alleged false search and arrest. But Medina does not allege any facts relating to these defendants that predated the night in question, and, as such, his claim that their "gross negligence" or "deliberate indifference" caused the constitutional harms that form the basis of his § 1983 claim is conclusory. And while in his opposition brief, Medina suggests that these defendants should be held liable on the basis that their failure to investigate

prolonged the harms of his false arrest, Medina's argument is too conclusory to support such a theory of personal liability, even after all inferences have been drawn in his favor.

Accordingly, the City Defendants' motion to dismiss the claims against Defendants O'Neill and Monahan is DENIED.  The § 1983 claims against Mukhtarzada, Gomez, and Gallagher are DISMISSED.[2]

### 4.   False Arrest

The City Defendants and Defendant Nunez both seek dismissal of the Plaintiff's false arrest claim on the basis that the Defendants are entitled to qualified immunity due to the fact that there was arguable probable cause for the arrest.  City Def. Br. at 21;[3] Nunez Br. at 4.

"[P]robable cause to arrest exists when police officers have 'knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime.'"  *Starker v. Adamovych*, No. 15-CV-3691 (AJN), 2019 WL 4747668, at *3 (S.D.N.Y. Sept. 30, 2019) (quoting *Walczyk v. Rio*, 496 F.3d 139, 156 (2d Cir. 2007)).  Arguable probable cause, meanwhile, "exists 'if either (a) it was objectively reasonable for the officer to believe that probable cause existed, or (b) officers of reasonable competence could disagree on whether the probable cause test was met.'"  *Escalera v. Lunn*, 361 F.3d 737, 743 (2d Cir. 2004) (quoting *Golino v. City of New Haven*, 950 F.2d 864, 870 (2d Cir. 1991)).

The case law tilts against granting a Rule 12(b)(6) motion on the basis of qualified immunity.  *See Green v. Maraio*, 722 F.2d 1013, 1018 (2d Cir. 1983). At this juncture, therefore,

---

[2] The City Defendants did not move to dismiss any state law claims against Mukhtarzada, Gomez, and Gallagher, and their arguments in the memorandum of law in support of their motion to dismiss focus exclusively on the § 1983 analysis.  Thus, to the extent that Medina states any state law claims against Mukhtarzada, Gomez, and Gallagher, the Court will not dismiss them.

[3] The City Defendants note in their brief that, "[a]lthough not moving on behalf of Det. Nunez," they "respectfully request that the false arrest claim be dismissed from this action in its entirety based on the presence of, at least, arguable probable cause."  City Def. Br. at 21 n.9.

defendants seeking to dismiss a claim on the basis of qualified immunity defendants must show that "facts establishing arguable probable cause are 'clear from the face of the [complaint].'" *Lumpkin v. Brehm*, 230 F. Supp. 3d 178, 184 (S.D.N.Y. 2017) (citing *Rahman v. Schriro*, 22 F. Supp. 3d 305, 316 (S.D.N.Y. 2014).  As a result, a qualified immunity defense raised at the motion to dismiss stage ordinarily "faces a formidable hurdle . . . and is usually not successful." *Barnett v. Mount Vernon Police Dep't*, 523 F. App'x 811, 813 (2d Cir. 2013) (quoting *Field Day, LLC v. County of Suffolk,* 463 F.3d 167, 191–92 (2d Cir. 2006)).  *See also Pourkavoos v. Town of Avon*, 823 F. App'x 53, 59 (2d Cir. 2020) ("This Court has admonished '[d]efendants moving to dismiss a suit by reason of qualified immunity' that they 'would in almost all cases be well advised to move for summary judgment, rather than for dismissal under Rule 12(b)(6) or 12(c).'" (quoting *Barnett*, 523 F. App'x at 813)).  The Defendants' arguments do not meet this demanding standard.

As the City Defendants note, Plaintiff concedes that he was one of several people listening to music at close to midnight, and that Defendants Nunez and Hansler approached the group because they were able to hear the music.  City Def. Br. at 21 (citing Compl. ¶ 88).   But the City Defendants err in suggesting that the facts pleaded in the Complaint establish arguable probable cause.  Instead, as Plaintiff points out, the Defendants' arguments require the Court to assume facts not expressly pleaded in the Complaint and to draw several inferences in Defendants' favor.

More specifically, the City Defendants argue that the Complaint establishes that the officers had probable cause, or arguable probable cause, that Plaintiff was violating a city ordinance that prohibits unreasonable noise.  *See* N.Y. Admin. Code § 24-218(b)–(b)(1). Unreasonable noise is defined as "sound, attributable to any device, that exceeds the following

prohibited noise levels: (1) Sound, other than impulsive sound, attributable to the source, measured at a level of 7 dB(A)10 or more above the ambient sound level at or after 10:00 p.m. and before 7:00 a.m., as measured . . . at a distance of 15 feet or more from the source on a public right-of-way."  N.Y. Admin. Code § 24-218(b)-(b)(1).

    Because the right to be free from false arrest is clearly established, the issue of qualified immunity "turns on" whether it was "objectively reasonable" for defendants to believe that probable cause existed.  *Jenkins v. City of New York*, 478 F.3d 76, 86–87 (2d Cir. 2007).  In arguing that qualified immunity is proper at this juncture, the City Defendants contend that police officers cannot be expected to meet "scientifically rigorous tests to have probable cause for a noise violation," and that the Court should conclude that the officers had a reasonable belief that Plaintiff was violating the statute "[s]imply by being able to hear the sound of plaintiff's music over the sound of their running vehicle."  City Def. Br. at 22.

    For Defendants' qualified immunity argument to have merit, however, the Court would have to draw several inferences, including, at a minimum, that the music was sufficiently loud as to justify a reasonable belief that it was in violation of the ordinance and that the officers were sufficiently far away as to make the officers' belief reasonable.  *See* Pl. Opp. Br. at 27–28.  The facts pleaded in the Complaint support neither of these inferences: The Complaint does not concede that the music was "loud," nor does it plead facts regarding ambient sound level, the decibel level of the music, or even how far away the officers were when they first heard the music.  *See id.*  Any determination of reasonableness turns on the resolution of at least some of those facts, rendering dismissal especially improper.  *See Husain v. Springer*, 494 F.3d 108, 133 (2d Cir. 2007) (at the summary judgment stage, noting that where facts material to the determination of reasonableness are disputed, "[s]ummary judgment on qualified immunity

grounds is not appropriate." (citation omitted)).  Indeed, Defendants' arguments are undermined

by the principle that Plaintiff is entitled to reasonable inferences in his favor, *Iqbal*, 556 U.S. at

678, and by the "formidable hurdle" of prevailing on qualified immunity grounds at this juncture,

*see Barnett*, 523 F. App'x at 813.  Because the Court concludes that arguable probable cause is

not clear from the face of the complaint, and because it notes that Defendants are not entitled to

the inferences that their claim rests on, it declines to grant qualified immunity at this early stage.

Defendant Nunez advances another theory of qualified immunity: That he had probable

cause to arrest Medina under New York State Penal Code § 195.05 (Obstructing Governmental

Administration in the Second Degree) after Medina failed to provide identification and walked

away.  Nunez Br. at 5 (citing Compl. ¶¶ 94–95).  But "under New York law obstruction of

governmental administration cannot rest upon refusal to provide identification."  *Uzoukwu v.

City of New York*, 805 F.3d 409, 416 (2d Cir. 2015) (citing *People v. Alston,* 805 N.Y.S. 2d 258,

261 (Crim. Ct. 2005) ("[R]efusal to comply with a request for documentation is not an

independently unlawful act that amounts to obstruction of governmental administration.")).  And

New York courts have repeatedly held that walking away from a police officer alone does not

comprise Obstructing Governmental Administration in the Second Degree, and thus does not

provide an independent basis on which to arrest an individual pursuant to § 195.05.  *See People

v. Brown*, 46 Misc. 3d 1212(A), 9 N.Y.S. 3d 594 (N.Y. City Ct. 2015) (collecting cases).  While

"a person's flight from a police officer may create rights and duties for police, such as the right

to pursue and detain a person under appropriate circumstances," *id.*, none of those circumstances

are present in the facts pleaded in the Complaint.  *See People v. Tillman*, 706 N.Y.S. 2d 819, 821

(City Ct. 2000) (explaining that a person's flight from an officer "may create rights and duties

for police, such as to proceed to obtain a warrant or assuming probable cause to arrest without a

warrant, chase and apprehend the defendant. . . .").  As a result, merely refusing to provide

identification and walking away does not *independently* create probable cause for an obstruction

of governmental administration charge, making § 195.05 inapposite.  In addition, merely

refusing to provide identification, or walking away from police, does not, assuming all of the

facts in the Complaint are true, lead to an inference of probable cause or arguable probable cause

as to potential violations of the noise ordinance—at least not enough to overcome the

"formidable hurdle" that a qualified immunity, at this stage, faces.  *Barnett*, 523 F. App'x at 813.

Accordingly, the Defendants' motion to dismiss Medina's false arrest claims on the basis

of qualified immunity is DENIED.

### 5.  Improper Search

So, too, has Plaintiff pleaded sufficient facts to overcome the City Defendants' motion to

dismiss his claim that he was subjected to a constitutionally impermissible search.  *See* City Def.

Br. at 23–24.  As an initial matter, "[t]he test of reasonableness under the Fourth Amendment . . .

requires a balancing of the need for the particular search against the invasion of personal rights

that the search entails."  *Bell v. Wolfish*, 441 U.S. 520, 559 (1979).  Thus, when assessing

whether a search was constitutionally permissible, "[c]ourts must consider the scope of the

particular intrusion, the manner in which it is conducted, the justification for initiating it, and the

place in which it is conducted."  *Id.  See also Wilson v. Aquino*, 233 F. App'x 73, 76 (2d Cir.

2007) (noting that "the reasonableness of any search incident [to an arrest] still depend[s] on the

manner in which it was conducted.").

The City Defendants argue that Medina failed to "plead why it was impermissible to

search him incident to arrest."  Def. Br. at 23.  Their argument misses the point.  Medina's claim

does not turn on the fact that he was searched; instead, it turns on the manner in which it was

conducted.  And contrary to the City Defendants' attempts to downplay the particular

circumstances, *see id.* at 23–24, the allegations contained in the Complaint are plainly pleaded

with sufficient specificity as to "state a claim to relief that is plausible on its face."  *Iqbal*, 556

U.S., at 678 (citation omitted).  In particular, Medina claims "that Defendants Siciliano and Htoo

pulled down Medina's pants outside the precinct; forced him to walk into the precinct with his

pants around his ankles; and left his pants down while he was handcuffed to a post in a high-

traffic corridor."  Pl. Opp. Br. at 29–30 (citing Compl. ¶ 104).  After considering "the scope of

the particular intrusion, the manner in which it is conducted, the justification for initiating it, and

the place in which it is conducted," *Wolfish*, 441 U.S. at 559, the Court concludes that these

allegations create a plausible inference that the search was unreasonable and that it exceeded the

parameters of reasonableness under the circumstances.

As such, the City Defendants' motion to dismiss this claim is DENIED.

### 6.  State Law Claims

Nunez moves to dismiss Plaintiff's state law claims against him on the basis that they are

time-barred.  Nunez Br. at 6.  In response, Plaintiff contends that Nunez cited the wrong statute

of limitations, and that the correct statute of limitations is General Municipal Law § 50-k, which

applies to civil actions against employees of the City and which establishes a statute of

limitations of one year and ninety days.  Pl. Opp. Br. at 32.  *See* N.Y. Gen. Mun. Law § 50-k, 50-

i; *Felmine v. City of New York*, No. 09-CV-3768 (CBA) (JO), 2011 WL 4543268, at *24

(E.D.N.Y. Sept. 29, 2011) ("In New York, the statute of limitations for tort actions against the

city or its employees is one year and ninety days.").  Nunez replies that, because he is not

represented by the City, CPLR § 215—which sets the statute of limitations at one year for claims

alleging assault, battery, and false imprisonment—applies rather than GML § 50-k, which sets

the statute of limitations at one year and 90 days.  Nunez Reply Br. at 5–6.  And Nunez also

contends that even if GML§ 50-k applied, Medina's claim would still be barred because Medina

did not serve a notice of claim on Nunez as required by GML §§ 50-e and 50-i.

Nunez cites no case law for the proposition that § 50-k applies only to employees

represented by the City of New York.  *See* Nunez Reply at 5–6.  And his argument is belied by

the title and text of the statute; § 50-k is titled "Civil Actions Against Employees of the City of

New York," and the statute makes no clear reference to the principle that the Defendant *must* be

represented by the City for the statute to apply.  As such, the Court is unpersuaded.  However,

Nunez is correct that to sue under § 50-k, Plaintiff was obligated to have made and served upon

the city a notice of claim as prescribed by § 50-e.  N.Y. Gen. Mun. Law § 50-k.  And he is also

correct that Medina did not plead that he had served a notice of claim.  Thus, whatever statute in

fact applies appears to lead to dismissal.  If Plaintiff is suing under CPLR § 215, his state law

claims against Nunez are time-barred.  If Plaintiff is suing Nunez under § 50-k, his claims are

barred due to failure to make and serve a notice of claim in compliance with § 50-e and within

ninety days after the claim arose.  N.Y. Gen. Mun. Law § 50-k(6).

Thus, Medina's state law assault, battery, and false imprisonment claims against Nunez

are DISMISSED without prejudice.  If Medina is able to furnish proof that he timely served a

notice of claim within seven days of this Order, or if he is able to rebut Nunez's claim that a

notice of claim was necessary, his state law claims against Nunez may be restored.

### 7.  Intentional and Negligent Infliction of Emotional Distress

Both sets of defendants also move to dismiss the Plaintiff's intentional and negligent

infliction of emotional distress claims.  *First*, the City Defendants and Nunez argue that, under

New York law, Medina's emotional distress claims cannot be premised on the same underlying

conduct for which he has other tort remedies available.  *See* Def. Br. at 24–25; Nunez Br. at 7.
*See also Romero v. City of New York*, 839 F. Supp. 2d 588, 632 (E.D.N.Y. 2012) ("The New
York Court of Appeals has strongly cautioned against allowing emotional distress claims to be
brought where other tort remedies are available." (citing *Moore v. City of New York,* 219 F.
Supp. 2d 335, 339 (E.D.N.Y. 2002)).  *Second*, the City Defendants separately argue that Medina
has not "pled separate and sufficient facts to demonstrate 'severe emotional distress.'"  City Def.
Br. at 25.

To state a claim for intentional infliction of emotional distress, a party must allege "(1)
extreme and outrageous conduct, (2) intent to cause severe emotional distress, (3) a causal
connection between the conduct and the injury, and (4) severe emotional distress."  *Bender v.
City of New York*, 78 F.3d 787, 790 (2d Cir. 1996) (citing *Howell v. New York Post Co.*, 81
N.Y.2d 115, 121 (1993)).  When pleading intentional infliction of emotional distress, "[t]he bar
is extremely high, and this highly disfavored cause of action is almost never successful."  *Sesto
v. Slaine*, 171 F. Supp. 3d 194, 201–02 (S.D.N.Y. 2016) (quoting *Guan N. v. NYC Dep't of
Educ.*, No. 11–cv–4299, 2013 WL 67604, at *25 (S.D.N.Y. Jan. 7, 2013)).  As a result, such
claims are "routinely dismissed on pre-answer motion."  *Id.* (quoting *Guan N.*, 2013 WL 67604,
at *25).  Claims for negligent infliction of emotional distress, meanwhile, "generally must be
premised upon the breach of a duty owed to plaintiff which either unreasonably endangers the
plaintiff's physical safety, or causes the plaintiff to fear for his or her own safety," and they also
"must be supported by allegations of conduct by the defendants so outrageous in character, and
so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as
atrocious, and utterly intolerable in a civilized community."  *Sheila C. v. Povich*, 781 N.Y.S. 2d
342, 351 (1st Dep't. 2004) (citations omitted).

While the Defendants did not raise this in their briefing, Medina's negligent infliction of emotional distress claim must be dismissed because "[w]hen a plaintiff brings excessive force and assault claims which are premised upon a defendant's allegedly intentional conduct, a negligence claim with respect to the same conduct will not lie." *Naccarato v. Scarselli*, 124 F. Supp. 2d 36, 45 (N.D.N.Y. 2000); *see also Mazurkiewicz v. New York City Transit Auth.,* 810 F.Supp. 563, 570–71 (S.D.N.Y. 1993) (holding that "[p]laintiff cannot argue that defendants engaged in intentional conduct that forms the basis of an assault and § 1983 excessive force claim and also argue that defendants were negligent towards plaintiff."). Plaintiff's emotional distress allegations all bear the hallmark of allegations of intentional misconduct. *See* Pl. Opp. Br. at 31–32; *see also* Compl. ¶¶ 93, 102, 104, 112.

With respect to the intentional infliction of emotional distress claim, meanwhile, the Court agrees with the City Defendants that Medina did not plead facts sufficient to demonstrate severe emotional distress. *See* City Def. Br. at 25. Medina claims that Defendants "intended to cause, and in fact caused," severe emotional distress, including "'interference with familial relationships' and 'gainful employment,' and 'embarrassment[] and humiliation,' as well as the 'mental anguish' that accompanied his prolonged criminal prosecution." Pl. Opp. Br. at 32 (citing Compl. ¶¶ 114, 119). But, even when viewed in the light most favorable to him, these assertions are merely "conclusory statements." *Iqbal,* 556 U.S. at 686. Under *Iqbal*, a claim is facially plausible only "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. Medina does not specify any facts that would support the conclusory statement that he experienced "interference with familial relationships, "gainful employment," "embarrassment[]

and humiliation," or "mental anguish."  Compl. ¶¶ 114, 119.  Without more, Medina has not

"nudged [his] claims across the line from conceivable to plausible."  *Twombly,* 550 U.S. at 570.

As a result, the Defendants' motions to dismiss Medina's intentional and negligent

infliction of emotional distress claims are GRANTED.

### 8.  Abuse of Process

Finally, Defendant Nunez moves to dismiss Medina's abuse of process claim against him,

arguing that the alleged existence of probable cause defeats Medina's abuse of process claim and

that, even assuming otherwise, Medina has failed to plead facts to support the presence of a

collateral objective.  *See* Nunez Br. at 7–8.

To establish a claim for abuse of process, plaintiffs must demonstrate that the defendants:

"(1) employ[ed] regularly issued legal process to compel performance or forbearance of some

act, (2) with intent to do harm without excuse or justification, and (3) in order to obtain a

collateral objective that is outside the legitimate ends of the process."  *Savino v. City of New*

*York,* 331 F.3d 63, 70 (2d Cir. 2003) (internal quotation marks omitted).  To establish the third

element, "the mere act of issuing process does not give rise to a claim."  *Elek v. Inc. Vill. of*

*Monroe*, 815 F. Supp. 2d 801, 810 (S.D.N.Y. 2011) (quoting *Lopez v. City of New York,* 901 F.

Supp. 684, 691 (S.D.N.Y. 1995).  That is, the plaintiff "must claim that [Defendants] aimed to

achieve a collateral purpose beyond or in addition to his criminal prosecution."  *Savino,* 331 F.3d

at 77; *see also Elek*, 815 F. Supp. 2d at 810.

In response to Nunez's claim that he failed to plead facts to establish a collateral

objective, Medina argues that the Complaint makes clear his theory that "charges were brought

against Mr. Medina for the purpose of distracting from Defendant Nunez's unlawful use of force

and to aid him in avoiding further discipline that could endanger his career or pension."  Pl.

Opp. Br. at 33 (citing Compl. ¶ 113). "[C]ourts have found malicious abuse of process claims to be properly based on such improper purposes as a desire to safeguard one's employment, a desire to escape blame for allowing a suspect to go free, or a desire to intimidate or embarrass plaintiff." *Corso v. City of New York*, No. 17-CV-6096 (NRB), 2018 WL 4538899, at *10 (S.D.N.Y. Sept. 20, 2018) (quoting *O'Brien v. City of Yonkers*, No. 07-CV-3974 (KMK), 2013 WL 1234966, at *17 (S.D.N.Y. Mar. 22, 2013)). *See also Jovanovic v. City of New York*, No. 04-CV-8437 (PAC), 2010 WL 8500283, at *9 (S.D.N.Y. Sept. 28, 2010) ("[C]ourts have held that protecting one's employment could be an objective sufficient to establish the collateral objective element of a malicious abuse of process claim." (citing *Hernandez v. Wells*, No. 01-CV-4376 (MBM), 2003 WL 22771982, at *9 (S.D.N.Y. Nov. 24, 2003))). But even accepting the facts pleaded in the Complaint as true, Medina's theory as to a collateral objective is so "conclusory" as to "warrant dismissal of this claim." *Corso*, 2018 WL 4538899, at *10. Like with his emotional distress claims, therefore, Medina has failed to plead facts with sufficient specificity as to allow the Court to draw any reasonable inference in his favor. Thus, Nunez's motion to dismiss the abuse of process claim against him is GRANTED.

## III.   MOTIONS FOR SANCTIONS

The City Defendants also moved for sanctions against Medina's *pro bono* counsel under Rule 11 for bringing claims for equitable relief. *See* Mot. For Sanctions. They argue that, due to *Lyons*, the claims for equitable relief were "objectively unreasonable." Dkt. No. 63 at 10 (citation omitted). In response, Medina filed his own motion for sanctions against the City's Corporation Counsel, arguing that "the motion not only lacks merit, but was filed for improper purposes." Pl. Opp. Br. at 36. Both motions are DENIED.

Under Federal Rule of Civil Procedure 11, a court may sanction an attorney, law firm, or party that files a pleading that is not "warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law" or contains factual allegations that have no evidentiary support. Fed. R. Civ. P. 11; *see also Tracey Tooker & TT Ltd., Inc. v. Whitworth*, 212 F. Supp. 3d 429, 435–36 (S.D.N.Y. 2016).  The decision of whether to grant a motion for sanctions is left to the discretion of the district court.  *See Ipcon Collections LLC v. Costco Wholesale Corp.,* 698 F.3d 58, 63 (2d Cir. 2012) ("Sanctions may be—but need not be—imposed when court filings are used for an 'improper purpose,' or when claims are not supported by existing law, lack evidentiary support, or are otherwise frivolous.").

The Court finds no basis on which to grant the City Defendants' motion for sanctions While the City Defendants claim that Medina's counsel presented arguments that "directly contradict not one, but two controlling Supreme Court cases," City Def. Reply at 12, this argument goes nowhere.  Indeed, Medina's briefing presented the Court with numerous cases where district courts have, notwithstanding *Lyons* and *O'Shea*, determined that a plaintiff had standing to pursue claims for equitable relief in cases factually similar to this one.  While the Court has ultimately concluded that Medina did not have standing to bring his claims for equitable relief, it does not follow that Medina's arguments were so frivolous or unsupported by existing law as to warrant sanctions.  On the contrary, Medina's counsel proffered reasonable arguments as to why the present case could be distinguished from *Lyons* and *O'Shea*, grounding these arguments in case law from this district.  Medina's claims for equitable relief were not unreasonable, let alone so unreasonable as to warrant sanctions.  *See Scientific Components Corp. v. Sirenza Microdevices, Inc.*, No. 03-CV-1851 (NGG), 2007 WL 1026411, at *5

(E.D.N.Y. Mar. 30, 2007) ("Rule 11 sanctions are not appropriate where there is a viable claim that is weak.").

Medina's arguments that the City Defendants' Rule 11 motion is sanctionable, meanwhile, fails because Medina proffers no evidence, or even non-conclusory explanation, as to the Corporation Counsel's allegedly "improper purpose." *See* Pl. Opp. Br. at 36–37. *Cf. In re Merrill Lynch Tyco Research Sec. Litig.,* No. 03-CV-4080 (MP), 2004 WL 305809, *5 (S.D.N.Y. Feb. 18, 2004) (finding Rule 11 sanctions unwarranted because "[t]here [wa]s no evidence that Plaintiff filed his Consolidated Amended Complaint for an improper purpose such as to harass defendants." (citation and quotation marks omitted)). While Medina claims that the sanctions motion "was thus improperly prepared to emphasize the merits of [the City's] position," the Court deems this explanation (or its reasoning) insufficient as to justify sanctions.

Accordingly, the two motions for sanctions are DENIED.

## IV.   Conclusion

For the reasons set forth above, the City Defendants' motion to dismiss is granted as to Medina's equitable relief claims, as to the federal claims against Defendants Mukhtarzada, Gomez, and Gallagher, and as to the intentional and negligent infliction of emotional distress claims. The motion is DENIED as to all other claims. Defendant Nunez's motion to dismiss is granted in part and denied in part. Thus, Medina's state law assault, battery, and false imprisonment claims against Nunez are DISMISSED without prejudice. Medina's abuse of process, intentional infliction of emotional distress, and negligent infliction of emotional distress claims against Nunez are DISMISSED with prejudice. Nunez's motion is DENIED in all other respects. The City Defendants' motion for sanctions is DENIED. The Plaintiff's motion for sanctions is DENIED. This resolves Dkt. Nos. 59, 62, 74, and 84.

Within a week of this Order, the parties are hereby ordered to submit a joint letter detailing the status of discovery.

SO ORDERED.

Dated:  November 30, 2020
        New York, New York

_____
        ALISON J. NATHAN
     United States District Judge