```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

TOMAS MEDINA,

               Plaintiff,

          v.                             19 Civ. 9412 (AJN)(OTW)

CITY OF NEW YORK, et al.,

               Defendants.               Pretrial Conference
                                         (Via Teleconference)
------------------------------x
                                         New York, N.Y.
                                         November 10, 2020
                                         10:38 a.m.
Before:

                    HON. ONA T. WANG,

                                         Magistrate Judge

                         APPEARANCES

COVINGTON & BURLING LLP
     Attorneys for Plaintiff
BY:  ISHITA KALA, ESQ.

THE LEGAL AID SOCIETY
SPECIAL LITIGATION UNIT
     Attorneys for Plaintiff
BY:  MOLLY GRIFFARD, ESQ.
     W. ALEXANDER LESMAN, ESQ.

NEW YORK CITY LAW DEPARTMENT
OFFICE OF THE CORPORATION COUNSEL
     For Defendants
BY:  PETER W. BROCKER, Assistant Corporation Counsel
     JOSEPH P. ZANGRILLI, Assistant Corporation Counsel

KARASYK & MOSCHELLA, LLP
     Attorneys for Defendant Fabio Nunez
BY:  JAMES M. MOSCHELLA, ESQ.
```

1               (Case called)
2               THE DEPUTY CLERK:  Please state your appearances.
3               MS. KALA:  For the plaintiff -- good morning, your
4     Honor.  For the plaintiff, you have Ishita Kala from Covington
5     & Burling, and my colleagues Alexander Lesman and Molly
6     Griffard from Legal Aid.
7               MR. BROCKER:  Good morning, your Honor.  For city
8     defendants, this is Peter Brocker from the New York City Law
9     Department.
10              MR. MOSCHELLA:  And good morning, your Honor.
11    Appearing for co-defendant Fabio Nuñez, James Moschella.
12              MR. ZANGRILLI:  Good morning, your Honor.  This is Joe
13    Zangrilli, also appearing for the city defendants.
14              THE COURT:  All right.  Good morning, everyone.  This
15    is Judge Wang.  I decided to stay on mute until everybody
16    finished their appearances rather than muddle with, you know,
17    going on and off mute.
18              We're here for a status conference.  We also have a
19    court reporter on the line.
20              We are proceeding by telephone due to the COVID-19
21    pandemic.  This is a public line.  It should be treated like my
22    virtual courtroom.  I expect the same decorum on the line that
23    I expect in my courtroom.  The parties should also expect that
24    members of the press or the public may be on the line on a
25    listen only basis.

1           Because we have a court reporter on the line and she
2   is on the telephone, please stay on mute when you're not
3   talking.  Please say your name when you start speaking.  This
4   will help with the transcript.  And of course, please don't
5   interrupt each other.
6           And finally, recording or rebroadcasting by anyone
7   else on this line is strictly prohibited.
8           All right.  So we're here for a status conference.  I
9   understand that I also asked you for briefing on the protective
10  order, and we'll get to that second.
11          I think first I'd like to hear a little bit about the
12  status of discovery.  What have you done so far?  What do you
13  still have left to do?  And I'm telling you, I'm more than
14  likely going to give you the extension you're asking for.  I
15  just want to know where you are and what your plan is for
16  getting done by February 17th.  Okay?  Thanks.
17          MS. KALA:  Certainly, your Honor.  This is Ishita Kala
18  from plaintiff's side.
19          I can begin with what we've done on discovery.  So
20  we've served our first set of interrogatories and requests for
21  production.  We served those on July 8th.  And we've also
22  served one additional interrogatory and a second set of
23  requests for production.  That was on October 22nd.  We have
24  received some -- and that was on city defendants.  I'll get to
25  defendant Nuñez in a moment.

We've received responses and objections to our first set of interrogatories and requests for production. As we noted in our letter, we have gone back and forth with city defendants about a number of deficiencies in that first set of production, but we were able to resolve our differences at a meet-and-confer last week, so we're now just waiting for the production of the outstanding responsive documents for the first set of interrogatories and requests for production, and we expect city defendants' responses at the end of this month to our second set of requests for production and the one additional interrogatory. Once we have that discovery, we can proceed with depositions.

Right now we're still missing some key categories of discovery that are preventing us from conducting depositions. That includes incident reports about the incident in question, the Internal Affairs Bureau documentation, training records and materials, and some key NYPD policies that affect the conduct that happened here.

And I can also speak briefly about where things stand with defendant Nuñez's production. We served our first set of interrogatories and requests for production on August 21, 2020, and we just on Friday received responsive documents -- and yesterday received responsive documents to our interrogatories, so we'll need some time to process those materials before we can move forward there.

1            THE COURT:  All right.  Thank you.

2            So as for Mr. Nuñez, defendant Nuñez, I understand

3   that you will need to process what you just received, but short

4   of, you know, resolving deficiencies or seeking additional

5   documents as a result of that, is the only thing left then for

6   Mr. Nuñez then is his deposition?

7            MS. KALA:  Yeah, that's correct, your Honor.  We may

8   need to serve additional discovery requests, just based on what

9   we've received.  Our next step there would be a deposition.

10  However, I should caveat that by noting a deposition of

11  defendant Nuñez will only be effective if we do have some of

12  the documents I mentioned from corporation counsel related to

13  these policies that were in effect.

14           THE COURT:  Of course. Understood.  I'm just trying

15  to get a sense of how the pieces fit together and what steps

16  need to be completed before we get to depositions and so on.

17           Okay.  All right.  So let's hear from defendants.  I

18  mean, I'm assuming that there isn't a whole lot of discovery

19  that you're seeking from the plaintiff.  Is that right?

20           MR. BROCKER:  Good morning, your Honor.  This is Peter

21  Brocker.

22           There are some outstanding items that we are going to

23  seek -- that we are seeking from plaintiff.  Nothing that I

24  think will slow down discovery in any kind of a meaningful way,

25  and we are -- I'm fully confident that the parties can resolve

1    those areas of dispute without involving the Court.

2    In terms of the documents that the city is in the
3    process of obtaining and disclosing to plaintiff, this case has
4    had sort of an unusual life in the sense that the timing of the
5    case sort of follows timing of 2020 in general, and the ability
6    of the city and the NYPD to respond to discovery requests has
7    been diminished for a good chunk of the year, which is why
8    discovery has proceeded a little bit more slowly than may have
9    ordinarily been the course.  So essentially, in the view of the
10   city defendants, we are actually fairly close to wrapping up
11   document discovery.  The hope is that the outstanding items can
12   be obtained in the next 30 or so days, and that would give us
13   the remainder of the requested extension of discovery to
14   complete depositions.

15   THE COURT:  All right.  Great.  So it sounds like
16   you're on track and you will be on track with the extension.
17   So I am going to extend discovery until February 17th.

18   Okay.  And I know that I've had both Mr. Brocker and
19   Mr. Zangrilli on other cases with the city, so I hold them to a
20   pretty high standard in terms of working well with opposing
21   counsel and getting discovery done in a timely fashion, so I
22   expect that will continue, and I'll hear from you all if it's
23   not.

24   All right.  Let's move on.  Is there anything else we
25   need to deal with in discovery before we talk about the

1   protective order issue?

2              MS. KALA:  No, your Honor.

3              MR. BROCKER:  Not from city defendants, your Honor.

4              THE COURT:  Okay.  All right.  So let's talk about the

5   protective order.  I don't want to treat this like an oral

6   argument, because I did have you already brief the issue.  I

7   think what I'm trying to understand is what the concern is with

8   letting the city continue to provisionally designate documents

9   confidential and then, if an issue arises with particular

10  documents, that you then have, you know, your meet-and-confer

11  process about those particular documents and try to reach some

12  agreement.  I mean, I think part of the problem, when I look at

13  this, is that given the state of the law and how it is

14  changing, that you're essentially asking for an advisory

15  opinion from the Court for a blanket ruling on documents that

16  we haven't seen yet.  We haven't seen what you're getting from

17  FOIL and whether any documents that you get from FOIL are going

18  to be redacted or not.  And allowing the city to continue to

19  provisionally designate certain documents and then engage in a

20  meet-and-confer to try to resolve these issues before bringing

21  them to the Court allows us to fine-tune the issue a little bit

22  more.  As I said earlier, with counsel on both sides, I would

23  expect motions to be made in good faith.  So I guess I'm having

24  a little bit of difficulty in understanding what the issue is

25  right now and why there is this inability to agree.

           So anybody can start.  And just frame the issue for
me.  Explain to me why we can't continue with provisional
designations of confidentiality and then we talk about
particular documents if it turns out that you need to use them
in some way.
           MS. GRIFFARD:  Yes, your Honor.  This is Molly
Griffard for the plaintiff.
           What defendants are seeking is a blanket
confidentiality order which designates all police disciplinary
records as confidential, and why plaintiff is opposed to this
is that, well, first of all, the burden for seeking a
confidentiality order is on the moving party, and based on the
city's own position in *Uniform Fire*, there is no justification
for these records to be deemed confidential.  The position
they're taking before your Honor is contradictory to the
position they've taken before Judge Failla and the Second
Circuit.
           THE COURT:  Okay.  Ms. Griffard?
           MS. GRIFFARD:  Yes.
           THE COURT:  I usually try not to interrupt, but I said
at the beginning of this, I'm not here for oral argument.  I
don't want to hear oral argument.  I want to hear in this case,
what is the issue, because I already said I'm not going to give
the city a blanket confidentiality order, okay?  I am asking
why we can't proceed with allowing the city to provisionally

designate certain documents confidential but they're going to have to consider the documents and the substance in the documents, why we can't proceed that way.  Because just as you're saying that the city is asking for a blanket confidentiality order, the city's response to that seems to be that you're asking for a blanket "not confidential ever," where it seems like the issue might be what are you able to get via FOIL, and we haven't seen in this case what you're able to get through FOIL.

     MS. GRIFFARD:  Yes, your Honor.  The issue for us is that the city should have a good -- we would consent, and we do consent.  We have discussed this in meet-and-confers.  But we have a good faith catchall clause in the existing confidentiality order, and if the defendants take a record-by-record approach and have a good faith basis for designating a record as confidential, that is acceptable to us.  What we're not okay with is a blanket confidentiality order, and we would also reject that, you know, the very arguments that they make about -- there's no harm to privacy, there's no risk of, you know, officer safety issues, etc., that they're making in *Uniform Fire*, and that is, you know, clearly part of the legislative intent of repealing 50-h, that they can't then designate records as confidential using these sort of defunct arguments that they used to rely on, because that is so clearly no longer the state of the law.  It's pretty clear those

records would be accessible under FOIL, and in fact the city itself is arguing for that.

I'm not sure if that makes sense. But we would be okay with individual records being designated confidential if there is a good faith basis.

THE COURT: Right. And I guess the reason why I interrupted you is, are there particular records that have been produced already that you believe the city has designated confidential without a good faith basis?

MS. GRIFFARD: I believe at the moment the city has designated all disciplinary records as provisionally confidential, and yes, we would object to that continued designation, as some of them clearly, you know, even fall outside of the administrative stay in *Uniform Fire* and it's very clear that those are now publicly accessible records.

THE COURT: Okay. How many records are we talking about to date? If you have a better sense in terms of pages, that would be helpful too, because I'm about to give the city some homework.

MS. GRIFFARD: Your Honor, I would have to go back through the files to get a more accurate number. I'm not sure if any of my co-counsel know offhand or if the city knows how many disciplinary records they've produced. I apologize.

MS. KALA: Your Honor, this is Ishita Kala. I do not know the number of records offhand, but I want to note that we

have still not received quite a lot of disciplinary records and are expecting to receive them and, you know, for those records, we don't know how the city is going to designate them with regards to confidentiality.

MR. BROCKER: If I may, your Honor. This is Peter Brocker.

THE COURT: Go ahead.

MR. BROCKER: So in terms of the confidential records disclosed to this point, the CCRB investigative file in this incident was disclosed provisionally confidential, as well as the sort of summary, summaries of the defendant officers' discipline -- which are the CCRB history, Internal Affairs, résumé, as it's called, in the central personnel index -- would have all been disclosed confidential. I believe the CCRB file was disclosed. I'm not sure -- I apologize, your Honor. If I can just ask, are you looking for like the number of pages or -- I'm not entirely sure what information would be helpful right now.

THE COURT: Okay. So Mr. Brocker, since you're in the hot seat now, the homework I was thinking about giving you all is, as for what has been provisionally designated confidential, maybe you need to prepare a log for me to review. Because it sounds like you're arguing over, you know, whether these should be all not confidential or all provisionally confidential. I guess my question is, at this point in discovery, how does it

1   matter?  Does it actually hamper the plaintiff's ability to
2   proceed in discovery if these records are provisionally
3   designated confidential or does it come up later, say, when
4   you're making a motion for summary judgment or something and
5   you want to include records?  That's number one.
6           And then number two for the city is, for the
7   additional disciplinary records or other information that you
8   could conceive of designating provisionally confidential, I
9   want to know what that volume is, because I'm trying to frame a
10  way where documents can be produced on a factor basis for
11  plaintiffs, right?  You get as much discovery over to the
12  plaintiffs as you can, and then if there is a problem with the
13  confidential designations because it's hampering in some way
14  the plaintiff's ability to use them, then I want to know about
15  it, but right now I guess I'm just trying to understand how
16  that affects your litigation of the case between now and
17  February.
18          (Outside interruption)
19          (Discussion off the record)
20          MR. BROCKER:  I apologize, your Honor.  This is Peter
21  Brocker again.
22          So it seems to defendants that the earliest that the
23  confidentiality designation could impact the flow of the
24  litigation would potentially be in depositions, where, if
25  plaintiffs wanted to use confidential documents, they may have

1  to deem the portion of the testimony confidential as well that
2  relates to those documents.
3             In terms of the forthcoming documents in discovery
4  that would likely be deemed confidential, city defendants are
5  in the process of finalizing for disclosure the Internal
6  Affairs investigation of this incident, which would be
7  designated preliminarily confidential, similar to the CCRB
8  file.  If there are individual pieces of the file that
9  plaintiffs think should not be designated confidential -- and I
10 think there are areas for compromise here -- city defendants
11 are open to having that conversation.  Obviously the core of
12 the files, city defendants are going to consider confidential,
13 but very often the entire file is marked confidential for I
14 think to some extent expediency's sake, to get documents
15 disclosed as quickly as possible, but also because the bundle
16 itself, the file itself is what is treated as confidential.
17 And obviously I can't speak for what plaintiff's counsel
18 believe the impacts would be on how they proceed with their
19 case if these files are designated as confidential, but beyond
20 the IAB file, which should be disclosed shortly, I think the
21 only other records which would be confidential would be
22 personnel related, personnel evaluations for the defendants,
23 and that would pretty much constitute the entire universe, as I
24 understand it, of the confidential material that relate to the
25 motion at hand.

kba1medc

1    THE COURT:  All right.  And so I generally don't have
2  a problem with what Mr. Brocker is saying, except that I don't
3  think that the whole burden should be on the plaintiff to say,
4  you know, we plan to be using these in depositions and
5  therefore we prefer they not be designated confidential, or
6  parts of the file; yet on the other hand, plaintiffs are
7  supposed to be reviewing all of this and determining what you
8  really need.  I am not certain that this is what we need to be
9  arguing about right now when we are really trying to get
10 discovery done.  I mean, you're getting the documents; you're
11 just getting them with a designation you're not happy about.
12    And Mr. Brocker, how large is the file?  I mean, how
13 many documents or pages need to be reviewed?
14    MR. BROCKER:  So I believe the CCRB file and the
15 Internal Affairs investigative file both run several hundred
16 pages, somewhere between 5 and 600.  So cumulatively, I would
17 say, with the evaluations and some of the personnel records
18 that have been previously disclosed, we're probably talking in
19 the neighborhood of 1500 pages of documents total which will
20 likely be deemed confidential.  Maybe slightly more, but not by
21 much.
22    THE COURT:  Okay.  And this is of the documents that
23 have already been produced or does this include the documents
24 that you're working on producing?
25    MR. BROCKER:  No.  That would include the documents

1   that we're working on producing as well.
2            THE COURT:  Okay.  All right.  And when do you think
3   you'll be finished with the production again?  I know you said
4   it's forthcoming.
5            MR. BROCKER:  Yes.  So the city has switched to a
6   rolling basis for production because of some of the
7   difficulties that we've been running into in obtaining
8   documents.  So the Internal Affairs file should be disclosed by
9   the end of this week, I anticipate.  After that we have I
10  believe some training records which should be accessible to
11  Mr. Zangrilli and I hopefully Thursday or Friday, which would
12  be the next batch that we would try and disclose to plaintiffs
13  after that.  We've been working with plaintiffs, trying to
14  identify the most important documents they need now to be able
15  to move on to the next step and getting those as quickly as
16  possible.  Essentially the big hurdle at this point is sort of
17  the large percent -- the large number of NYPD officers who have
18  retired in recent weeks has taken its toll on -- the unit that
19  we liaise with for the NYPD to obtain documents has lost
20  several individuals, and it was not a large unit to begin with,
21  and because of the hiring freeze the city's under, nobody's
22  been able to replace them.  So we're sort of asking a lot of
23  the few people that remain in that role.  So we're all working
24  with them to try and get documents as quickly as possible,
25  but -- ordinarily I think I would be able to give you a much

1   more definite timeline as to when we would expect things.  At
2   this point I can say we have the Internal Affairs file.  It's
3   being prepared to be disclosed.  And I know that there is a
4   large trove of training documents and materials which go out
5   next.  Beyond that, I'm not sure what will follow.  But I'm
6   optimistic that in the next 30 days we can get the vast
7   majority of the outstanding documents to plaintiffs.
8            THE COURT:  All right.  So here's what we'll do then.
9   Let's set a date for a joint status letter on the
10  confidentiality designations issue.
11           Wow, we're bumping up into the winter holidays.
12           And I do want you all to be able to get your
13  depositions done by February 17th if at all possible.
14           Again, I mean, I think it goes without saying, because
15  my individual practices still have my COVID warnings since
16  March, but, you know, I do want the parties to try to do
17  depositions remotely, conduct depositions remotely or virtually
18  wherever possible.  I expect everybody to work together on that
19  and not to, you know, withhold their witness for deposition or
20  insist on anything in person.  I understand that most times an
21  in-person deposition would be preferable, but these are not
22  most times.  But if COVID precautions end up being an issue or
23  if the pandemic ends up causing difficulties with either
24  scheduling or agreement on how to take those depositions, I
25  would rather hear about it sooner rather than later, okay, so

1     that we can work something out.
2             Now as to these documents, I would like the plaintiff
3     to get the production and the forthcoming production with the
4     city's good faith, you know, designations, understanding that,
5     you know, a provisional blanket designation might get you the
6     documents sooner so that you can review them and then you
7     should have a robust meet-and-confer about this.  I have
8     overseen many cases where even the portions of the deposition
9     were provisionally designated confidential and then later the
10    designation was removed, okay?  I think for the plaintiffs to
11    win at this point, if you're suggesting that the designations
12    have been applied in bad faith or not in good faith, I'm not
13    seeing that yet, okay?  It doesn't mean that I would not see it
14    later, but I think given the tradeoff between trying to get
15    documents, trying to get the information to the plaintiffs in a
16    timely fashion and on a rolling basis, you know, this may be a
17    tradeoff, that you just table this dispute until you have an
18    actual ripe dispute over particular documents.  It may come to,
19    at the end of the day, that both parties would prefer that
20    certain things not be designated confidential, okay?  But it's
21    sort of like, be careful of what you ask for, because if you
22    want the city to do a more robust analysis in the first
23    instance, given the situation right now in terms of staffing
24    ability and the majority of people still working remotely, that
25    can end up delaying what you ultimately get.  And then you

kba1medc

1    might still be making the same motions about particular

2    documents that you think shouldn't have been designated

3    confidential.  But right now I'm not seeing the prejudice to

4    the point where I need to be deciding something in a vacuum

5    without the benefit of you all having this robust

6    meet-and-confer, okay?  I think there is plenty to work on on

7    this case to finish the actual fact discovery and to actually

8    litigate it, all right?

9             All right.  So what else do we need to address right

10   now?  So I guess your options are a joint status letter on

11   where you are with the confidentiality issues, either

12   December 11th or December 18th.

13            MS. KALA:  Either of those dates work for plaintiff,

14   your Honor.

15            THE COURT:  Okay.  Mr. Brocker?

16            MR. BROCKER:  Yes, your Honor.  Defendants would

17   prefer December 11th.  December 18th I will not be available.

18            THE COURT:  Okay.  December 11th it is for a joint

19   status letter.  I mean, my hope is that even if all of the

20   documents aren't produced, based on Mr. Brocker's

21   representation that the CCRB file and the Internal Affairs file

22   that is forthcoming, which sounds like the bulk of the issues,

23   you may actually find that you're not in too much disagreement

24   or that you're able to work out most of the issues.  Okay?

25            All right.  So December 11th for the status letter on

kba1medc

1    confidentiality issues.  If at that point there are other
2    issues that come up, put those in the letter too, just to give
3    me a heads up, and then we can see what to do about that.
4    Okay?
5             All right.  Mr. Brocker, if there is reason to
6    congratulate you because of your unavailability or impending
7    unavailability, those are given right now.  Okay?
8             MR. BROCKER:  Thank you, your Honor.
9             THE COURT:  All right.  Anything else from plaintiff's
10   counsel?
11            MS. KALA:  This is Ishita Kala.  No, your Honor.
12   Nothing further from plaintiff.
13            THE COURT:  Okay.  What about the defendants?
14            MR. BROCKER:  Nothing for the city defendants, your
15   Honor.
16            MR. MOSCHELLA:  Nor for Nuñez.  Thank you, your Honor.
17            THE COURT:  All right.  Thank you.  I am requesting
18   that the parties order the transcript and share the cost.  And
19   I'd like it to be split this way:  50 percent by the plaintiffs
20   and 25 percent each by the city and by Mr. Nuñez.  All right?
21            And I apologize for my 11:00 who is waiting.  We have
22   to start a little bit late.
23            All right.  So 19 Civ. 9412, we are adjourned.  Thank
24   you.
25            ALL COUNSEL:  Thank you.

                              o0o